MAYER BROWN LLP
Timothy S. Bishop* (IL 6198062)
Brett E. Legner* (IL 6256268)
71 S. Wacker Drive
Chicago, IL 60606
Telephone:  (312) 701 7829
Facsimile:  (312) 706 8607
Email: tbishop@mayerbrown.com

C. Mitchell Hendy (State Bar No. 282036)
350 Grand Ave, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 229 5142
Facsimile: (213) 625 0248
Email: mhendy@mayerbrown.com

Colleen M. Campbell* (D.C. 219082)
1999 K Street NW 20006
Washington, DC
Telephone: (202) 263 3413
Facsimile: (202) 263-3300
ccampbell@mayerbrown.com

*Counsel for American Farm Bureau Federation, et al.*
*Proposed Intervenors-Defendants (Refer to signature*
*page for complete list of parties represented)*

*\*Application for admission pro hac vice pending*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>                   *Plaintiffs*,<br><br>          v.<br><br>ANDREW R. WHEELER, et al.,<br><br>                   *Defendants*,<br><br>and<br><br>AMERICAN FARM BUREAU FEDERATION, et al.<br><br>          *Applicant Intervenors-Defendants*. | No. 20-cv-03005-RS<br><br>**PROPOSED BUSINESS INTERVENORS' MOTION TO INTERVENE AS DEFENDANTS**<br><br>Date:     June 25, 2020<br>Time:    1:30 p.m.<br>Dept: San Francisco Courthouse, Courtroom 3—17th Floor<br>Judge:   Hon. Richard Seeborg |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

NOTICE OF MOTION AND MOTION .................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 2

INTRODUCTION ...................................................................................................................... 2

STATEMENT OF FACTS ......................................................................................................... 6

LEGAL STANDARD ................................................................................................................ 9

ARGUMENT ........................................................................................................................... 10

    A.    Proposed Business Intervenors Are Entitled to Intervene as of Right. ................ 10

        1.    Intervention is Timely ............................................................................ 10

        2.    The Proposed Business Intervenors Have a Legally Protectable Interest that May be Impaired Or Impeded By This Litigation ............... 11

        3.    The Agency Defendants Do Not Adequately Represent the Proposed Business Intervenors' Interests ................................................ 15

    B.    Alternatively, the Proposed Business Intervenors Should Be Allowed to Intervene Permissively. ......................................................................................... 17

CONCLUSION ........................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*California v. Bureau of Land Mgmt.*,
2018 WL 3439453 (N.D. Cal. July 17, 2018) ........................................................12

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) ............................................................................15

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ................................................................................10

*Cty. of Orange v. Air Cal.*,
799 F.2d. 535 (9th Cir. 1986) ...............................................................................10

*Feller v. Brock*,
802 F.2d 722 (4th Cir. 1986) ................................................................................14

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995) ..........................................................................15, 16

*Freedom from Religion Found., Inc. v. Geithner*,
644 F.3d 836 (9th Cir. 2011) ..................................................................................6

*Georgia v. Pruitt*,
326 F. Supp. 3d 1356 (S.D. Ga. 2018) ...................................................................7

*Georgia v. Wheeler*,
418 F. Supp. 3d 1336 (S.D. Ga. 2019) ...............................................................4, 8

*In re Intel Corp. S'holder Derivative Litig.*,
2018 WL 5777138 (N.D. Cal. Nov. 2, 2018) .....................................................9, 17

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ..........................................................................11, 15

*McDonald v. E. J. Lavino Co.*,
430 F.2d 1065 (5th Cir. 1970) ..............................................................................17

*United States ex rel. McGough v. Covington Techs. Co.*,
967 F.2d 1391 (9th Cir. 1992) ..............................................................................10

*Nat'l Ass'n of Mfrs. v. Dep't of Defense*,
138 S. Ct. 617 (2018) ...........................................................................3, 7, 16, 17

*Nat'l Parks Conservation Ass'n v. EPA*,
759 F.3d 969 (8th Cir. 2014) ...............................................................................11

ii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*North Dakota v. EPA,*
 127 F. Supp. 3d 1047 (D.N.D. 2015) ...................................................7

*Oneida Indian Nation of Wis. v. New York,*
 732 F.2d 261 (2d Cir. 1984) ...................................................15

*S.C. Coastal Conservation League v. Pruitt,*
 2018 WL 2184395 (D.S.C. May 11, 2018) ...................................4, 5, 8, 16

*S.C. Coastal Conservation League v. Pruitt,*
 318 F. Supp. 3d 959 (D.S.C. 2018) ...................................................8

*Sierra Club, Inc. v. EPA,*
 358 F.3d 516 (7th Cir. 2004) ...................................................16, 17

*Sierra Club v. EPA,*
 995 F.2d 1478 (9th Cir. 1993) ...................................................9, 10, 11

*Sierra Club v. Espy,*
 18 F.3d 1202 (5th Cir. 1994) ...................................................16

*Sierra Club v. Glickman,*
 82 F.3d 106 (5th Cir. 1996) (per curiam) ...................................................11

*Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.,*
 275 F.3d 432 (5th Cir. 2001) ...................................................12

*Texas v. EPA,*
 389 F. Supp. 3d 497 (S.D. Tex. 2019) ...................................................4, 8

*Town of Chester v. Laroe Estates, Inc.,*
 137 S. Ct. 1645 (2017) ...................................................6

*Va. House of Delegates v. Bethune-Hill,*
 139 S. Ct. 1945 (2019) ...................................................6

*Vivid Entm't, LLC v. Fielding,*
 774 F.3d 566 (9th Cir. 2014) ...................................................6

*WildEarth Guardians v. U.S. Forest Serv.,*
 573 F.3d 992 (10th Cir. 2009) ...................................................11

*Wilderness Soc'y v. U.S. Forest Serv.,*
 630 F.3d 1173 (9th Cir. 2011) ...................................................9, 11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Court Rules**

Federal Rule of Civil Procedure 24(a) ...............................................................1, 2, 9, 10

Federal Rule of Civil Procedure 24(b) .............................................................1, 2, 9, 17

Federal Rule Civil Procedure 60(b) ...............................................................................14

Civil Local Rule 7-2.........................................................................................................1

Civil Local Rule. 7-3........................................................................................................1

Civil Local Rule 7-4.........................................................................................................2

