| | |
|---|---|
| 1 | ANTHONY L. FRANÇOIS, No. 184100 |
| | afrancois@pacificlegal.org |
| 2 | CHARLES T. YATES, No. 327704 |
| | cyates@pacificlegal.org |
| 3 | Pacific Legal Foundation |
| | 930 G Street |
| 4 | Sacramento, California 95814 |
| | Telephone: (916) 419-7111 |
| 5 | Facsimile: (916) 419-7747 |
| 6 | Attorneys for Proposed Defendant-Intervenors |
| | Chantell and Michael Sackett |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| STATE OF CALIFORNIA, et al., | No. 3:20-cv-03005-RS |
|---|---|
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (FRCP 24)** |
| v. | |
| ANDREW R. WHEELER, as Administrator of the U.S. Environmental Protection Agency, et al., | Date:  June 25, 2020 |
| Defendants, | Time:  1:30 p.m. |
| | Place: San Francisco Courthouse |
| | Courtroom 3 - 17th Floor |
| | Judge: Honorable Richard Seeborg |
| | Action Filed: 5/1/2020 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 25, 2020, at 1:30 p.m., or as soon thereafter as may be heard by this Court, Proposed Defendant-Intervenors Chantell and Michael Sackett ("the Sacketts") move for leave to intervene in this action.

The Sacketts hereby move this Court for an order to intervene as defendants in this action as a matter of right pursuant to Federal Rule of Civil Procedure 24(a). In the alternative, they request leave to intervene by permission pursuant to Federal Rule of Civil Procedure 24(b).

Counsel for the Sacketts contacted the existing parties to determine their positions on this motion and were informed that the federal defendants take no position on the Sacketts' intervention, and that the plaintiffs are not able to take a position prior to the filing of this motion.

The motion is based on this notice of motion and motion to intervene; the accompanying memorandum of points and authorities; the declarations submitted with this motion; the documents previously filed in this action; and any other material the Court may consider in the briefing and oral argument of this matter.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ............................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii-v

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.   Introduction ........................................................................................................................ 1

II.  Applicants .......................................................................................................................... 1

III. Background ........................................................................................................................ 2

    A.   This Lawsuit .......................................................................................................... 2

    B.   Clean Water Act and Relation of This Suit to the Sacketts ................................... 3

IV.  Argument ........................................................................................................................... 5

    A.   The Sacketts Satisfy Rule 24(a) and
        Should Be Granted Intervention as of Right ........................................................ 5

        1.   The Sacketts' Motion to Intervene Is Timely ............................................. 6

        2.   The Sacketts' Interests Relate to the Subject of This Litigation ................ 7

        3.   Disposition of This Case May Impair/Impede the Sacketts' Interests ....... 8

        4.   No Party Adequately Represent the Sacketts' Interests ............................. 8

    B.   In the Alternative, The Sacketts Satisfy
        the Standard for Permissive Intervention ........................................................... 11

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ........................................................................ 9

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
   152 F.3d 1184 (9th Cir. 1998) ...................................................................................................... 9

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ................................................................................................ 6, 8-9

*Cty. of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) .................................................................... 7

*Employee Staffing Servs. v. Aubry*, 20 F.3d 1038 (9th Cir. 1994) .................................................. 11

*Forest Conservation Council v. United States Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995) ....................................................................................................... 7

*Georgia v. Wheeler*, No. 2:15-cv-00079, 2019 WL 3949922 (S.D. Ga. Aug. 21, 2019) ................ 4

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) .................................................................... 7

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987) ................. 3

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) ........................................... 11

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) ............................. 5, 7-8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................... 8

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) ............................................................................. 7

*Orange Cty. v. Air California*, 799 F.2d 535 (9th Cir. 1986) ....................................................... 11

*Rapanos v United States*, 547 U.S. 715 (2006) ................................................................. 3-4, 10-11

*S.W. Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ................................... 8

*Sackett v. EPA*, 566 U.S. 120 (2012) ............................................................................................... 1

*Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*,
   921 F.2d 924 (9th Cir. 1990) ....................................................................................................... 7

*SEC v. United States Realty & Improvement Co.*, 310 U.S. 434 (1940) ....................................... 11

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) ......................................................................... 7

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ..................................................... 8

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) .................................................. 6

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ................................................ 5

*Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001) ........................................... 9-10

*Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011) .................................... 5-9

**Federal Statutes**

33 U.S.C. § 1251, *et seq.* ................................................................................................................ 3

33 U.S.C. § 1311(a) ........................................................................................................................ 3

33 U.S.C. § 1362(7) ........................................................................................................................ 3

33 U.S.C. § 1362(8) ........................................................................................................................ 3

33 U.S.C. § 1362(12) ...................................................................................................................... 3

**Federal Regulations**

33 C.F.R. § 328.3 (2016) ................................................................................................................ 4

33 C.F.R. § 328.3(a)(1)-(7) ............................................................................................................. 3

33 C.F.R. § 328.3(a)(4) ................................................................................................................... 4

33 C.F.R. § 328.3(c) (2014) ............................................................................................................ 3

33 C.F.R. § 328.3(c)(1) ................................................................................................................ 1-2

33 C.F.R. § 328.3(c)(1)(i) ............................................................................................................... 4

33 C.F.R. § 328.3(c)(1)(ii) .............................................................................................................. 5

33 C.F.R. § 328.3(c)(1)(iii) ............................................................................................................. 5

33 C.F.R. § 328.3(c)(1)(iv) ............................................................................................................. 5

**Court Rules**

Fed. R. Civ. P. 24 ........................................................................................................................ 1, 8

Fed. R. Civ. P. 24(a) ................................................................................................................. 1, 5-6

Fed. R. Civ. P. 24(b) ................................................................................................................. 1, 11

**Miscellaneous**

80 Fed. Reg. 37,054 (June 29, 2015) ........................................................................................ 4, 10

84 Fed. Reg. 56,626 (Oct. 22, 2019) ................................................................................ 4, 10

85 Fed. Reg. 22,250 (Apr. 21, 2020) ............................................................................ 4, 5, 9

Hopper, M. Reed, *Running Down the Controlling Opinion in* Rapanos v. United States, 21 U. Denv. Water L. Rev. 47 (2017-2018) ................................................... 10

Mandelker, Daniel R., *Practicable Alternatives for Wetlands Development Under the Clean Water Act*, 48 Envtl. L. Rep. News & Analysis 10894 (Oct. 2018) ........................ 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Pursuant to Federal Rule of Civil Procedure 24, Chantell and Michael Sackett ("The Sacketts") move to intervene to protect their interests in this litigation.

Plaintiffs State of California, et al., (California) challenge the U.S. Environmental Protection Agency (EPA) and the U.S. Department of the Army (Army)'s adoption of a final rule called the Navigable Waters Protection Rule, defining "navigable waters" or "waters of the United States" under the Clean Water Act. Compl. ¶¶ 1-2. California has moved for a nationwide preliminary injunction against the Navigable Waters Protection Rule. ECF. No. 30.

The Sacketts seek to intervene to defend the portion of the rule which defines "adjacent wetlands." *See* 33 C.F.R. § 328.3(c)(1) (proposed). The Sacketts have an interest in the Clean Water Act's regulation of their private property that would be affected by this lawsuit and that interest is not adequately represented by the existing parties. Therefore, they are entitled to intervention as of right. Fed. R. Civ. P. 24(a). Alternatively, the Sacketts move for permissive intervention. Fed. R. Civ. P. 24(b). Accordingly, this Motion should be granted.

The Sacketts submit their proposed Answer in Intervention herewith, attached to this motion as Attachment 1, and their proposed Opposition to California's Motion for Preliminary Injunction, as Attachment 2. The Sacketts request that the Court resolve this Motion to Intervene before or concurrently with California's pending Motion for Preliminary Injunction, so that the Sacketts may be heard as parties on that matter before the Court resolves it.

