MAYER BROWN LLP
Timothy S. Bishop (*pro hac vice*)
Brett E. Legner (*pro hac vice*)
71 S. Wacker Drive
Chicago, IL 60606
Telephone:  (312) 701 7829
Facsimile:  (312) 706 8607
Email: tbishop@mayerbrown.com

C. Mitchell Hendy (State Bar No. 282036)
350 Grand Ave, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 229 5142
Facsimile: (213) 625 0248
Email: mhendy@mayerbrown.com

Colleen M. Campbell (*pro hac vice*)
1999 K Street NW 20006
Washington, DC
Telephone: (202) 263 3413
Facsimile: (202) 263-3300
ccampbell@mayerbrown.com

*Counsel for American Farm Bureau Federation, et al.*
*Proposed Intervenors-Defendants (Refer to signature*
*page for complete list of parties represented)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al., | |
| *Plaintiffs*, | No. 20-cv-03005-RS |
| v. | **REPLY IN SUPPORT OF PROPOSED BUSINESS INTERVENORS' MOTION TO INTERVENE AS DEFENDANTS** |
| ANDREW R. WHEELER, et al., | |
| *Defendants*, | [NO HEARING PER COURT ORDER ECF NO. 80] |
| and | |
| AMERICAN FARM BUREAU FEDERATION, et al. | |
| *Applicant Intervenors-Defendants.* | |

**INTRODUCTION**

This Court should grant proposed Business Intervenors' motion to intervene as of right or, in the alternative, as a matter of permission. Business Intervenors have participated in WOTUS-related litigation for years, often as parties or as intervenors, and courts have repeatedly found their participation helpful to adjudication of the issues. This challenge to the 2020 Rule is no different. Plaintiffs even concede that Business Intervenors' motion is timely; they have a sufficient, legally protected interest in defending the 2020 Rule and advocating for a bright-line definition of WOTUS; and this interest may be impaired as a result of this litigation.

Plaintiffs' opposition to intervention rests on their narrow claim that the agencies will adequately defend Business Intervenors' interests in this case. Notably, the agencies themselves do not advance this argument. Regardless, the briefs submitted in response to plaintiffs' motion for a preliminary injunction already establish that plaintiffs' claim is not true: Business Intervenors make legally relevant arguments in support of their interests that the agencies cannot. Specifically, in seeking emergency injunctive relief, plaintiffs have placed the question of the balance of the equities squarely at issue. Business Intervenors represent many industry groups who, in turn, represent hundreds of thousands of American businesses. In their proposed response to the preliminary injunction motion, Business Intervenors presented evidence explaining the harms they face if the 2020 Rule is enjoined. The agencies did not provide such evidence, nor could they. Plaintiffs' evident desire to exclude Business Intervenors from participating so that they can limit the equities this Court balances is not a valid reason to deny intervention.

Further, the agencies have a different constituency than Business Intervenors and the agencies must balance the interests and needs of the many different groups that comprise the public at large in their rulemaking. That balance inevitably affects the arguments the agencies can and will raise. Thus, while the agencies and Business Intervenors each seek to defend the 2020 Rule, they do so from different legal perspectives, and those perspectives color their arguments. This Court's decisionmaking will be benefitted, not harmed, by consideration of the different perspective Business Intervenors bring to bear, as already illustrated by the briefing on the preliminary injunction motion.

1

1    Business Intervenors also face the possibility that the agencies may be subject to a policy

2    change that requires them to reverse course and stop defending the 2020 Rule at some point during

3    the litigation. This is not mere speculation, as plaintiffs suggest, but rather a lesson learned from

4    the history of litigation about WOTUS rulemaking. For these reasons, Business Intervenors have

5    established that the agencies' representation of their interest "may be inadequate." *Northwest*

6    *Forest Reserve Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996).