**Other Authorities**

80 Fed. Reg. 37,054 (June 29, 2015) .........................................................................3, 6

82 Fed. Reg. 34,899 (July 27, 2017)...............................................................................7

82 Fed. Reg. 55,542 (Nov. 22, 2017)..............................................................................7

83 Fed. Reg. 5200 (Feb. 6, 2018)................................................................................4, 7

84 Fed. Reg. 56,626 (Oct. 22, 2019)...........................................................................4, 8

85 Fed. Reg. 22,250 (Apr. 21, 2020) .........................................................................2, 12

Am. Farm Bureau Fed'n, Comment Letter on 2020 Rule (April 19, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-11394........................14

Am. Petroleum Inst., Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-5456.........................14

Am. Road & Transp. Builders Ass'n, Comment Letter on 2020 Rule (April 15,
    2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-
    4366....................................................................................................................................14

Brief for the Business & Municipal Pet'rs, *In re EPA & Dep't of Defense Clean
    Water Rule*, No. 15-3751 (6th Cir. Nov. 1, 2016)......................................................7

Compl., *Am. Farm Bureau Fed'n v. EPA*,
    No. 3:15-cv-165 (S.D. Tex. July 2, 2015)..............................................................6, 7

Compl., *Chamber of Commerce, et al. v. EPA*, No. 15-cv-386-CVE-PJC (N.D. Ok.
    July 10, 2015) ................................................................................................................4

iv

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3
Compl., *Chesapeake Bay Foundation v. Wheeler*,
1:20-cv-1064-GLR (D. Md. Apr. 27, 2020) ........................................................9

4

Compl., *Murray v. Wheeler*,
5
No. 1:19-cv-01498-LEK (N.D.N.Y. Dec. 4, 2019) ...........................................9

6
Compl., *New Mexico Cattle Growers' Association v. EPA*,
7
No. 1:19-cv-988-RB (D.N.M. Oct. 22, 2019) ....................................................9

8
Compl., *New York v. Wheeler*,
No. 1:19-cv-11673-ALC (S.D.N.Y. Dec. 20, 2019) ..........................................8

9
Compl., *S.C. Coastal Conservation League v. Wheeler*,
10
No. 2:19-cv-3006-DCN (D.S.C. Oct. 23, 2019) ................................................9

11
Edison Electric Inst., Comment Letter on 2020 Rule (April 15, 2019),
https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-8115 ..........................14

12

13
National All. of Forest Owners, Comment Letter on 2020 Rule (April 15, 2019),
https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4609 ..........................14

14
National Ass'n of Home Builders, Comment Letter on 2020 Rule (April 15, 2019),
15
https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4623; ..........................14

16
Nationall Cattlemen's Beef Ass'n & Public Lands Council, Comment Letter on
2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-
17
HQ-OW-2018-0149-4673; ................................................................14

18
Nat'l Corn Growers Ass'n, Comment Letter on 2020 Rule (April 15, 2019),
19
https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4616 ..........................14

20
Nat'l Mining Ass'n, Comment Letter on 2020 Rule (April 15, 2019),
https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4608 ..........................14

21

22
Nat'l Stone, Sand, & Gravel Ass'n, Comment Letter on 2020 Rule (April 15,
2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-
4541 ................................................................................14

23

24
Opinion and Order, *Nat. Res. Def. Council v. EPA*,
No. 1:18-cv-1048-JPO (S.D.N.Y. Feb. 6, 2018) ................................................4

25
Opinion and Order, *New York v. Pruitt*,
26
No. 1:18-cv-1030-JPO (S.D.N.Y. Apr. 5, 2018) ................................................4, 5

27
Opposition to Summary Judgment, *Georgia v. Wheeler*,
No. 2:15-cv-0079 (S.D. Ga. Oct. 10, 2018) .....................................................16
28

v

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Opposition to Summary Judgment, *Texas v. EPA*,
    No. 3:15-cv-162 (S.D. Tex. Nov. 8, 2018) ...............................................................16

Order, *Puget Soundkeeper All. v. McCarthy*,
    No. 2:15-cv-1342-JCC (W.D. Wash. Nov. 25, 2019) ................................................4

Order, *S.C. Coastal Conservation League v. Wheeler*,
    No. 2:19-cv-3006-DCN (D.S.C. Feb. 19, 2020) ........................................................4

Supplemental Am. Compl., *Washington Cattlemen's Association v. EPA*, No.
    2:19-cv-00569-JCC (W.D. Wash. Dec. 20, 2019) .....................................................9

Supplemental Compl., *Pierce v. EPA*,
    No. 0:19-cv-2193 (D. Minn. Oct. 22, 2019) ..............................................................9

U.S. Chamber, Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4569 ...........14

U.S. Poultry & Egg Ass'n, et al., Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-5441 ...........14

WAC, Comment Letter on 2015 Rule (Nov. 13, 2014),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2011-0880-14568 .........14

WAC, Comment Letter on Repeal Rule (Sept. 27, 2017),
    https://www.regulations.gov/d?D=EPA-HQ-OW-201711027-0203- .......................14

WAC, Comment Letter on Applicability Date Rule (Dec. 13, 2017),
    https://www.regulations. gov/document?D=EPA-HQ-OW-2017-0644-0375 ..........14

WAC, Comment Letter on 2020 Rule (Apr. 29, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-6849 ...........14

7 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1908.1
    (3d ed. 2020) .............................................................................................................11

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that Proposed Intervenors-Defendants the American Farm Bureau Federation; American Petroleum Institute; American Road and Transportation Builders Association; Chamber of Commerce of the United States of America; Edison Electric Institute; Leading Builders of America; National Alliance of Forest Owners; National Association of Home Builders; National Cattlemen's Beef Association; National Corn Growers Association; National Mining Association; National Pork Producers Council; National Stone, Sand, and Gravel Association; Public Lands Council; and U.S. Poultry & Egg Association (collectively, the "proposed Business Intervenors") respectfully move the Court for an order permitting them to intervene in the above-captioned matter as Defendants. Pursuant to Rule 7-2 of the Civil Local Rules for the United States District Court for the Northern District of California ("L.R."), the hearing has been scheduled for June 25, 2020 in Courtroom 3–17th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102. Responding papers, if any, must be served upon the proposed Business Intervenors pursuant to L.R. 7-3.

PLEASE TAKE FURTHER NOTICE that the Business Intervenors move this Court for an order permitting the Business Intervenors to intervene as Defendants pursuant to Federal Rule of Civil Procedure 24, as set forth in the Memorandum of Points and Authorities that follows. More specifically, the Business Intervenors seek an order granting intervention as of right under Federal Rule of Civil Procedure 24(a) based on their legally protectable interest in the above-captioned matter, or, in the alternative, an order granting permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Movants will respond to Plaintiffs' preliminary injunction motion in the same time allotted to the Defendant agencies, and intervention therefore will not prejudice the parties or delay the proceedings.