## II. Applicants

Chantell and Michael Sackett are the owners of a residential lot in Priest Lake, Idaho, which is the subject of an EPA jurisdictional determination and compliance order issued in 2008.[1] Sackett Decl. ¶¶ 3-9 and Exhibits A & B thereto.  EPA asserted Clean Water Act authority over the lot on the ground that the property contains wetlands regulated under the Clean Water Act as "adjacent wetlands." Sackett Decl. ¶¶ 6-7, 9, Exhibits A & B. The Sacketts' subsequent challenge to the compliance order and assertion of Clean Water Act authority over the lot was the subject of the

---

[1] The compliance order was recently withdrawn, but the jurisdictional determination was not.

Mot. to Intervene & Mem. in Support
No. 3:20-cv-03005-RS                                          1

Supreme Court's 2012 decision in *Sackett v. EPA*, 566 U.S. 120 (2012) (district courts have subject matter jurisdiction under APA to review EPA compliance orders as final agency actions). Following remand, the district court upheld EPA's assertion of regulatory authority. That decision is presently pending on appeal in the Ninth Circuit. *See* Sackett v. EPA, No. 19-35469 (9th Cir.). As a result of EPA's jurisdictional determination and compliance order, the Sacketts have been unable to build a home on their residentially-zoned vacant lot for the last 13 years. Sackett Decl. ¶¶ 5-6, 10-11.

The administrative record of the compliance order demonstrates that the Sacketts' residential lot has no surface water connection to a jurisdictional water of the United States. Sackett Decl. ¶ 9, and Exhibits A & B. It is separated from the closest surface water by an impermeable artificial barrier. Sackett Decl. ¶¶ 3-4, and Exhibits A & B. Under prior versions of the definition of "navigable waters" or "waters of the United States," the government has taken the position that the lot is subject to Clean Water Act regulation despite the lack of surface water connection. *See generally Sacket v. EPA*, 566 U.S. 120.

Under the challenged Navigable Waters Protection Rule's redefinition of "adjacent wetlands," the Sacketts' property is excluded from agency authority under the Clean Water Act. Its lack of surface water connection to any other jurisdictional water and its separation from the closest surface water by an impermeable artificial barrier, are both features which preclude Clean Water Act jurisdiction under the new rule. *See* 33 C.F.R. § 328.3(c)(1) (proposed).

### III.  Background

#### A.  This Lawsuit

On May 1, 2020, Plaintiffs State of California, et al., filed this lawsuit to challenge the U.S. Environmental Protection Agency's and the U.S. Department of the Army, Corps of Engineers' adoption of the Navigable Waters Protection Rule. Plaintiffs allege the new definition of "waters of the United States" conflicts with the text of the Clean Water Act and contradicts the Clean Water Act's objectives. Compl. ¶ 6. Further, they allege that in promulgating the rule, the Agencies' overlooked scientific recommendations and longstanding Agency policies, ignored scientific

///

1  evidence, and unreasonably disregarded the Supreme Court's interpretation of the Clean Water
2  Act, in violation of the Administrative Procedure Act. Compl. ¶¶ 6-12.

3  On May 18, 2020, Plaintiffs filed a motion for preliminary injunction or stay, seeking
4  nationwide injunctive relief against the rule. ECF No. 30, at 39-40.

### B. Clean Water Act and Relation of This Suit to the Sacketts

The Clean Water Act, 33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable waters." 33 U.S.C. § 1311(a), § 1362(12). The Act defines "navigable waters" as "waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The Act defines "the territorial seas" but does not otherwise define "waters of the United States." 33 U.S.C. § 1362(8). Nonexempt discharges require a permit from either the EPA or the Army. Dredge and fill permits from the Army average more than two years, and $250,000 in consulting costs, to obtain. *See Rapanos v United States*, 547 U.S. 715, 721 (2006). Once obtained, dredge and fill permits substantially limit how property encumbered by "navigable waters" can be used by its owner. *See generally* Daniel R. Mandelker, *Practicable Alternatives for Wetlands Development Under the Clean Water Act*, 48 Envtl. L. Rep. News & Analysis 10894 (Oct. 2018).