7                                           **ARGUMENT**

8        **A.      The Agencies Do Not Adequately Represent Business Intervenors' Interests.**

9            In examining whether the agencies adequately represent Business Intervenors' interests, the

10   Court considers three factors: (1) whether the agencies "will undoubtedly make all of [Business

11   Intervenors] arguments"; (2) whether the agencies are capable and willing to make such arguments;

12   and (3) whether Business Intervenors will offer "any necessary elements to the proceeding that

13   other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "The

14   burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can

15   demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v.*

16   *Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). Applying these factors to the facts

17   of the case as we already know them establishes that the agencies' representation of Business

18   Intervenors' interests may be inadequate.

19       **1. The Agencies Will Undoubtedly *Not* Make All Of Business Intervenors' Arguments.**

20           The preliminary injunction briefing that has already been submitted establishes that the

21   agencies will undoubtedly not make all of Business Intervenors' Arguments—indeed, that briefing

22   proves the opposite. To show that they are entitled to a preliminary injunction, plaintiffs must

23   establish that the balance of equities weighs in their favor. *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

24   Business Intervenors' arguments regarding the balance of the equities focus on the harms to their

25   members from an injunction. Dkt. 94 at 21-25. To support that argument, they attached the affidavit

26   of Don Parrish, Senior Director of Regulatory Affairs at the American Farm Bureau Federation.

27   Dkt. 94-1. Among other things, Mr. Parrish explained in detail the harms to farmers, ranchers,

28

builders, mine operators, and other landowners or operators that would occur if the 2020 Rule were enjoined. *Id.* at 17-20.

The agencies, however, did not raise these arguments in their response. Dkt. 106 at 36-37. Nor could they, because they lack the requisite knowledge to properly develop an argument about the harm to the regulated business community. This is "far more than [a] difference in litigation strategy between the United States and the proposed intervenors," because it is a difference in which parties are able to present necessary evidence. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444-45 (9th Cir. 2006). To use plaintiffs' words, "the government's neglect of the intervenors' arguments [is] 'not just a theoretical possibility; it ha[s] already done so.'" Dkt. 142 at 3 (quoting *Lockyer*, 450 F.3d at 444). Therefore, plaintiffs' authority such as *People ex rel. State of California v. Tahoe Regional Planning Agency*, 792 F.2d 775 (9th Cir. 1986), is inapposite because Business Intervenors have identified arguments that the agencies cannot make and interests that the agencies cannot adequately represent.

Further—and an issue that runs through the entire litigation, not only the standards for issuance of a preliminary injunction—the agencies do not represent the interests of any one group. Instead, they must balance many diverse interests as part of their rulemaking, *see* 85 Fed. Reg. 22,250, 22,260-61 (Apr. 21, 2020) (describing the many stakeholders the agencies met with during the rulemaking process), and that necessarily makes them an inadequate representative of Business Intervenors' interest. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) ("The government must present the broad public interest, not just the economic concerns of the timber industry."); *see also Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (a regulated party does not share the same ultimate objectives with the government when the party's interest are "potentially more narrow and parochial than the interests of the public at large").

**2. The Agencies Are Not Capable Of Making All Of Business Intervenors' Arguments.**

This discussion shows that the agencies lack the knowledge to develop certain arguments, such as harm to the regulated community, and it is improper for them to advance the interests of only some parts of the general public at large. This factor weighs in favor of finding that the

1   agencies' representation of Business Intervenors' interest is inadequate.

2       This case reaches the Court after years of complex, crisscrossing litigation (that is still live)

3   about the lawful scope of the agencies' jurisdiction over Business Intervenors' members' land. The

4   agencies and the proposed Business Intervenors have frequently been placed on the opposite sides

5   of that litigation because the agencies' ultimate interest as regulators in managing resources simply

6   does not match the interests of private industry, business, and landowners. The agencies' ultimate

7   objective is not to advance, for example, the ability of homebuilders to build without the need to

8   pay them for more permits. Nor are the agencies tasked with a duty to represent the interests of a

9   landowner who wants to harvest or farm greater amounts of her land without paying for a permit.

10  Thus, while the end result both parties seek may be the same, the rationales offered and interests

11  served will be different. These concerns present more than mere strategic differences because these

12  differences, even if sometimes subtle, may shape the outcome of the litigation and ultimate validity

13  of the Rule in different ways.

14      It also is not unduly speculative to surmise that Business Intervenors may even be required

15  to defend the merits of the 2020 Rule on their own. In past litigation regarding the definition of

16  WOTUS, the agencies ultimately declined to defend the 2015 definition of WOTUS on the merits,

17  leaving that task to a group of intervenors. *See* Dkt. 43 at 23. It is not unreasonable to contemplate

18  that may occur again.