PLEASE TAKE FURTHER NOTICE that the Business Intervenors submit the following in support of this Motion to Intervene: Notice of Motion, Motion to Intervene and Memorandum of Points and Authorities, Proposed Answer to the Complaint, Proposed Order, and Certificate of Interested Entities and Persons.

1    PLEASE TAKE FURTHER NOTICE that the Business Intervenors consulted with counsel

2    for Plaintiffs and the Federal Defendants regarding the relief requested herein. Counsel for

3    Plaintiffs reserved the right to oppose; counsel for the Federal Defendants have indicated they do

4    not oppose the Business Intervenors' Motion.

5                        **STATEMENT OF ISSUES TO BE DECIDED**

6    Pursuant to Civil L.R. 7-4, the proposed Business Intervenors submit that the issues to be

7    decided on this Motion are:

8    1. Whether the proposed Business Intervenors are entitled to intervene as of right under

9    Federal Rule of Civil Procedure 24(a); and,

10   2. Alternatively, whether the proposed Business Intervenors should be permitted to

11   intervene permissively under Federal Rule of Civil Procedure 24(b).

12                                  **INTRODUCTION**

13   Plaintiffs' Complaint challenges a final agency action by the Environmental Protection

14   Agency and the U.S. Army Corps of Engineers (together, the "agencies") promulgating a definition

15   of Waters of the United States ("WOTUS") within the meaning of the Clean Water Act ("CWA").

16   *See* The Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed.

17   Reg. 22,250 (Apr. 21, 2020) ("2020 Rule"). The proposed Business Intervenor trade groups

18   represent countless businesses that own and/or use land for a broad variety of business purposes

19   including farming, ranching and other livestock production, forestry, manufacturing, mining of all

20   types, oil and gas production and refining, power generation, road and other infrastructure

21   construction, and home and commercial building, and which between them represent a large portion

22   of the Nation's economic activity.[1] Conducting these businesses often requires determining if

23
24   ───────────────
     [1]    *See* American Farm Bureau Federation, https://www.fb.org/ (last visited May 18, 2020);
     American Petroleum Institute, https://www.api.org/ (last visited May 18, 2020); American Road &
25   Transportation Builders Association, https://www.artba.org/ (last visited May 18, 2020); U.S.
     Chamber of Commerce, https://www.uschamber.com/ (last visited May 18, 2020); Edison Electric
26   Institute, https://www.eei.org/pages/default.aspx (last visited May 18, 2020); Leading Builders of
     America, https://leadingbuilders.org/ (last visited May 18, 2020); National Alliance of Forest
     Owners, https://nafoalliance.org/ (last visited May 18, 2020); National Association of Home
27   Builders, https://www.nahb.org/ (last visited May 18, 2020); National Cattlemen's Beef
     Association, https://www.ncba.org/ (last visited May 18, 2020); National Corn Growers

28

2

1   property includes waters of the United States subject to CWA jurisdiction and hence to CWA

2   permitting requirements and the threat of criminal and civil liability if activity occurs in WOTUS

3   without a permit. For that reason, the Business Intervenors and their members are intensely

4   interested in the regulatory definition of WOTUS at issue in this litigation.

5       The proposed Business Intervenors seek to intervene as Defendants to defend the 2020 Rule.

6   The 2020 Rule culminates more than five years of multiple administrative rulemakings and varied

7   litigation, in which the proposed Business Intervenors have participated at every step, by submitting

8   comments on every proposed rule, initiating litigation, and intervening in other litigation.

9       That litigation began when the prior Administration issued a regulatory definition of

10  WOTUS in 2015. *See* Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg.

11  37,054 (June 29, 2015) ("2015 Rule"). Proposed Business Intervenors, among other things:[2]

12      • Challenged the jurisdiction of the U.S. Court of Appeals for the Sixth Circuit to hear

13          consolidated petitions for review of the 2015 Rule, obtained certiorari from the Sixth

14          Circuit's decision that it had jurisdiction, and then prevailed on the merits in the

15          Supreme Court on their argument that those challenges (and now challenges to the

16          2020 Rule) belong in the first instance in district courts. *See Nat'l Ass'n of Mfrs. v.*

17          *Dep't of Defense*, 138 S. Ct. 617 (2018).

18      • Filed suit in the U.S. District Court for the Southern District of Texas, arguing that

19          the 2015 Rule was unlawful and inconsistent with the text of the CWA because it

20          covers a staggering amount of land that Congress never intended to reach and also

21          was procedurally defective under the Administrative Procedure Act. The District

22          Court agreed that the 2015 Rule was procedurally defective and remanded the Rule

23

24  Association, https://www.ncga.com/ (last visited May 18, 2020); National Mining Association,
    https://nma.org/ (last visited May 18, 2020); National Pork Producers Council,
25  http://nppc.org/about-us/ (last visited May 18, 2020); National Stone, Sand, & Gravel Association,
    https://www.nssga.org/ (last visited May 18, 2020); Public Lands Council, publiclandscouncil.org/;
26  U.S. Poultry & Egg Association, https://www.uspoultry.org/ (last visited May 18, 2020).
    [2]      Not all of the proposed Intervenors have been parties in each one of the cases described
27  below, but each of the Business Intervenors has been involved in some of those cases, and most of
    the Business Intervenors have been involved in all of them as either a party or an *amicus*.
28

to the agencies. *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019).

- Filed suit in the District of Oklahoma to challenge the 2015 Rule. Compl., *Chamber of Commerce, et al. v. EPA*, No. 15-cv-386-CVE-PJC (N.D. Ok. July 10, 2015) (Dkt. 1), on appeal sub nom. *Oklahoma v. EPA*, 19-5055 (10th Cir. 2016).

- Intervened as plaintiffs in the Southern District of Georgia to challenge the lawfulness of the 2015 Rule, and obtained a ruling that the Rule was both substantively and procedurally defective and a remand of the Rule to the agencies. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019).

- Intervened as defendants and obtained dismissal on standing grounds of claims in the Western District of Washington challenging the 2015 Rule's provisions as to waste water treatment facilities. Order, *Puget Soundkeeper All. v. McCarthy*, No. 2:15-cv-1342-JCC (W.D. Wash. Nov. 25, 2019) (Dkt. 103).