A person engaged in unpermitted, nonexempt discharges or permit violations faces citizen suits, administrative cease-and-desist and compliance orders, administrative penalties, civil actions for monetary civil penalties and injunctive relief, and criminal prosecution. *See generally*, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 52-53 (1987). These severe burdens make it critically important that the regulated public know what is meant by "navigable waters."

In 1986 the Army adopted an updated regulatory definition that stretched the term "navigable waters" to include all non-navigable wetlands "adjacent" (broadly defined as bordering, contiguous, or neighboring) to regulated tributaries and other regulated waters. *See* 33 C.F.R. § 328.3(a)(1)-(7), and § 328.3(c) (2014) (1986 Regulations).

///

///

In a fractured opinion in *Rapanos*, the Supreme Court invalidated the tributary and adjacent wetlands subsections of the 1986 Regulations as exceeding the scope of the statutory term "navigable waters."

The four-Justice *Rapanos* plurality determined that the language, structure, and purpose of the Clean Water Act all limit federal authority over non-navigable tributaries to "relatively permanent, standing or continuously flowing bodies of water" commonly recognized as "streams, oceans, rivers and lakes[.]" *Id.* at 739. The plurality also limited regulation of non-navigable wetlands to only those that physically abut relatively permanent and continuously flowing waters, such that they have an immediate surface water connection which renders the wetland and water body "indistinguishable." *Id.* at 755.

Justice Kennedy joined the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-abutting wetland if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779 (Kennedy, J., concurring). Justice Kennedy wrote that wetlands could be analyzed under this standard either standing alone or in combination with features similarly situated within an otherwise undefined "region." *Id.* at 780 (Kennedy, J., concurring).

In 2015, after several years of effort to address *Rapanos*, EPA and the Army adopted new regulations (the 2015 Regulations) redefining "navigable waters." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015). Several lawsuits challenged the 2015 Regulations. On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled on summary judgement that the 2015 Regulations violated the Clean Water Act. *Georgia v. Wheeler*, No. 2:15-cv-00079, 2019 WL 3949922 (S.D. Ga. Aug. 21, 2019). That court permanently enjoined and remanded the 2015 Regulations without vacatur. *Id*. at *31. On October 22, 2019, partially in response to the decision in *Georgia v. Wheeler*, EPA and the Army published a regulation that repealed the 2015 Regulations and readopted the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019).

///

On April 21, 2020, EPA and the Army published yet another regulation called the Navigable Waters Protection Rule ("Navigable Waters Protection Rule" or "2020 Regulations"). 85 Fed. Reg. 22,250 (Apr. 21, 2020). The Navigable Waters Protection Rule redefines "adjacent wetlands," 33 C.F.R. § 328.3(a)(4), as wetlands that abut, 33 C.F.R. § 328.3(c)(1)(i), or are flooded by, 33 C.F.R. § 328.3(c)(1)(ii), other regulated non-wetland waters, or are physically separated from them only by natural, 33 C.F.R. § 328.3(c)(1)(iii), or permeable artificial, 33 C.F.R. § 328.3(c)(1)(iv), barriers. 85 Fed. Reg. at 22,338.

Significantly for the Sacketts' interest in this lawsuit, EPA has claimed since 2007 that the 1986 Regulations regulate their property in Idaho as a neighboring wetland. Sackett Decl. ¶¶ 7, 9, Exhibits A & B. Under the Navigable Waters Protection Rule, the Sacketts' property is not regulated, because although it is separated by an artificial barrier (an elevated road) from a tributary to Priest Lake, that barrier is not permeable. Their property has no surface water connection to any other surface water. Sackett Decl. ¶ 4, 9.

Under the Navigable Waters Protection Rule, the Sacketts would be able to finally build a home on their vacant lot without permission from the Army. The nationwide injunction sought by California would prevent that outcome, by preventing the Navigable Waters Protection Rule from taking effect.