19      For this reason, *LULAC v. Wilson*, 131 F.3d 1297 (9th Cir. 1997), is distinguishable. There,

20  the putative intervenor offered nothing beyond an unsupported prophesy that a future

21  administration may not vigorously defend a law and the court held that "mere change from one . . .

22  administration to another" does not provide a basis for intervention. *Id.* at 1307. But Business

23  Intervenors have shown more: the definition of WOTUS has been a matter of dispute between past

24  administrations that has actually resulted in the refusal of one administration to defend a prior

25  administration's rulemaking. Similarly, the Ninth Circuit's statement in *Freedom from Religion*

26  *Foundation, Inc. v. Geithner*, 644 F.3d 836, 842 (9th Cir. 2011), that "the mere possibility that the

27  federal defendants *might* decline to appeal" is not sufficient to show inadequate representation is

28  inapplicable here where Business Intervenors' concerns are based on past events, not an

4

unsupported hypothesis. *See also*, *e.g.*, https://thehill.com/policy/energy-environment/479630-pelosi-slams-trump-administrations-new-water-rule-an-outrageous (Speaker of the House quoted as calling 2020 Rule "outrageous" and "shameful").  In any event, and as opposed to this case, the putative intevenors in *LULAC* and *Freedom from Religion* did not claim that they could make arguments or offer relevant evidence that the government defendants could not.

**3. Business Intervenors Will Offer Necessary Perspective And Factual Development.**

This discussion also shows that, far from being "redundant," as Plaintiffs argue (Dkt. 142 at 9-10), Business Intervenors will offer unique factual development and perspective regarding the operation of the 2020 Rule and the prior Rules. Such contribution is immediately necessary for a full analysis of the balance-of-the-harms and public-interest elements of the preliminary injunction standard and will remain relevant through the course of the lawsuit.

**4. The Relevant Factors All Favor Intervention.**

Plaintiffs treat the three factors to determine whether an existing party will adequately represent the interests of a proposed intervenor as elements that must be satisfied. That is incorrect; they are factors to be weighed and they all easily weigh in favor of intervention. Plaintiffs' argument that the proposed Business Intervenors do not offer necessary, or even helpful, perspective is disingenuous. Business Intervenors are in the best position to brief the harm to the regulated business community and the confusion and disruption caused by the significant nexus standard. Only they can provide expertise regarding the impact of different WOTUS definitions on the regulated community and businesses across America. It is not possible for the agencies to present such arguments and they cannot obtain this information from discovery. And in seeking preliminary injunctive relief, plaintiffs have already placed Business Intervenors' unique knowledge and experience at issue in this litigation.

**B.     Alternatively, the Proposed Business Intervenors Should Be Allowed to Intervene Permissively.**

Plaintiffs focus on a few of the many relevant considerations for determining whether to grant permissive intervention. *See Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th

1   Cir. 1977) (enumerating non-exclusive list of considerations). But even the four factors plaintiffs

2   cherry-pick favor intervention. *See* Dkt. 142 at 12-13. First, as explained in Part A, the agencies

3   may not adequately represent Business Intervenors' interest. Second, plaintiffs incorrectly claim

4   that Business Intervenors have not identified any arguments they will raise (*id*. at 12), but they

5   completely ignore the Business Intervenors' response to the preliminary injunction motion,

6   including the arguments about harm to the business community. Dkt. 94. Third, Business

7   Intervenors will not delay the litigation and will abide by the parties' deadlines, as they have shown

8   by the timing of filing their proposed response to the preliminary injunction motion. Moreover,

9   plaintiffs concede that the motion to intervene was brought at the earliest possible stage of the case

10  and was timely and not the product of undue delay. Fourth, Business Intervenors have already

11  contributed to important factual development regarding the effect of past Rules and the harm of an

12  injunction on the regulated community.

13      As plaintiffs have conceded, the Business Intervenors have an important stake in the

14  resolution of this case. If the Business Intervenors are not permitted to defend it here, that interest

15  stands to be impaired. Further, the Court will benefit from a vigorous presentation from the business

16  community. The Court should therefore permit the Business Intervenors to participate in this case.