- Intervened as defendants in suits by States and environmental organizations in the Southern District of New York and District of South Carolina that challenged regulatory efforts to delay the enforcement of the 2015 Rule. *See* Definition of "Waters of the United States"—Addition of an Applicability Date to 2015 Clean Water Rule, 83 Fed. Reg. 5200 (Feb. 6, 2018) ("Delay Rule"); *S.C. Coastal Conservation League v. Pruitt*, 2018 WL 2184395 (D.S.C. May 11, 2018); Opinion and Order at 2, *New York v. Pruitt*, No. 1:18-cv-1030-JPO (S.D.N.Y. Apr. 5, 2018) (Dkt. 57); Opinion and Order at 2, *Nat. Res. Def. Council v. EPA*, No. 1:18-cv-1048-JPO (S.D.N.Y. Feb. 6, 2018) (Dkt. 48).

- Intervened as defendants to defend the 2019 Rule repealing the 2015 Rule. *See* Definition of "Waters of the United States"—Recodification of Pre-Existing Rules, 84 Fed. Reg. 56,626 (Oct. 22, 2019) ("Repeal Rule"); Order, *S.C. Coastal Conservation League v. Wheeler*, No. 2:19-cv-3006-DCN (D.S.C. Feb. 19, 2020) (Dkt. 33).

In other words, the proposed Business Intervenors have been at the very heart of litigation over the 2015 Rule and subsequent delay and repeal efforts—as well as submitting comments on every

iteration of every proposed rule. *See* p. 13, n.6, *infra* (citing comments).

These prior cases are closely interconnected with the current challenge to the 2020 Rule. Each considers the legality of administrative actions regarding the same provisions of the CWA defining the scope of federal jurisdiction and the same long history of rulemaking and judicial decisions. And each addresses the lawful scope of the agencies' authority under the CWA to regulate land and waters, and affects the ability of industry and private parties, like the proposed Business Intervenors' members, to use their land without obtaining a CWA permit. As several courts recognized in granting many of the same proposed Business Intervenors' motions to intervene, the proposed Business Intervenors and their members "have a substantial stake in the outcome" of litigation determining the regulatory definition of WOTUS, in part because "the industries that these business groups represent operate in a regulatory sphere that include regulations governing water usage in the United States." *S.C. Coastal Conservation League*, 2018 WL 2184395, at \*8-9; *see also* Opinion and Order at 2, *New York*, No. 1:18-cv-1030-JPO ("the industry groups have demonstrated a serious economic interest in the [WOTUS] rule, as it regulates discharge into waterways").

The same is true here. The lawsuit before this Court will determine under which regulatory regime the proposed Business Intervenors' members must operate. And Plaintiffs' ultimate objective—and the logical result of enjoining the 2020 Rule (which Plaintiffs claim is "much narrower" in scope than both the 2015 Rule and the pre-2015 regime (Compl. ¶ 6; *see also id.* ¶¶ 9, 57))—is to return to a broader definition of WOTUS and greater federal regulation. Accordingly, as Plaintiffs' allegations show, a ruling in favor of Plaintiffs would subject private parties like the proposed Business Intervenors' members to more burdensome regulatory requirements and inhibit their productive use and enjoyment of their lands. Further, were Plaintiffs to succeed on their claim that the 2020 Rule is "an illegal and impermissible interpretation … under the CWA" (*id.* ¶ 93), or arbitrarily disregards various findings allegedly requiring the 2015 Rule's broader scope (*id.* ¶ 99), any such holding would have direct bearing on the tangled web of litigation regarding the lawful scope of the agencies' jurisdiction, a question present in each and every WOTUS-related suit, including the pending Repeal Rule suit in South Carolina in which most of the Business Intervenors

1  are intervenor-defendants.

2  The Court should therefore grant Movants leave to intervene to protect their interests in this

3  and other related litigation. The motion is timely; the proposed Business Intervenors, as owners or

4  users of land for a huge variety of business purposes, have regulatory and economic interests in the

5  agencies' action that will be impaired if they cannot defend it; and the agencies, as neutral

6  regulatory bodies, cannot represent the interests of the regulated business community with the same

7  perspective and vigor. The Business Intervenors believe that their experience operating under the

8  CWA and various regulatory regimes implementing it, and their close involvement in every stage

9  of recent rulemaking and litigation, will be helpful to the Court in resolving this case. The motion

10  to intervene as of right or permissively accordingly should be granted.[3]

11  **STATEMENT OF FACTS**

12  On June 29, 2015, the agencies published the 2015 Rule, which purported to "clarify" the

13  definition of WOTUS within the meaning of the CWA. 2015 Rule, 80 Fed. Reg. at 37,054. Because

14  the agencies' regulatory jurisdiction extends to "waters of the United States" and no more, the

15  definition of WOTUS establishes the scope of the agencies' regulatory jurisdiction under the CWA.

16  Because the sweeping reach of the 2015 Rule stood to significantly impair their business

17  operations, many of the proposed Business Intervenors (along with various coalitions of States)

18  challenged the legality of the 2015 Rule, filing a lawsuit before the Southern District of Texas. *See*

19  Compl., *Am. Farm Bureau Fed'n v. EPA*, No. 3:15-cv-165 (S.D. Tex. July 2, 2015) (Dkt. 1). Some

20  challenged the Rule in the District Court for Oklahoma. *Chamber of Commerce, et al. v. EPA*, No.

21  15-CV-386-CVE-PJC (N.D. Ok. 2015), on appeal sub nom. *Oklahoma v. EPA*, 19-5055 (10th Cir.

22  2016). The Business Intervenors also challenged the 2015 Rule before the U.S. Court of Appeals

23  for the Sixth Circuit and obtained certiorari and a decision from the U.S. Supreme Court holding

24

25  ───────────────
   [3]   As "interven[ors] in support of defendants in the trial court" the proposed Business
   Intervenors "d[o] not need to establish standing." *Va. House of Delegates v. Bethune-Hill*, 139 S.

26  Ct. 1945, 1950–51 (2019); *see also Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1648
   (2017); *Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir. 2014). Further, the Ninth Circuit

27  has explained that any independent jurisdiction requirement to intervene is inapplicable where, as
   here, a party seeks intervention in a federal-question case and does not assert new claims. *Freedom*

28  *from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).

that challenges to WOTUS rules belong in the district courts rather than the courts of appeals. Brief for the Business & Municipal Pet'rs, *In re EPA & Dep't of Defense Clean Water Rule*, No. 15-3751 (6th Cir. Nov. 1, 2016) (Dkt. 129); *Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617 (2018). In addition to those suits, the Business Intervenors have litigated the lawfulness of the 2015 Rule or aspects of that rule as intervenors in the Southern District of Georgia, District of South Carolina, and the Western District of Washington, and as *amici curiae* in the District of North Dakota and the Tenth Circuit. As a result of these challenges, various courts issued regional preliminary injunctions guarding against application of the 2015 WOTUS Rule in more than half of the States. *See* Order, *Am. Farm Bureau Fed'n*, No. 3:15-cv-165 (Sept. 12, 2018) (Dkt. 87); *Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1364-65 (S.D. Ga. 2018); *North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1060 (D.N.D. 2015).