**IV.   Argument**

    **A.   The Sacketts Satisfy Rule 24(a) and Should Be Granted Intervention as of Right**

A party has a right to intervene if it (1) applies in a timely manner, (2) claims an interest relating to the subject of the case, which will be impaired or impeded by its disposition, and (3) its interests aren't adequately represented by the existing parties. Fed. R. Civ. P. 24(a). In applying this standard, courts "normally follow 'practical and equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors.'" *Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011) (*en banc*) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). This is because "'[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the Courts.'" *Id.* (quoting *City of Los Angeles*,

288 F.3d at 397-98). Accordingly, a "prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Id*. (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

When analyzing a motion to intervene as of right under Rule 24(a)(2), Ninth Circuit courts apply a four-part test to determine whether to grant an applicant's motion:

(1) The application for intervention must be timely;

(2) The applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action;

(3) The applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and

(4) The applicant's interest must be inadequately represented by the existing parties in the lawsuit.

*Wilderness Soc'y*, 630 F.3d at 1177; Fed. R. Civ. P. 24(a).

### 1. The Sacketts' Motion to Intervene Is Timely

Three factors inform whether a motion to intervene is timely: (1) the stage of the proceedings; (2) prejudice to existing parties; and (3) the reason for any delay in moving to intervene. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). The Sacketts move to intervene at the outset of this litigation. As such, delay is not an issue. *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (noting that a motion to intervene was timely when it was filed within three months of the filing of the complaint and two weeks of the filing of an answer). The complaint in this litigation was filed on May 1, 2020, less than a month prior to the filing of this motion. *See* ECF No. 1. Further, a motion for preliminary injunction, which has the potential to significantly affect the Sacketts' interests, was filed on May 18, just 3 days prior to the filing of this motion. ECF No. 30. No answer has been filed and no substantive matters have been ruled on. Because intervention is sought so early, it will not prejudice any of the parties nor result in significant disruption or delay. Consequently, the Sacketts' motion is timely.

**2.     The Sacketts' Interests Relate to the Subject of This Litigation**

To intervene as of right, a party must have an "interest relating to the property or transaction that is the subject of the action . . . ." Fed. R. Civ. P. 24(a)(2). This interest test is not a bright-line rule but is instead met if applicants will "suffer a practical impairment of [their] interests as a result of the pending litigation." *California ex rel. Lockyer*, 450 F.3d at 441. Accordingly, a court should make a "practical, threshold inquiry," *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), and "'involv[e] as many apparently concerned persons as is compatible with efficiency and due process.'" *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). The types of interests protected are interpreted "'broadly, in favor of the applicants for intervention.'" *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (quoting *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir. 1990)).

The Sacketts have a significant interest in this litigation based on their ownership and use of private land which the Agencies claim contains regulated wetlands under the Clean Water Act. As discussed above, the Sackett's own a residential lot in Priest Lake, Idaho, which, prior to the Defendants' adoption of the Navigable Waters Protection Rule, was found subject to federal permitting authority under the Clean Water Act. Sackett Decl. ¶¶ 7, 9. Should Plaintiffs prevail in this litigation, and the Defendants' redefinition of "adjacent wetlands" be preliminarily or permanently enjoined, the Sacketts' property would remain subject to EPA and Army Corps' claim of permitting authority under the previous rules. Sackett Decl. ¶¶ 10, 14.

The Sacketts are currently engaged in ongoing litigation in the Ninth Circuit regarding federal permitting jurisdiction as to their property. *See Sackett v. EPA*, No. 19-35469 (9th Cir.). Should Plaintiffs' prevail, and the new regulatory redefinition of "adjacent wetlands" is enjoined nationwide and/or vacated, the revival of the prior rule would have a significant negative effect on their ability to use their property without a Clean Water Act permit. Sackett Decl. ¶ 14.