17      **C.    Business Intervenors Should Be Allowed To Intervene Regardless Of Other
            Intervenors.**

18

19      Plaintiffs seek to limit the different interests that may be heard in this litigation by arguing

20  that the Court should not allow both Business Intervenors and the Sacketts to intervene, or should

21  crunch their different perspectives into one brief. Dkt. 142 at 13-14. But, contrary to plaintiffs'

22  argument (*id*.), Business Intervenors and the Sacketts are not "similarly situated." Two individual

23  landowners concerned with a single project have different interests and views than a large cross-

24  section of the Nation's construction, transportation, real estate, mining, manufacturing, forestry,

25  agriculture, livestock, and energy sector, representing a large portion of U.S. economic activity.

26  And the Sacketts are concerned with just one part of the 2020 Rule—the definition of "adjacent

27  wetlands." Dkt. 147 at 2. The Business Intervenors seek to defend the 2020 Rule as a whole on

28

6

1    behalf of American farmers, ranchers, construction workers, homebuilders, and landowners across

2    the nation. Dkt. 43.

3          Not only do the Sacketts and Business Intervenors represent different interests and

4    perspectives, their approaches to the core legal issues do not match. Most obviously, Business

5    Intervenors argue that the agencies' interpretation of the 2020 Rule is a permissible construction of

6    the CWA, whereas the Sacketts argue that it is compelled. *See* Dkt. 147 at 8. Because these legal

7    views are irreconcilable, it makes no sense to require both intervenors to file a joint brief, let alone

8    only permit one or the other to intervene.

9          Finally, Plaintiffs themselves came to the Court asking for significantly more pages to brief

10   the complex issues before this Court. Dkt. 12. The Business Intervenors have not done so, but filed

11   a proposed opposition to the preliminary injunction motion that complied with this Court's standard

12   page limits. It would be inequitable to restrict the Business Intervenors to less than the standard

13   allocation.

14                                    **CONCLUSION**

15         For the foregoing reasons, the proposed Business Intervenors respectfully request that the

16   Court grant the motion to intervene.

17         Dated this 9th day of June, 2020.

18                                                          MAYER BROWN LLP

19                                                          */s/ C. Mitchell Hendy*
                                                            C. Mitchell Hendy (State Bar No. 282036)
20                                                          350 Grand Ave, 25th Floor
                                                            Los Angeles, CA 90071
21                                                          Telephone: (213) 229 5142
                                                            Facsimile: (213) 625-0248
22                                                          Email: Mhendy@mayerbrown.com

23                                                          Timothy S. Bishop (*pro hac vice*)
                                                            Brett E. Legner (*pro hac vice*)
24                                                          71 S. Wacker Drive
                                                            Chicago, IL 60606
25                                                          Telephone:  (312) 701 7829
                                                            Facsimile:  (312) 706 8607
26                                                          Email: tbishop@mayerbrown.com

27

28

Colleen M. Campbell (*pro hac vice*)
1999 K Street NW 20006
Washington, DC
Telephone: (202) 263 3413
Facsimile: (202) 263-3300
ccampbell@mayerbrown.com

*Attorneys for proposed Business-Intervenors
Defendants*
American Farm Bureau Federation;
American Petroleum Institute; American
Road and Transportation Builders
Association; Chamber of Commerce of the
United States of America; Edison Electric
Institute; Leading Builders of America;
National Alliance of Forest Owners; National
Association of Home Builders; National
Cattlemen's Beef Association; National Corn
Growers Association; National Mining
Association; National Pork Producers
Council; National Stone, Sand, and Gravel
Association; Public Lands Council; and U.S.
Poultry & Egg Association

REPLY ISO PROPOSED BUSINESS INTERVENORS' MOT. TO INTERVENE
CASE NO. 20-cv-03005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed and thereby caused the foregoing document to be served via the CM/ECF system in the United States District Court for the Northern District of California on all parties registered for CM/ECF in the above-captioned matter.

Dated at Los Angeles, California, this 9th day of June, 2020.

*s/ C. Mitchell Hendy*