While the litigation was ongoing, the agencies published a notice of proposed rulemaking, proposing to repeal and replace the 2015 Rule in a "comprehensive, two-step process." *See* Definition of "Waters of the United States"—Recodification of Pre-Existing Rules, 82 Fed. Reg. 34,899, 34,899 (July 27, 2017). The first step of this comprehensive process (the "Proposed Repeal Rule") would "rescind" the 2015 Rule, restoring the status quo ante by regulation. *Id.* "In a second step," according to the agencies, the government would "conduct a substantive reevaluation of the definition of 'waters of the United States.'" *Id.*

The Proposed Repeal Rule was published on July 27, 2017, and the comment period ended two months later, on September 27, 2017. In light of delay in issuing a final Repeal Rule, the agencies set out "to maintain the status quo" by amending the 2015 Rule with a delayed "applicability date" to provide "continuity and regulatory certainty for regulated entities, the States and Tribes, agency staff, and the public while the agencies continue to work to consider possible revisions." Definition of "Waters of the United States"- Addition of an Applicability Date to 2015 Clean Water Rule, 82 Fed. Reg. 55,542, 55,542 (Nov. 22, 2017).

The final Applicability Date Rule was published in the *Federal Register* on February 6, 2018. *See* Definition of "Waters of the United States"—Addition of an Applicability Date to 2015 Clean Water Rule, 83 Fed. Reg. 5200 (Feb. 6, 2018). States and environmental organizations filed

lawsuits challenging the legality of the Applicability Date Rule in the U.S. District Court for the Southern District of New York. Most of the Business Intervenors intervened permissively to defend the Rule, and fully participated in that litigation. In addition, environmental organizations filed a lawsuit before the District of South Carolina challenging the Applicability Date Rule. Because the Business Intervenors "certainly" had an interest in the subject matter of the litigation, the District of South Carolina also granted the proposed Business Intervenors permissive intervention to protect their interests. *S.C. Coastal Conservation League ("SCCCL") v. Pruitt*, 2018 WL 2184395, at *9 (D.S.C. May 11, 2018). Following briefing on summary judgment, the District of South Carolina issued an order enjoining the Applicability Date Rule. *SCCCL v. Pruitt*, 318 F. Supp. 3d 959 (D.S.C. 2018). The ruling allowed the 2015 Rule to spring back into place on a patchwork basis in the States where no court had issued a preliminary injunction to protect against its operation.

Meanwhile, the Business Intervenors' litigation challenging the 2015 Rule continued. The Southern District of Texas and Southern District of Georgia both held that the 2015 Rule violated the procedural requirements of the APA. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019); *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019). The Southern District of Georgia further held that the 2015 Rule is inconsistent with the CWA. *Georgia*, 418 F. Supp. 3d at 1381-82. Both of those courts remanded the Rule to the agencies in light of the ongoing administrative process to repeal and replace the 2015 Rule, keeping their previously issued preliminary injunctions in place. *Id.*; 389 F. Supp. 3d at 506.

The agencies published the final Repeal Rule in the Federal Register on October 22, 2019. Definition of "Waters of the United States"—Recodification of Pre-Existing Rules, 84 Fed. Reg. 56,626 (Oct. 22, 2019). Some of the same Plaintiffs before this Court filed suit in the Southern District of New York to challenge its legality. *See* Compl., *New York v. Wheeler*, No. 1:19-cv-11673-ALC (S.D.N.Y. Dec. 20, 2019) (Dkt. 1).[4] Various environmental groups also challenged the Repeal Rule in additional forums, including in an action before the District of South Carolina, in

---

[4]     Proposed Business Intervenors sought to intervene before the Southern District of New York, but the case was voluntarily dismissed before the Court ruled on that unopposed motion.

1  which proposed Business Intervenors successfully intervened. Compl., *SCCCL v. Wheeler*, No.

2  2:19-cv-3006-DCN (D.S.C. Oct. 23, 2019) (Dkt. 1).[5]

3          The agencies then published the final 2020 Rule, the subject of this action, on April 21,

4  2020. The 2020 Rule takes effect on June 22, 2020. The Plaintiffs before the Southern District of

5  New York subsequently dismissed the Complaint challenging the legality of the Repeal Rule, and

6  filed the lawsuit here as a challenge to the 2020 Rule.

7                                    **LEGAL STANDARD**

8          Federal Rule of Civil Procedure 24 provides for intervention as of right and permissively.

9  Pursuant to Rule 24(a)(2), the district court must grant leave to intervene, upon timely application,

10  when (1) the applicant claims a "significantly protectable interest relating to the property or

11  transaction which is the subject of the action," (2) the applicant is "so situated that the disposition

12  of the action may as a practical matter impair or impede its ability to protect that interest" and (3)

13  the applicant's interest is "inadequately represented by the parties to the action." *Sierra Club v.*

14  *EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (internal quotations omitted), *abrogated on other*

15  *grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). The Ninth Circuit

16  follows "practical and equitable considerations and construe[s] the Rule broadly in favor of

17  proposed intervenors . . . because [a] liberal policy in favor of intervention serves both efficient

18  resolution of issues and broadened access to the courts." *Wilderness Soc'y*, 630 F.3d at 1179

19  (internal quotations omitted) (third alteration in original).

20          Even where intervention is unavailable as of right, the Court may permit intervention by

21  anyone who "has a claim or defense that shares with the main action a common question of law or

22  fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is within the discretion of the district

23  court. *In re Intel Corp. S'holder Derivative Litig.*, 2018 WL 5777138, at *2 (N.D. Cal. Nov. 2,

24

---

25  [5]       Additional challenges to the Repeal Rule include the following: Compl., *Chesapeake Bay Foundation v. Wheeler*, 1:20-cv-1064-GLR (D. Md. Apr. 27, 2020) (Dkt. 1); Supplemental Am.