For these reasons, the Sacketts have significant protectable interests in this action as private landowners. *See Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995) ("[W]hen, as here, the injunctive relief sought by plaintiffs will have direct,

immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test of Fed. R. Civ. P. 24(a)(2); [it] has a significantly protectable interest that relates to the property or transaction that is the subject of the action."), *abrogated on other grounds*, *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Indeed, as the objects of the regulation at issue, their interests easily qualify them for intervention. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (noting that there is "ordinarily little question" of standing for the object of a regulation).

### 3. Disposition of This Case May Impair/Impede the Sacketts' Interests

Disposition of this case plainly threatens to impair and impede the Sacketts' interests. The threshold for demonstrating potential impairment of interests is low, as Rule 24(a)'s requirement addresses whether, as a practical matter, a denial of intervention would impede a prospective intervenor's ability to protect its interests. *California ex rel. Lockyer*, 450 F.3d at 442 ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it.").

The interests identified above may be impaired or impeded if the Sacketts are denied intervention. As discussed, if Plaintiffs prevail and the Navigable Waters Protection Rule's definition of "adjacent wetlands" is enjoined nationwide and/or vacated, it will alter the regulations that govern the Sacketts use of their property, to their detriment. *See S.W. Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) ("We follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'") (quoting Fed. R. Civ. P. 24 advisory committee note to 1966 amendment).

### 4. No Party Adequately Represent the Sacketts' Interests

The "burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council*, 66 F.3d at 1498 (citations omitted) (emphasis in the original). *See also Citizens for Balanced Use v. Mountain Wilderness Ass'n*, 647 F.3d at 898 (same); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10

///

1  (1972) ("[T]he burden of making that showing should be treated as minimal."). The Ninth Circuit
2  has established a three-part test for addressing this factor:

3     (1)    Whether the interest of a present party is such that it will undoubtedly make all of
4            a proposed intervenor's arguments;

5     (2)    Whether the present party is capable and willing to make such arguments;

6     (3)    Whether a proposed intervenor would offer any necessary elements to the
7            proceeding that other parties would neglect.

8  647 F.3d at 898. The "most important factor," however, is "'how the interest compares with the
9  interests of existing parties.'" *Id*. If the "'government is acting on behalf of a constituency that it
10 represents,'" then there is "an assumption of adequacy.'" *Id.* (quoting *Arakaki v. Cayetano*, 324
11 F.3d 1078, 1086 (9th Cir. 2003)).

12     The Sacketts meet the "minimal" threshold for demonstrating that the government will not
13 adequately represent their interests, a common conclusion where a regulated party seeks to
14 intervene in a case in which its regulator is also a party. Prior to application of the Ninth Circuit
15 test for this element, it bears noting that the Sacketts and EPA are adverse parties in currently
16 pending litigation over whether the Clean Water Act applies to their property, *see Sackett v. EPA*,
17 Ninth Circuit case no. 19-35469.

18     As to the first element of the Ninth Circuit test, the federal government's public interests
19 are not such that it will undoubtedly make all of the Sacketts' arguments. The government has a
20 variety of regulatory interests implicated by this case, including maximizing its power and
21 discretion. *See Forest Conservation Council*, 66 F.3d at 1499 (noting that the government is more
22 focused on "broad public interests") (collecting cases). *See also Utah Ass'n of Counties v. Clinton*,
23 255 F.3d 1246, 1255 (10th Cir. 2001) (same). As private landowners whose ability to develop, use,
24 and enjoy their residential property is shaped by the challenged regulations, the Sacketts have
25 direct interests in this case that the general public lacks. *See Californians for Safe & Competitive*
26 *Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998) (intervention appropriate
27 where intervenor's interest is narrower and more parochial than those of the public at large). The
28 ///

government may not give the same consideration to these interests as the Sacketts would, given the need to balance other political and policy concerns.