26  Compl., *Washington Cattlemen's Association v. EPA*, No. 2:19-cv-00569-JCC (W.D. Wash. Dec. 20, 2019) (Dkt. 60); Compl., *Murray v. Wheeler*, No. 1:19-cv-01498-LEK (N.D.N.Y. Dec. 4, 2019)

27  (Dkt. 1); Compl., *New Mexico Cattle Growers' Association v. EPA*, No. 1:19-cv-988-RB (D.N.M. Oct. 22, 2019) (Dkt. 1); Supplemental Compl., *Pierce v. EPA*, No. 0:19-cv-2193 (D. Minn. Oct.

28  22, 2019) (Dkt. 12).

2018). In exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

**ARGUMENT**

**A.    Proposed Business Intervenors Are Entitled to Intervene as of Right.**

The proposed Business Intervenors meet each requirement for intervention as Defendants as of right under Rule 24(a).

*1.    Intervention is Timely*

The proposed Business Intervenors' motion to intervene is timely. In assessing timeliness, courts consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992) (quoting *Cty. of Orange v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986)). Under any reasonable application of these criteria, the proposed Business Intervenors' motion is timely.

First, the litigation is in its infancy: Plaintiffs just now filed their preliminary injunction motion, and the EPA has not filed an opposition, answer, or other pleading. Second, intervention at this early stage would not prejudice any party. Intervention will result in no delay in the pleadings or disposition of the case. The proposed Business Intervenors submit a proposed Answer with this motion and will oppose Plaintiffs' preliminary injunction motion in the same time frame as the agencies. They also will file and respond to motions for summary judgment or other disposition of the case on the same schedule as the agencies. Third, there has been no improper delay. Plaintiffs' Complaint was filed on May 1, 2020, and service of summons occurred on May 6, 2020. The proposed Business Intervenors file this motion a mere 20 days later. Under all three criteria, the Business Intervenor's motion is timely. *See, e.g.*, *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (motion to intervene timely where filed "less than three months after the complaint was filed and less than two weeks after the [government defendant] filed its answer to the complaint"); *Sierra Club*, 995 F.2d at 1481 (upholding district court timeliness finding when motion to intervene filed before government defendant filed its answer).

2.     *The Proposed Business Intervenors Have a Legally Protectable Interest that May be Impaired Or Impeded By This Litigation*

The proposed Business Intervenors possess a sufficient, legally protectable interest in the challenge to the agencies' final rule in this case. To determine whether an intervenor demonstrates a significantly protectable interest, courts consider whether "the interest is protectable under some law" and "there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1179 (internal quotations omitted). A movant "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). The proposed Business Intervenors have a protectable interest that may be impaired in this litigation for at least two reasons. First, the governing definition of WOTUS, the issue directly at stake in this litigation, dictates the regulatory scheme under which their members must operate.  An unfavorable ruling would both heighten their regulatory burdens and thrust them back into the regulatory chaos that the 2020 Rule intends to correct. Second, the outcome of litigation may adversely impact their ability to protect their members' interests in related WOTUS litigation.

a. The proposed Business Intervenors possess a significant, legally protected interest in defending the 2020 Rule. The Ninth Circuit has recognized that parties directly regulated by the CWA have a legally protected interest in suits that would "affect the[ir] use of real property." *Sierra Club*, 995 F.2d at 1483. Many courts have agreed, holding that regulated parties have a sufficient interest to intervene where the disposition of the lawsuit would impose costs on and interfere with their business activities. *See, e.g.*, *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 976 (8th Cir. 2014); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995–96 (10th Cir. 2009); *Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (per curiam); *see also* 7 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1908.1 (3d ed. 2020) ("in cases challenging various statutory schemes" as "improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention").

That is the case here. The outcome of this litigation will directly affect the interests of

proposed Business Intervenors' members in their property—as the Business Intervenors' expenditure of substantial resources, over many years of regulatory activity and litigation concerning WOTUS rules evidences. The proposed Business Intervenors and their members own and/or operate on real property and must comply with the CWA's prohibition against unauthorized "discharges" into any areas that are deemed jurisdictional. The CWA subjects them to criminal penalties and civil suits for failure to comply. If, as Plaintiffs request, this Court holds the 2020 Rule an "illegal" and "impermissible" application of the CWA "because it excludes from the Act's jurisdiction waters that the Agencies are required to protect" (Compl. ¶ 93), the scope of the agencies' jurisdiction would enlarge, and the Business Intervenors' members will be subjected to heightened regulatory burdens. Each would be required to comply with a broader definition of WOTUS and the CWA's prohibition against unauthorized "discharges." Further, depending on the outcome of the litigation, many members may be required to obtain costly permits.

Thus, the proposed Business Intervenors "have demonstrated a substantial interest" in the litigation, as "their members will suffer from heightened regulatory burdens if the Court grants Plaintiffs their requested relief." *California v. Bureau of Land Mgmt.*, 2018 WL 3439453, at *8 (N.D. Cal. July 17, 2018); *see also Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*, 275 F.3d 432, 437 n.14 (5th Cir. 2001) ("[t]here can be no serious dispute" that an association had an interest in a lawsuit "given that it deals with the application of a performance standard that affects [its] members").

Further, a holding in Plaintiffs' favor would also deprive regulated parties, including the proposed Business Intervenors' members, of much needed clarity and predictability. Since promulgation of the legally-suspect 2015 Rule, regulated parties have been subjected to a flip-flopping and patchwork regulatory scheme. *See supra*, at pp. 6-8. The 2020 Rule is the long-awaited conclusion of the agencies' efforts to repeal and replace the 2015 Rule with lawful and clear standards. Indeed, in promulgating the 2020 Rule, the agencies explained that the 2020 Rule "is intended to establish categorical bright lines that provide clarity and predictability for regulators and the regulated community" (85 Fed. Reg. at 22,325), as well as resolve the legal deficiencies of the 2015 Rule (*id.* at 22,272), many of which the proposed Business Intervenors have pointed out

1    in comments and in other litigation.

2          A declaration that the 2020 Rule is unlawful would deprive the proposed Business

3    Intervenors of those intended benefits and instead thrust the regulatory scheme back into the chaos

4    that has prevailed since the promulgation of the illegal 2015 Rule. A taste of the likely chaos is

5    apparent from the fact that the 2019 Repeal Rule—which would remain in place were the 2020

6    Rule invalidated—is also subject to vigorous challenge in various jurisdictions. *See supra*, at p. 8,

7    n.5. Indeed, while Plaintiffs challenged the legality to the 2019 Repeal Rule before the Southern

8    District of New York, here they challenge the 2020 Rule in part on its alleged "abandon[ment]" of

9    the agencies' former policy and purported narrowing of jurisdiction from the Repeal Rule. Compl.