Further, the Sacketts will defend the Rule's redefinition of "adjacent wetlands" on different grounds than we expect the federal defendants will. For instance, the government is likely to defend the rules on grounds that maximize the Agencies' discretion going forward, to preserve agency power. *See* 85 Fed. Reg. 22,250, 22,263 (Apr. 21, 2020) (describing the rule's changes to the scope of wetland regulation as an exercise of agency judgment and discretion). The Sacketts, by contrast, will argue that the redefinition of "adjacent wetlands" is legally compelled by Supreme Court precedent—the controlling plurality opinion in *Rapanos v. United States*. 547 U.S. 715 (2006) (Scalia, J., plurality opinion); *see also* M. Reed Hopper, *Running Down the Controlling Opinion in* Rapanos v. United States, 21 U. Denv. Water L. Rev. 47 (2017-2018). The Clean Water Act and Supreme Court precedent, properly understood, not only permits the Agencies' new regulatory definition of "adjacent wetlands," but requires it.

As to the second element of the Ninth Circuit test, given the Agencies' institutional interest in preserving their judgment, power, and discretion, they are unlikely to be capable of making, or willing to make, all of the Sacketts' arguments. *See* 85 Fed. Reg. at 22,263. Further, the Agencies' inconsistency on the issues raised in this case creates serious doubts as to their ability to steadfastly advance the Sacketts' interests and arguments. In its redefinition of regulated wetlands, the challenged rule reverses earlier rules issued by the very same agencies. Indeed, these conflicting rules are of a very recent vintage. *See* 84 Fed. Reg. 56,626 (Oct. 22, 2019); 80 Fed. Reg. 37,054 (June 29, 2015). Given the vicissitudes of agency politics, there is at least some doubt that the Agencies will be capable of making, and willing to make, all of the same arguments as the Sacketts throughout the course of litigation.

As to the third element of the Ninth Circuit test, as private landowners who are directly affected by the regulatory scheme at issue, the Sacketts provide an important perspective which is currently absent from the case. *Cf. Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255 (10th Cir. 2001) (The minimal inadequacy "showing is met when the applicant for intervention has expertise the government may not have."). In a case otherwise litigated between state and federal

government agencies, the Sacketts bring knowledge and perspective regarding the on-the-ground effects of Clean Water Act regulations and regulatory definitions on private landowners. Further, the Sacketts bring an element of immediacy to the defense of the redefinition of "adjacent wetlands," which is otherwise lacking from the Federal Defendants' interests. Should the Navigable Waters Protection Rule's redefinition of "adjacent wetlands" be enjoined and/or vacated and the prior rules restored, the Sacketts' property would remain subject to an ongoing dispute over federal permitting jurisdiction. This brings an important perspective to the litigation.

### B.   In the Alternative, The Sacketts Satisfy the Standard for Permissive Intervention

If the Court denies the Sacketts' motion to intervene as of right, it should alternatively grant them permission to intervene pursuant to Rule 24(b). Courts have broad discretion to grant intervention under the permissive standard. *See Orange Cty. v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986). Rule 24(b) "'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'" *Employee Staffing Servs. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994) (quoting *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 459 (1940)). Notably, "[u]nlike Rule 24(a), a 'significant protectable interest' is not required by Rule 24(b) for intervention; all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (citing Fed. R. Civ. P. 24(b)).

The Sacketts' defense of the challenged rule raises a question of law or fact in common with Plaintiffs' claims and the government's defenses. For instance, the argument that Supreme Court precedent compels the Agencies' redefinition of regulated wetlands raises a question of law (whether Justice Scalia's plurality opinion or Justice Kennedy's concurring opinion in *Rapanos v. United States* controls), which is also raised by Plaintiffs' complaint. *See* Compl. ¶¶ 7, 58, 60, 61, 69. Therefore, were the Court to conclude that the Sacketts lack a right to intervene, it should allow intervention permissively under Rule 24(b).

///

# CONCLUSION

The Sacketts have a right to intervene or, in the alternative, should be given permission to intervene to protect their interests at stake in this litigation. The motion to intervene should be granted.

DATED: May 21, 2020.

        Respectfully submitted,

        ANTHONY L. FRANÇOIS
        CHARLES T. YATES

        By     /s/ Anthony L. François
                ANTHONY L. FRANÇOIS

        Attorneys for Defendant-Intervenors