10   ¶¶ 9, 56, 100. Were the 2020 Rule to be held invalid, regulated parties would lose any clarity or

11   certainty over which WOTUS standards govern their conduct. To protect their interests, they

12   deserve the right to litigate for a lawful WOTUS standard here.

13         b.  The outcome of this lawsuit may also impede proposed Business Intervenors' significant

14   interests in parallel litigation. The Business Intervenors are keenly interested in the fate of the 2020

15   Rule, as well as any litigation dictating the lawful definition of WOTUS under the CWA. They

16   have consistently argued against a definition of WOTUS that violates the Constitution and

17   unlawfully expands the agencies' regulatory jurisdiction under the CWA, and explained the need

18   for regulatory predictability and consistency and a uniform approach, rather than a regulatory

19   definition that imposes significant and unjustified costs on their members. The proposed Business

20   Intervenors have participated in the litigation regarding the lawful scope of the regulatory definition

21   of WOTUS under the CWA at virtually every stage and in many courts, including the United States

22   Supreme Court.

23         In addition to their role in every aspect of the WOTUS litigation to date, the proposed

24   Business Intervenors, individually and/or through groups to which some of them belong, such as

25   the Waters Advocacy Coalition ("WAC"), have participated at every step of the agencies'

26   rulemaking involving WOTUS. They submitted comments on the original proposed 2015 Rule, the

27   proposed Applicability Date Rule, the proposed Repeal Rule, and the proposed 2020 Rule that is at

28

1  issue here.[6] Thus, the requested relief would roll back regulatory gains that the proposed Business

2  Intervenors have fought for years to obtain for the benefit of their members.

3       Most obviously, the outcome of this litigation will impact the litigation in which most of

4  the Business Intervenors participate to defend the 2019 Repeal Rule. A final judgment here will

5  bear directly on the issues involved in that litigation; and the scope of any final judgment in this

6  Court may further complicate the regulatory landscape in ways relevant to the relief being

7  considered in Repeal Rule suits. And any ultimate restoration of the 2015 Rule would also affect

8  the Business Intervenors' suits involving that Rule in courts around the country, which either

9  remain open or may need to be revived under Federal Rule Civil Procedure 60(b). Intervention is

10  warranted where a case would have an impact on parallel litigation to which intervenors are a party.

11  *See, e.g.*, *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986) ("an interest in preventing conflicting

12

13  ─────────────
    [6]     *See, e.g.*, WAC, Comment Letter on 2015 Rule (Nov. 13, 2014),
14  https://www.regulations.gov/document?D=EPA-HQ-OW-2011-0880-14568; WAC, Comment
    Letter on Applicability Date Rule (Dec. 13, 2017), https://www.regulations.
15  gov/document?D=EPA-HQ-OW-2017-0644-0375; WAC, Comment Letter on Repeal Rule (Sept.
    27, 2017), https://www.regulations.gov/document?D=EPA-HQ-OW-2017-0203-11027; WAC,
16  Comment Letter on 2020 Rule (Apr. 29, 2019), https://www.regulations.gov/document?D=EPA-
    HQ-OW-2018-0149-6849. For individual comments regarding the 2020 Rule, *see* Am. Farm
17  Bureau Fed'n, Comment Letter on 2020 Rule (April 19, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-11394; Am. Petroleum
18  Inst., Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-5456; Am. Road & Transp.
19  Builders Ass'n, Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4366; Edison Electric
20  Institute, Comment on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-8115; Nat'l All. of Forest
21  Owners, Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4609; Nat'l Ass'n of Home
22  Builders, Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4623; Nat'l Cattlemen's
23  Beef Ass'n & Public Lands Council, Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4673; Nat'l Corn Growers
24  Ass'n, Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4616; Nat'l Mining Ass'n,
25  Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-
    HQ-OW-2018-0149-4541; U.S.
26  Chamber, Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4569; U.S. Poultry & Egg
27  Ass'n, et al., Comment Letter on 2020 Rule (April 15, 2019),
    https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-5441.

28

                                                    14

1    orders may be sufficient for intervention as of right"); *see also Chiles v. Thornburgh*, 865 F.2d

2    1197, 1214 (11th Cir. 1989) ("the potential *stare decisis* effect" of a decision in one case on another

3    "may supply that practical disadvantage which warrants intervention as of right"); *Oneida Indian*

4    *Nation of Wis. v. New York*, 732 F.2d 261, 265-66 (2d Cir. 1984) ("[T]here is a significant likelihood

5    that the ultimate resolution of this litigation will lead to . . . conclusions of law on issues of first

6    impression, or mixed findings of fact and law, . . . which would control any subsequent lawsuit by

7    the intervenors").

8            *3.     The Agency Defendants Do Not Adequately Represent the Proposed*
             *Business Intervenors' Interests*
9

10          The proposed Business Intervenors cannot rely on the Federal Defendants to represent their

11   interests. A proposed intervenor's burden of showing inadequate representation is "minimal: it is

12   sufficient to show that representation *may* be inadequate." *Forest Conservation Council v. U.S.*

13   *Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*,

14   630 F.3d 1173. To determine adequacy of representation, courts consider "whether the interest of

15   a present party is such that it will undoubtedly make all the intervenor's arguments; whether the

16   present party is capable and willing to make such arguments; and whether the intervenor would

17   offer any necessary elements to the proceedings that other parties would neglect." *Id.* at 1498-99.

18   Although courts apply a presumption of adequacy when a proposed intervenor shares the same

19   ultimate objective as an existing party, the parties here possess "distinctly different" interests.

20   *Lockyer*, 450 F.3d at 444.

21          Although the agencies and the proposed Business Intervenors both will argue, at the most

22   general level, that the challenge to the 2020 Rule is meritless, their interests are distinctly different.

23   As the district court in South Carolina observed when it granted intervention under similar

24   circumstances,

25          The court is not so persuaded that the business groups share the same ultimate
            objective as the government. The EPA is, after all, in the business of protecting the
26          environment—not protecting business interests. The EPA's stated motivation in
            enacting the [Applicability Date] Rule included, certainly, creating regulatory
27          certainty for businesses such as the industries that the business groups represent. But
            it also involved policy considerations of what waters in the United States deserved
28          protection under the Act.

1   *SCCCL*, 2018 WL 2184395, at \*9.

2        Certainly, the agencies' interests in the management of natural and economic resources is

3   not concomitant with the interests of the proposed Business Intervenors' interest in using,

4   harvesting, or extracting those resources. The interest of private business is just one among many

5   varied and often competing constituencies represented by the agencies, which bear statutory

6   obligations on behalf of the "general public." *Forest Conservation Council*, 66 F.3d at 1499

7   (internal quotations omitted). "The government must represent the broad public interest, not just

8   the economic concerns" of a particular industry or industries. *Sierra Club v. Espy*, 18 F.3d 1202,

9   1208 (5th Cir. 1994). That is enough to satisfy the proposed Business Intervenors' obligation to

10  demonstrate inadequate representation.

11       In addition, there is a risk that a change in Administration or policy could undermine the

12  agencies' resolve to defend the merits of the 2020 Rule—exactly what happened in litigation

13  regarding the 2015 Rule before the Southern District of Georgia and the Southern District of Texas.

14  In both litigations, the agencies ultimately took no position regarding the merits of the 2015 Rule

15  because of the agencies' ongoing rulemaking, such that only intervenor-environmental parties

16  briefed those issues on summary judgment. *See* Opposition to Summary Judgment, *Texas v. EPA*,

17  No. 3:15-cv-162 (S.D. Tex. Nov. 8, 2018) (Dkt. 170); Opposition to Summary Judgment, *Georgia*

18  *v. Wheeler*, No. 2:15-cv-0079 (S.D. Ga. Oct. 10, 2018) (Dkt. 215).

19       And further, the agencies may not be willing to rigorously pursue appeals. While the

20  agencies can be counted on to "stick up for [their] actions in response to [a challenge]," "if [they]

21  lose[] the Solicitor General may decide that the matter lacks sufficient general importance to justify

22  proceedings before the [appellate] court . . . or the Supreme Court." *Sierra Club, Inc. v. EPA*, 358

23  F.3d 516, 518 (7th Cir. 2004) ("*Sierra Club II*"). In other words, the proposed Business Intervenors

24  have no guarantee that the agencies would exhaust their appellate remedies in the event of an

25  unfavorable decision from this Court. That was the case when the Business Intervenors petitioned

26  for certiorari from the Sixth Circuit's denial of their motion to dismiss petitions for review of the

27  agencies' action and the agencies vigorously opposed certiorari. The agencies continued to oppose

28  the petition in the Supreme Court on the merits, losing in a 9-0 ruling. *See Nat'l Ass'n of Mfrs.*, 138

1   S. Ct. at 624.

2       Intervention is therefore necessary to ensure that the Business Intervenors are placed "on

3   equal terms" and allowed "to make their own decisions about the wisdom of carrying the battle

4   forward" should the need arise. *Sierra Club II*, 358 F.3d at 518. The proposed Business Intervenors

5   also believe that their experience in the prior litigation and rulemaking, and their different outlook

6   from the agencies as regulated parties, will assist the Court in resolving this action.

7       **B.      Alternatively, the Proposed Business Intervenors Should Be Allowed to
           Intervene Permissively.**

8

9       Because the proposed Business Intervenors are entitled to intervene as of right, the Court

10  need not decide whether they should be permitted to intervene. But if the Court believes otherwise,

11  it should exercise its discretion to grant leave to intervene under Rule 24(b). That rule provides that

12  a court may allow a party to intervene if it "has a claim or defense that shares with the main action

13  a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is within

14  the discretion of the district court. *In re Intel Corp. S'holder Derivative Litig.*, 2018 WL 5777138,

15  at *2 (N.D. Cal. Nov. 2, 2018). For the same reasons that make intervention proper as of right, the

16  Court should grant permissive intervention.

17      It cannot be seriously disputed that the defenses the proposed Business Intervenors seek to

18  bring share a common question of law or fact with the main action. The proposed Business

19  Intervenors' defenses against the Plaintiffs' Complaint will involve common questions of law and

20  fact regarding the Federal Defendants' obligations under the CWA and the APA. Permitting the

21  proposed Business Intervenors to intervene to defend the 2020 Rule would also allow them to

22  vindicate their substantial interests and, given their prompt action, would neither delay this case

23  nor prejudice any of the parties. *See McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir.

24  1970) ("[I]t has been the traditional attitude of the federal courts to allow intervention 'where no

25  one would be hurt and greater justice would be attained'" (citation omitted)). Here, the proposed

26  Business Intervenors have filed a proposed Answer in conjunction with this motion, and they

27  undertake to respond to any preliminary injunction or other motion in the same time frame as the

28

1  agencies. Thus, the proposed Business Intervenors should be permitted to intervene permissively if

2  not as of right.

3                                        **CONCLUSION**

4          For the foregoing reasons, the proposed Business Intervenors respectfully request that the

5  Court grant the motion to intervene.

6          Dated this 21st day of May, 2020.

7                                                    MAYER BROWN LLP

8                                                    */s/ C. Mitchell Hendy*
                                                     C. Mitchell Hendy (State Bar No. 282036)
9                                                    350 Grand Ave, 25th Floor
                                                     Los Angeles, CA 90071
10                                                   Telephone: (213) 229 5142
                                                     Facsimile: (213) 625-0248
11                                                   Email: Mhendy@mayerbrown.com

12                                                   Timothy S. Bishop* (IL 6198062)
                                                     Brett E. Legner* (IL 6256268)
13                                                   71 S. Wacker Drive
                                                     Chicago, IL 60606
14                                                   Telephone:  (312) 701 7829
                                                     Facsimile:  (312) 706 8607
15                                                   Email: tbishop@mayerbrown.com

16                                                   Colleen M. Campbell* (D.C. 219082)
                                                     1999 K Street NW 20006
17                                                   Washington, DC
                                                     Telephone: (202) 263 3413
18                                                   Facsimile: (202) 263-3300
                                                     ccampbell@mayerbrown.com

19                                                   *Pro hac vice motion pending

20                                                   *Attorneys for proposed Business-Intervenors
                                                     Defendants*
21                                                   American Farm Bureau Federation;
                                                     American Petroleum Institute; American
22                                                   Road and Transportation Builders
                                                     Association; Chamber of Commerce of the
23                                                   United States of America; Edison Electric
                                                     Institute; Leading Builders of America;
24                                                   National Alliance of Forest Owners; National
                                                     Association of Home Builders; National
25                                                   Cattlemen's Beef Association; National Corn
                                                     Growers Association; National Mining
26                                                   Association; National Pork Producers
                                                     Council; National Stone, Sand, and Gravel
27                                                   Association; Public Lands Council; and U.S.
                                                     Poultry & Egg Association

28

                                                 18

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed and thereby caused the foregoing document to be served via the CM/ECF system in the United States District Court for the Northern District of California on all parties registered for CM/ECF in the above-captioned matter.

Dated at Los Angeles, California, this 21st day of May, 2020.

*s/ C. Mitchell Hendy*