Bradley A. Benbrook (SBN 177786)
Benbrook Law Group
400 Capitol Mall, Ste 2530
Sacramento, CA 95814
Tel: (916) 447-4900
Fax: (916) 447-4904
Email: brad@benbrooklawgroup.com
*Counsel for Intervening States*

PATRICK MORRISEY
  *West Virginia Attorney General*
Lindsay S. See
  *Solicitor General*
Thomas T. Lampman
  *Assistant Solicitor General*
West Virginia Office of the Attorney General
1900 Kanawha Blvd. East
Building 1, Room E-26
Tel: (304) 558-2021
Fax: (304) 558-0140
Email: lindsay.s.see@wvago.gov
*Counsel for Intervenor State of West Virginia*

CHRISTOPHER M. CARR
  *Attorney General of Georgia*
Andrew A. Pinson
  *Solicitor General*
Ross W. Bergethon
  *Deputy Solicitor General*
Drew F. Waldbeser
  *Assistant Solicitor General*
Office of the Georgia Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334
Tel: (404) 651-9453
Fax: (404) 656-2199
Email: apinson@law.ga.gov
*Counsel for Intervenor State of Georgia*

(Add'l Counsel Listed on Signature Page)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

State of California, *et al.*,
                    *Plaintiffs,*

v.

Andrew Wheeler, *et al.*,
                    *Defendants.*

Case No. 3:20-cv-3005-RS

**STATE INTERVENORS' NOTICE OF MOTION AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hr'g Date:     June 3, 2021
Hr'g Time:     1:30 pm
Dep't:         San Francisco Courthouse,
               Courtroom 3, 17th Floor
Judge:         Honorable Richard Seeborg
Action Filed:  May 1, 2020

# TABLE OF CONTENTS

**Page**

Notice Of Motion And Cross-Motion For Summary Judgment ......................................................1

Memorandum Of Points And Authorities ....................................................................................1

Introduction..................................................................................................................................1

Statement......................................................................................................................................2

Standard Of Review.....................................................................................................................4

Argument ......................................................................................................................................5

I.      The Rule Is Consistent With The Act's Text, Structure, And Purpose ....................................5

A.     The Act Does Not Extend Federal Jurisdiction to Ephemeral Streams or Physically Isolated Wetlands..................................................................................................................................5

1.     The weight of authority supports excluding ephemeral features and physically isolated wetlands from the "waters of the United States".........................................................................6

2.     The Agencies' interpretation is not foreclosed by a *Rapanos* "majority" made from Justice Kennedy's concurrence and the dissent..................................................................................10

B.     The Act Does Not Authorize Jurisdiction Over "Interstate Waters" with No Connection to Navigable Waters .......................................................................................................................15

II.     Adopting The Rule Was Not Arbitrary And Capricious .........................................................16

A.     The 2020 Rule Reasonably Strives to Protect Water Quality Through the Act's Cooperative Federalism Framework ...............................................................................................................17

B.     The Agencies Did Not Unreasonably Set Aside Plaintiffs' Reliance Interests.......................20

Conclusion ..................................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkansas* v. *Oklahoma*,
    503 U.S. 91 (1992) ................................................................................................16

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*,
    273 F.3d 481 (2nd Cir. 2001) ...............................................................................20

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*,
    846 F.3d 492 (2d Cir. 2017) ..................................................................................20

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) .......................................................................................2, 4, 5

*City of Milwaukee v. Illinois & Michigan*,
    451 U.S. 304 (1981) ..............................................................................................16

*Colorado v. U.S. Envtl. Prot. Agency*,
    445 F. Supp. 3d 1295 (D. Colo. 2020), ................................................................15

*Coyt v. Holder*,
    593 F.3d 902 (9th Cir. 2010) .............................................................................4, 5

*Dept. of Homeland Security. v. Regents of the Univ. of California*,
    140 S. Ct. 1891 (2020) ....................................................................................21, 22

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016) ..........................................................................................22

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ................................................................................................4

*Frlekin v. Apple, Inc.*,
    979 F.3d 639 (9th Cir. 2020) ..................................................................................4

*Georgia v. Pruitt*,
    326 F. Supp. 3d 1356 (S.D. Ga. 2018) ...................................................................3

*Georgia v. Wheeler*,
    418 F. Supp. 3d 1336 (S.D. Ga. 2019) .......................................................3, 10, 16

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991) ..............................................................................................20

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*In re EPA,*
   803 F.3d 804 (6th Cir. 2015), *vacated sub nom. In re United States Dep't of
   Def.*, 713 F. App'x 489 (6th Cir. 2018) ............................................................3, 10

*Int'l Paper Co. v. Ouellette,*
   479 U.S. 481 (1987) ..................................................................................................16

*Marks v. United States,*
   430 U.S. 188 (1977) ..................................................................................................12

*N. California River Watch v. City of Healdsburg,*
   496 F.3d 993 (9th Cir. 2007) ....................................................................................13

*N.L.R.B. v. Bell Aerospace Co. Div. of Textron,*
   416 U.S. 267 (1974)...................................................................................................22

*Nat'l Cable & Telecommunications Assn. v. Brand X Internet Services,*
   545 U.S. 967 (2005)...................................................................................................14

*North Dakota v. EPA,*
   127 F. Supp. 3d 1047 (D.N.D. 2015) ...................................................................3, 10

*Or. Cattlemen's Ass'n v. EPA,*
   No. 19-564 (D. Or. July 26, 2019) ..............................................................................3

*PPL Montana, LLC v. Montana,*
   565 U.S. 576 (2012) ..................................................................................................19

*Rapanos v. United States,*
   547 U.S. 715 (2006)..................................................5, 8, 9, 10, 11, 12, 13, 16, 20

*Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers,*
   531 U.S. 159 (2001)...............................................................................................7, 19

*Texas v. EPA,*
   No. 3:15-cv-162, 2018 WL 4518230 (S.D. Tex. Sept. 12, 2018).........................3, 10

*United States v. Davis,*
   825 F.3d 1014 (9th Cir. 2016) (en banc) ......................................................12, 13, 14

*United States v. Epps,*
   707 F.3d 337 (D.C. Cir. 2013)...................................................................................12

*United States v. Penn. Indus. Chem. Corp.,*
   411 U.S. 655 (1973)...................................................................................................21

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*United States v. Riverside Bayview Homes, Inc.*,
　　474 U.S. 121 (1985) ................................................................................................7

*United States v. Robertson*,
　　875 F.3d 1281 (9th Cir. 2017) ..............................................................................14

**Statutes**

33 U.S.C. § 1251 ....................................................................................................18, 19

33 U.S.C. § 1255 ............................................................................................................3

33 U.S.C. § 1313 ..........................................................................................................18

33 U.S.C. § 1342 ......................................................................................................3, 18

33 U.S.C. § 1344 ............................................................................................................3

33 U.S.C. § 1362 ............................................................................................................3

33 U.S.C. § 1370 ......................................................................................................3, 18

33 U.S.C. § 1377 ..........................................................................................................18

**Regulations**

Navigable Waters Protection Rule: Definition of "Waters of the United States,"
　　85 Fed. Reg. 22,250 (Apr. 21, 2020) ..............................1, 4, 6, 7, 8, 9, 16, 18, 19

**Rules**

Federal Rule of Civil Procedure Rule 56 ........................................................................1

**Other Authorities**

Gillian E. Metzger, *Ordinary Administrative Law As Constitutional Common
　　Law*, 110 Colum. L. Rev. 479 (2010) ....................................................................21

U.S. Envt'l Prot. Agency & Dept. of the Army, *Economic Analysis of the EPA-
　　Army Clean Water Rule* (May 20, 2015) ..................................................................3

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

Zachary S. Price, *Reliance on Nonenforcement*, 58 Wm. & Mary L. Rev. 937
    (2017)..............................................................................................................................22

1 | **NOTICE OF MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT**

2 | TO ALL PARTIES AND COUNSEL OF RECORD:

3 |     Please take notice that, on June 3, 2021, at 1:30 pm, or as soon as it may be heard, the States

4 | of Georgia, West Virginia, Alabama, Alaska, Arkansas, Idaho, Indiana, Kansas, Kentucky,

5 | Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South

6 | Carolina, South Dakota, Tennessee, Texas, Utah, and Wyoming ("State Intervenors"), by and

7 | through their undersigned counsel, will, and hereby do, cross move for summary judgment

8 | pursuant to Rule 56 of the Federal Rules of Civil Procedure.  This motion will be made before the

9 | Honorable Judge Richard Seeborg, San Francisco Courthouse, Courtroom 3 – 17th Floor, 450

10 | Golden Gate Avenue, San Francisco, California 94102.

11 |     The State Intervenors submit in support of this motion the Memorandum Of Points And

12 | Authorities, which opposes Plaintiffs' motion for summary judgment and explains the grounds for

13 | the State Intervenors' cross-motion; the administrative record for The Navigable Waters Protection

14 | Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020); and the

15 | Court's entire record in this case.

16 | **MEMORANDUM OF POINTS AND AUTHORITIES**

17 | **INTRODUCTION**

18 |     On April 21, 2020, the Environmental Protection Agency and Army Corps of Engineers

19 | (collectively, "the Agencies") finalized the Navigable Waters Protection Rule, which clarified the

20 | scope of their regulatory responsibilities under the Clean Water Act ("the Act" or "CWA").  85

21 | Fed. Reg. 22,250 (Apr. 21, 2020) ("the Rule" or "the 2020 Rule").  The Rule set forth the Agencies'

22 | interpretation of the statutory term "waters of the United States," or those waters subject to federal

23 | regulation under the Act.  Plaintiffs—17 States, two cities, and a state agency—moved for a

24 | preliminary injunction against the Rule, arguing that the Agencies took an overly modest approach

25 | to their authority by not regulating non-navigable, ephemeral waters.  The Court denied the motion,

26 | primarily because Plaintiffs were unlikely to succeed on the merits.  ECF No. 171 ("Order"), at

27 | 12, 14.

28 |

Plaintiffs' motion for summary judgment, ECF No. 214 ("Pls.' Mot."), largely echoes the positions this Court rejected last summer as "little more than policy arguments."  Order at 11. Plaintiffs argue that the Rule's construction of the statute is inconsistent with the Act, Pls.' Mot. at 28-41, and that adopting the Rule was arbitrary and capricious, *id.* at 17-28.  These arguments fail for the same reasons the Court has already explained.  And indeed, full briefing on these issues now shows that the Agencies, not Plaintiffs, are the parties entitled to summary judgment.

*First*, the Agencies' interpretation of the Act respects its textual limits and follows binding Supreme Court precedent interpreting the limits of the term "waters of the United States." Plaintiffs claim that the 2020 Rule is an "impermissible" interpretation of the Act, Pls.' Mot. at 29, but this is an untenable position.  The statute's plain language does not mandate Plaintiffs' preferred construction, and their argument requires cobbling together controlling law through a Supreme Court concurrence and dissent that—at most—could only shed light on what the Act allows, not what it mandates.  Indeed, the weight of recent decisions across the country confirms that the Act *never* allows the expansive jurisdictional sweep Plaintiffs seek.  The 2020 Rule thus is not "manifestly contrary to the statute."  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).

*Second*, the Agencies' decision to adopt the Rule was not arbitrary or capricious.  Plaintiffs fault the Agencies for not elevating one of the Act's goals above other considerations, including the statute's textual limits, and for failing to give due consideration to federalism and Plaintiffs' reliance interests.  These criticisms also miss the mark.  The Agencies reasonably balanced the Act's multiple purposes, and the Rule's restrained approach to exerting regulatory power respects Congress's specific choice that the Act would follow principles of cooperative federalism—that is, maintaining distinct and traditional spheres of state and federal authority instead of claiming power for the Agencies to regulate the vast majority of the Nation's waters directly.

## STATEMENT

The statutory term "waters of the United States" limits the scope of federal regulatory jurisdiction under the Act.  The Act's key permitting programs for discharges of pollutants and

"dredged or fill material," 33 U.S.C. §§ 1342, 1344, require permits for discharges into "navigable waters"; these are defined as "the waters of the United States, including the territorial seas," *id.* § 1362(7). By contrast, the Act's many non-regulatory programs—such as grant, research, and planning programs—apply to all waters, not merely "waters of the United States." *See, e.g.*, *id.* § 1255(a)(1) (providing grants to States for researching ways to combat pollution in "any waters"). And the Act expressly preserves the States' sovereign authority to regulate *other* waters or wetlands beyond this category, *see id.* § 1370 (declaring that "[e]xcept as expressly provided in this chapter, nothing in this chapter shall . . . be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States").

Despite this statutory divide between jurisdictional waters and those outside the scope of federal regulatory power, the Agencies published a new rule in 2015 that expanded their interpretation of "waters of the United States" to include the "vast majority of the nation's water features." U.S. Envt'l Prot. Agency & Dept. of the Army, *Economic Analysis of the EPA-Army Clean Water Rule* at 11 (May 20, 2015) (Docket ID: EPA-HQ-OW-2011-0880-20866), https://www.regulations.gov/document?D=EPA-HQ-OW-2011-0880-20866. Many parties quickly challenged this sweeping expansion in numerous court cases. By September 2019, the 2015 rule had been subject to a nationwide stay, then ultimately enjoined in more than half of the States—in several cases, based on the conclusion that the Agencies had exceeded their statutory authority. *See In re EPA*, 803 F.3d 804, 807 (6th Cir. 2015), *vacated sub nom. In re United States Dep't of Def.*, 713 F. App'x 489 (6th Cir. 2018); *Or. Cattlemen's Ass'n v. EPA*, No. 19-564 (D. Or. July 26, 2019); *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1367, 1381-83 (S.D. Ga. 2019); *Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1364 (S.D. Ga. 2018); *Texas* v. *EPA,* No. 3:15-cv-162, 2018 WL 4518230, at *1 (S.D. Tex. Sept. 12, 2018); *North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1056 (D.N.D. 2015).

The Agencies took these repeated judicial rebukes to heart, repealing the 2015 rule and ultimately promulgating the 2020 Rule in its place. This Rule includes as "waters of the United States" only those categories of waters and wetlands that the Supreme Court has indicated are

within the Act's scope: Relatively permanent waters that contribute surface flow to traditionally navigable waters, and wetlands adjacent to those waters.  *See* 85 Fed. Reg. 22,252.  The Agencies declined to assert broader jurisdiction; in particular, they decided not to exercise jurisdiction over categories of waters the Supreme Court has held or indicated are outside the Act's reach, such as ephemeral waters and isolated wetlands.

This challenge followed.  On June 19, 2020, the Court denied Plaintiffs' motion for a preliminary injunction or order staying the 2020 Rule's effective date.  *See* Order.  The Court noted that while it may not agree that the Rule represents "the best approach to protecting water resources that could be supported by the scientific data," it has a "narrow role" in evaluating the Agencies' decisions on this score.  Order at 1.  Accordingly, it denied preliminary relief based largely on its conclusion "that plaintiffs have not shown a likelihood of success on the merits."  Order at 7. Plaintiffs moved for summary judgment on November 23, 2020; the State Intervenors now oppose and move for summary judgment for defendants.

## STANDARD OF REVIEW

Summary judgment is appropriate only "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc*., 979 F.3d 639, 643 (9th Cir. 2020) (citation omitted).  When determining whether the Agencies acted within their statutory authority, courts apply the familiar *Chevron* standard.  *Coyt v. Holder*, 593 F.3d 902, 905 (9th Cir. 2010).  First, the Court must examine "whether Congress has directly spoken to the precise question at issue," an inquiry that turns on the "particular statutory provision" and its context.  *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842 (1984); *Food & Drug Admin. v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 133 (2000).  If Congress did not address the precise issue—or in terms of Plaintiffs' argument, if Congress did not *require* the Agencies to regulate expansively—then courts "must respect the [Agencies'] construction of the statute so long as it is permissible." *Coyt*, 593 F.3d at 905.  Further, courts may only reject interpretations that are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 844.

**ARGUMENT**

Plaintiffs argue that the Rule's interpretation of the Act violates the statute's express commands, and is otherwise arbitrary and capricious and inconsistent with its goals. Pls.' Mot. at 17-41. Each of these arguments fails. The correct view of the statutory text and Supreme Court precedent mandates summary judgment for the defendants because the Agencies correctly refused to expand their jurisdiction beyond the limits Congress set.

As Plaintiffs recognize, the 2020 Rule follows generally the four-Justice plurality decision in *Rapanos v. United States*, 547 U.S. 715, 757 (2006). *E.g.*, Pls.' Mot. at 29. The crux of Plaintiffs' argument, however, is that the Agencies committed reversible error by not following a more expansive view of their jurisdiction patched together from Justice Kennedy's concurrence in *Rapanos* and that of the four Justices in dissent. This "majority," in Plaintiffs' view, "established the boundaries of the Agencies' discretion when interpreting the statutory language at issue." *Id.* *Rapanos* is a fractured decision, to be sure. But the Agencies were not required to toss its four plurality votes aside in favor of the four dissenting votes, as Plaintiffs contend. Instead, the Agencies correctly followed the through line from the plurality and concurrence—a view that is consistent with other Supreme Court precedent, the Act's cooperative federalism regime, and the decisions of multiple courts across the country that invalidated the 2015 rule in recent years.

This correct view of the statute resolves Plaintiffs' remaining arguments, too. Plaintiffs may prefer a definition of "waters of the United States" that looks more like the 2015 rule than what the Agencies chose, but arguments about the statute's purpose or policy considerations cannot override its textual limits. The Act's text precludes Plaintiffs' favored approach—or at a minimum, permits the Agencies' approach as a reasonable interpretation of the goals and limits Congress wrote into the Act.

**I.     The Rule Is Consistent With The Act's Text, Structure, And Purpose.**

**A.     The Act Does Not Extend Federal Jurisdiction to Ephemeral Streams or Physically Isolated Wetlands.**

The 2020 Rule interprets "waters of the United States" to include "[1] relatively permanent flowing and standing waterbodies that are traditional navigable waters in their own right or that

have a specific surface water connection to traditional navigable waters, as well as [2] wetlands that abut or are otherwise inseparably bound up with such relatively permanent waters." 85 Fed. Reg. at 22,273. As relevant here, that definition excludes two types of land or water features. *First*, it expressly excludes "ephemeral" features, defined as those that "flow[] or pool[] only in direct response to precipitation." *Id*. at 22,292. The Rule also excludes ephemeral features through its definition of jurisdictional "tributaries": Tributaries must "contribute[] surface water flow" to a traditional navigable water in a "typical year," either "continuously year-round" or "continuously during certain times of the year and more than in direct response to precipitation." *Id*. *Second*, the Rule excludes wetlands that are physically isolated from any jurisdictional waters. To be "adjacent wetlands" covered by the Rule, a wetland must "touch at least one side of" a jurisdictional water, be inundated by flooding from jurisdictional waters in a typical year, or be physically separated by only specified natural features, or artificial features that allow for a "direct hydrologic surface connection" between the wetland and jurisdictional water. *Id.*

Plaintiffs argue that by excluding ephemeral waters and isolated wetlands the Agencies took an unreasonably *narrow* view of their jurisdiction. That argument has a high hurdle to clear—as the Court signaled last summer when denying preliminary relief, Order at 11-12. Plaintiffs' arguments do not meet the bar now, either. Summary judgment is warranted instead for the Agencies, who need only show that their interpretation is reasonable. Here, binding precedent and persuasive authority from around the country indicate that the Act does not allow the Agencies to go to the lengths Plaintiffs urge, much less require that result.

> **1.** **The weight of authority supports excluding ephemeral features and physically isolated wetlands from the "waters of the United States."**

The Supreme Court has interpreted the statutory term "waters of the United States" in three cases over the last three decades. All three cases bolster the Agencies' decision to exclude ephemeral features and physically isolated wetlands. And multiple decisions examining the outer reach of the Agencies' jurisdiction in the context of the prior 2015 rule confirm this reading of Supreme Court precedent, as well as the Agencies' current, limited interpretation of their powers under the Act.

1    To begin, in 1985 the Supreme Court upheld the Army Corps of Engineers' assertion of

2    jurisdiction over a wetland that "actually abut[ted] on a navigable waterway." *United States v.*

3    *Riverside Bayview Homes, Inc.*, 474 U.S. 121, 135 (1985).  In doing so, the Court affirmed that

4    the statutory term "waters" is a limiting term for purposes of federal jurisdiction. *Id.* at 134.  The

5    Court also recognized that it was not "unreasonable" to conclude that physically "adjacent

6    wetlands are inseparably bound up with the 'waters' of the United States," in part because of "the

7    inherent difficulties of defining precise bounds to regulable waters." *Id.*  Thirty-five years later,

8    the 2020 Rule maintains this interpretation. *See* 85 Fed. Reg. at 22,251 (including as jurisdictional

9    "adjacent wetlands," defined as "wetlands that abut a territorial sea or traditional navigable water,

10   a tributary, or a lake, pond, or impoundment of a jurisdictional water").  Substantially undercutting

11   Plaintiffs' position on the Agencies' duty to regulate broadly, however, *Riverside Bayview* does not

12   suggest that even this more modest interpretation of "waters of the United States" is *required* when

13   the Agencies exercise jurisdiction under the Act.

14   Next, in *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*

15   ("*SWANCC*"), the Court held that the Agencies exceeded the Act's limits by asserting jurisdiction

16   over isolated ponds formed in abandoned gravel-mining trenches.  531 U.S. 159, 174 (2001).  The

17   Court reaffirmed that the Act allows jurisdiction over "at least some waters that would not be

18   deemed 'navigable' under the classical understanding of that term," like the waters in *Riverside*

19   *Bayview*. *Id.* at 167.  But, the Court explained, the Agencies were not free to "give . . . no effect

20   whatever" to the term "navigable." *Id.* at 172.  That piece of statutory text shows "what Congress

21   had in mind as its authority for enacting the CWA: its traditional jurisdiction over waters that were

22   or had been navigable in fact or which could reasonably be so made." *Id*; *see also id.* at 168

23   (finding persuasive "the Corps' original interpretation of the CWA," which "emphasized that '[i]t

24   is the water body's capability of use by the public for purposes of transportation or commerce

25   which is the determinative factor'"; citation omitted).

26   The 2020 Rule avoids the fatal mistake identified in *SWANCC*: It treats the term "navigable

27   waters" as a limiting principle, not regulatory license.  By including only traditional navigable

28

1    waters and waters with specific surface water connections to them or inseparably bound up with

2    them, the Rule expressly "would not allow for the exercise of jurisdiction over waters similar to

3    those at issue in *SWANCC*." 85 Fed. Reg. at 22,265. *SWANCC* counsels that this was the right

4    choice.

5    Fifteen years after *SWANCC*, the Court vacated another overbroad assertion of Clean Water

6    Act jurisdiction—this time over wetlands next to artificial ditches which, through a series of other

7    artificial ditches or drains, eventually connected to navigable waters a mile or more away.

8    *Rapanos*, 547 U.S. 715, 757 (2006) (plurality op.). In *Rapanos*, a four-Justice plurality led by

9    Justice Scalia explained that the term "waters of the United States" includes only "relatively

10   permanent, standing or continuously flowing bodies of water forming geographic features that are

11   described in ordinary parlance as streams, oceans, rivers, and lakes." *Id.* at 739. It "does not

12   include channels through which water flows intermittently or ephemerally, or channels that

13   periodically provide drainage for rainfall." *Id.* As for wetlands, the statute reaches only those

14   "with a 'continuous surface connection'" to jurisdictional waters. *Id.* at 742.

15   Justice Kennedy, concurring in the judgment, disagreed with aspects of the plurality's test.

16   547 U.S. at 776. But he also insisted that the statute imposed meaningful limits on the Agencies'

17   jurisdiction. Specifically, he rejected the dissenting Justices' position that the Agencies could

18   define "tributaries" so broadly that, when used as a jurisdictional hook for "adjacent" wetlands, it

19   would sweep in features "little more related to navigable-in-fact waters than [*SWANCC*'s] isolated

20   ponds." *Id.* at 781-82. He was concerned that the dissent's overly expansive interpretation would

21   allow "federal regulation whenever wetlands lie alongside a ditch or drain, however remote and

22   insubstantial, that eventually may flow into traditional navigable waters," and would otherwise

23   erase the Act's "central requirement . . . that the word 'navigable' in 'navigable waters' be given

24   some importance." *Id.* at 778. He thus reached the same outcome as the plurality, albeit through

25   a third approach: He deemed waters or wetlands jurisdictional if they had a "significant nexus" to

26   traditional navigable waters, meaning that they, "alone or in combination with similarly situated

27

28

lands in the region, significantly affect the chemical, physical, and biological integrity" of traditional navigable waters.  *Id.* at 780.

Here, too, the 2020 Rule respects the limits on CWA jurisdiction that the plurality's and Justice Kennedy's opinions identified.  The Agencies largely incorporated the plurality's approach.  *Compare* 85 Fed. Reg. at 22,273 (describing the Rule as encompassing "relatively permanent flowing and standing waterbodies that are traditional navigable waters in their own right or that have a specific surface water connection to traditional navigable waters, as well as wetlands that abut or are otherwise inseparably bound up with such relatively permanent waters"), *with Rapanos*, 547 U.S. at 739 (plurality op.).  And although the Rule's definitions of "tributaries" and "wetlands" cover fewer waters than Justice Kennedy would have accepted as *permissible*, the Rule also declines to adopt a more expansive approach that would have strayed into areas Justice Kennedy's concurrence deemed off limits.  *Compare* 85 Fed. Reg. at 22,251-52 (defining "tributary" as a "river, stream, or similar naturally occurring surface water channel that contributes surface water flow to a . . . traditional navigable water in a typical year," and excluding certain "ditches"), *with Rapanos*, 547 U.S. at 778-780 (explaining that agency deference "does not extend so far" as to allow federal jurisdiction over wetlands next to "remote and insubstantial" "ditch[es] or drain[s]") (Kennedy J., concurring).

The Rule's interpretation of "waters of the United States" is reasonable in light of each of these opinions.  Congress used "broad, somewhat ambiguous, but nonetheless *clearly limiting* terms" to define the scope of the Agencies' jurisdiction under the Clean Water Act.  *Rapanos*, 547 U.S. at 758 (Roberts, J., concurring) (emphasis added).  The statute thus leaves the Agencies "plenty of room to operate in developing some notion of an outer bound to the reach of their authority."  *Id.*  That is exactly what the Agencies did here: Hewing closely to Supreme Court precedent, the 2020 Rule incorporates an interpretation of "adjacent wetlands" that *Riverside Bayview* deemed "not unreasonable," and it avoids incorporating interpretations that the *SWANCC* Court, the *Rapanos* plurality, and Justice Kennedy deemed impermissible.  As Chief Justice Roberts urged the Agencies to do in *Rapanos*, they "refin[ed] [their] view of [their] authority in

1  light of" the Supreme Court's decisions and "provid[ed] guidance meriting deference under [the

2  Court's] generous standards." *Id.*

3      This measured approach stands in contrast to the prior 2015 rule—which looked similar to

4  what Plaintiffs urge here and was repudiated by other federal courts.  Multiple courts rejected the

5  factual and legal predicates for that sweeping interpretation, and enjoined or remanded that rule

6  back to the Agencies as exceeding the authority Congress delegated.

7      The district court for the District of North Dakota, for example, enjoined the prior rule after

8  expressing concern that its definition of "tributaries" "include[d] vast numbers of waters that are

9  unlikely to have a nexus to navigable waters." *North Dakota*, 127 F. Supp. 3d at 1056.  The district

10 court for the Southern District of Georgia followed suit, issuing a final judgment that the rule

11 exceeded the Agencies' statutory authority.  *Georgia*, 418 F. Supp. 3d at 1367 ("merely stating that

12 the agencies have decided that a significant nexus exists based on 'science' and their 'expertise' is

13 not sufficient" to prove that the rule properly interpreted the agencies' authority under the Act).

14 An Oregon district court also issued a preliminary injunction against the 2015 rule after dismissing

15 the "science behind the idea of drawing broadly the circle of waters that impact admittedly

16 navigable waters" as "not particularly helpful" to the key question before it: "[H]ow much of what

17 Congress *could* do to protect waters *did* it do" in the Act's text?  *Or. Cattlemen's Ass'n*, No. 19-

18 564, Doc. 54, at 8-9 (emphases added).  And a Texas district court temporarily enjoined the rule

19 pending "long overdue" clarification of *Rapanos* and its progeny.  *Texas v. EPA*, 2018 WL

20 4518230, at *1.  *See also In re EPA & Dep't of Def. Final Rule*, 803 F.3d at 807, *vacated for lack*

21 *of original jurisdiction* at 713 Fed. App'x. 489.

22     These decisions strongly suggest that the approach Plaintiffs champion would itself be

23 unlawful.  Where so many courts have struck down a more expansive definition of "waters of the

24 United States," it was not unreasonable for the Agencies to take a more careful tack.

25         **2.   The Agencies' interpretation is not foreclosed by a *Rapanos* "majority"**
              **made from Justice Kennedy's concurrence and the dissent.**

26

27     Plaintiffs contend that the 2020 Rule's interpretation of "waters of the United States" is

28 unreasonable because it is built on the *Rapanos* plurality's "relatively permanent waters and

adjacent wetlands" standard, and, they argue, a majority of the Court rejected "the plurality's standard [as] an unlawful interpretation of the Act."  Pls.' Mot. at 32.  As a result, the true "boundaries of the Agencies' discretion" come from a purported majority comprised of Justice Kennedy's concurrence and the four dissenting Justices. Pls.' Mot. at 29.  This argument does not support the outcome Plaintiffs press, and fails in any event.

      **a.**  As an initial matter, Plaintiffs' position would be unavailing even if the Court agrees with the concurrence-plus-dissent approach to *Rapanos*.  At most, it would show that five Justices believed the Act *permits* more expansive jurisdiction than the Agencies exercised in the 2020 Rule.  *See*, *e.g.*, *Rapanos*, 547 U.S. at 739 (plurality op.) (holding that "Corps' expansive interpretation of 'the waters of the United States' is thus not based on a *permissible* construction of the statute" (citation omitted; emphasis added)); *id.* at 767 (Kennedy, J., concurring) (describing circumstances where "the Corps *may* deem the water or wetland a 'navigable water' under the Act" (emphasis added)); *id.* at 788 (Stevens, J., dissenting) (characterizing Corps' expression of its jurisdiction as a "reasonable interpretation of a statutory provision").

      Plaintiffs point to nothing in the Justices' decisions establishing that the Act *requires* the Agencies to regulate to the full extent of their statutory powers—whether that authority includes all the waters Plaintiffs prefer or those reflected in the 2020 Rule.  This Court already recognized the same point, reasoning that prior cases like *Rapanos* involved "whether the agencies had gone *too far* in extending the scope of federal regulation," in contrast to the "completely new question" here "whether the agencies have not gone far enough."  Order at 9.  Because the Supreme Court has never held that the Agencies are required to regulate to the greatest extent the Act allows, it cannot be unreasonable for the Agencies to adopt an interpretation that avoids going too far.

      **b.**  Plaintiffs' position also cannot be squared with the law of judicial precedent.

      *First*, assembling a "majority" that rejects the plurality's standard requires counting Justice Kennedy's concurring opinion and the four dissenting votes.  But this Court has already expressed skepticism towards Plaintiffs' attempt to "cobble together a holding from the concurrence and the dissent."  Order at 11.  And this Circuit, at least, has credited the Supreme Court's statement that

1    deriving a rule from a fractured Supreme Court decision turns on the opinions of "those Members

2    who *concurred* in the judgments on the narrowest grounds." *United States v. Davis*, 825 F.3d 1014,

3    1024 (9th Cir. 2016) (en banc) (quoting *Marks v. United States,* 430 U.S. 188, 193 (1977)).

4        *Second*, Plaintiffs' assemblage of Justices would not be a "majority" in the precedential sense

5    under even a more permissive view of *Marks*.  While some lower courts extract rules from the

6    interplay between dissenting and concurring opinions that share a "common denominator," or

7    some "'common reasoning whereby one analysis is a logical subset of the other,'" the Ninth Circuit

8    rejected that approach. *Davis*, 825 F.3d at 1025 (quoting *United States v. Epps*, 707 F.3d 337, 350

9    (D.C. Cir. 2013)).  Regardless, it could not bear the weight Plaintiffs ask it to carry.  Even assuming

10   that the concurrence and dissent would produce Plaintiffs' desired *result*, Plaintiffs cannot show

11   that both opinions can be harmonized to the point of producing a *logically unified rule*.  Justice

12   Kennedy made clear he fundamentally disagreed with the dissenters' conception of jurisdiction

13   under the Act: He accused their opinion of "read[ing] a *central requirement* out—namely, the

14   requirement that the word 'navigable' in 'navigable waters' be given some importance." *Rapanos*,

15   547 U.S. at 778 (Kennedy, J., concurring) (emphasis added).  Thus, even though Justice Kennedy

16   also disagreed with certain aspects of the plurality's analysis, this express disavowal of the

17   dissent's reasoning means neither his nor the dissenters' approach is a "logical subset of the other."

18   *Davis*, 825 F.3d at 1025.

19       *Third*, Justice Kennedy's concurring opinion is not controlling when taken on its own.  *Marks*

20   directs that "[w]hen a fragmented Court decides a case and no single rationale explaining the result

21   enjoys the assent of five Justices, the holding . . . may be viewed as that position taken by those

22   Members who concurred in the judgment[] on the narrowest grounds."  430 U.S. at 193 (citation

23   omitted).  The "narrowest grounds" test has been applied in many different ways by lower courts,

24   with the Ninth Circuit recently adopting what it calls "the reasoning-based approach."  *Davis*, 825

25   F.3d at 1020.  Under that approach, "[a] fractured Supreme Court decision should only bind the

26   federal courts of appeal when a majority of the Justices agree upon a single underlying rationale

27   and one opinion can reasonably be described as a logical subset of the other." *Id.* at 1021-22.  Put

28

1    another way, the question is "whether the reasoning of a narrower opinion fit[s] entirely into the

2    circle drawn by a broader opinion." *Id.* at 1021.  If not, "only the specific result is binding on

3    lower federal courts." *Id.* at 1022.

4         Applied to Justice Kennedy's *Rapanos* opinion, the Ninth Circuit's reasoning-based *Marks*

5    test does not support giving precedential weight to Justice Kennedy's "significant nexus"

6    approach.  His concurrence certainly does not "fit entirely into the circle drawn by" the dissent,

7    and neither is it fully congruent with the plurality's view of the Agencies' statutory jurisdiction.

8    Each opinion, in fact, rejects the other's reasoning when it comes to the specifics of giving meaning

9    to the limits Congress set.  *See Rapanos*, 547 U.S. at 754-56 (plurality op.) (rejecting "significant

10   nexus" test as a reading "in utter isolation from the text of the Act" that improperly adopts a "case-

11   by-case test of ecological significance"); *id.* at 769, 772-73 (Kennedy, J., concurring) (rejecting

12   "relatively permanent" waters limitation for failing to address the statute's "concern[] with

13   downstream water quality," and its "continuous surface connection" limitation on wetlands for

14   failing to consider effects on water quality).  The upshot is that while five Justices emphatically

15   declared that "navigable waters" is an important statutory term that imposes meaningful limits on

16   federal jurisdiction—a principle the 2020 Rule repeatedly affirms—there is no basis to conclude

17   that the "significant nexus" test is the correct or required way to interpret it.

18        Plaintiffs are also incorrect that the Ninth Circuit's decisions in *City of Healdsburg* and

19   *Robertson* render Justice Kennedy's concurrence "the controlling rule of law."  Pls.' Mot. at 30.

20   Before the en banc Court decided *Davis*, a panel in *City of Healdsburg* had held that Justice

21   Kennedy's *Rapanos* opinion controlled because it was "the narrowest ground to which a majority

22   of the justices would assent if forced to choose in almost all cases."  *N. Cali. River Watch v. City

23   of Healdsburg*, 496 F.3d 993, 999 (9th Cir. 2007).  But as already explained, *Davis* expressly

24   rejected this results-based approach.  *Davis*, 825 F.3d at 1021 (describing and rejecting alternative

25   approach that "defines the narrowest ground as the rule that 'would necessarily produce results

26   with which a majority of the Justices from the controlling case would agree'" (citation omitted)).

27   And although another panel later held in *Robertson* that *City of Healdsburg* was not "clearly

28

irreconcilable" with *Davis* and thus remained circuit precedent, *Robertson* was vacated by the Supreme Court's grant of certiorari and turned on the suspect approach of considering dissents in the *Marks* analysis. *United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017) (reasoning that Justice Kennedy's opinion was a logical subset of the dissent), *cert. granted, judgment vacated*, 139 S.Ct. 1543 (2019). In short, *City of Healdsburg* applied a test that was overruled, and *Robertson* applied the new test incorrectly.

The *Rapanos* concurrence and dissent are thus not binding authority. It was entirely proper for the Agencies to hew to what five Justices *did* agree on—Congress placed meaningful limits on federal jurisdiction in the Act. Nor was it error to decline to adopt a more expansive approach than Justice Kennedy or the dissenters may have deemed *permissible*. The Court was right to reject Plaintiffs' approach to *Rapanos* at the preliminary injunction stage and it should do so again now.

**c.** Finally, Plaintiffs are wrong that *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005), is no help to the Agencies. *Brand X* holds that a "court's prior judicial construction of a statute" does not override an agency's, unless that decision expressly "holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." 545 U.S. at 982. Plaintiffs contend that *Rapanos* forecloses the Agencies' position, but they do not argue that the Court's holding "follows from the unambiguous language of the statute." Instead, they argue that when it comes to Supreme Court, as opposed to lower court, decisions, *Brand X* disclaims agency discretion even where the Court interprets ambiguous text. Pls.' Mot. at 31-32.

This Court need not resolve whether *Brand X* applies to Supreme Court decisions to uphold the 2020 Rule because Plaintiffs' argument assumes what it needs to prove: that *Rapanos* prohibits the approach the Agencies took in the 2020 Rule. As explained above, the Agencies' modest construction of its jurisdiction is not in conflict with *Rapanos*, and it is consistent with other Supreme Court precedent and the decisions of multiple federal courts nationwide. *Supra* Part I.A.1. This Circuit's precedent also forecloses Plaintiffs' attempt to fashion a majority opinion in their favor from irreconcilable concurring and dissenting opinions. *Supra* Part I.A.2.b. Plaintiffs

cite a Colorado district court decision that deemed *Rapanos* "unambiguously *against* the construction offered in the plurality opinion." *Colorado v. U.S. Envtl. Prot. Agency*, 445 F. Supp. 3d 1295 (D. Colo. 2020), *appeal pending*, Nos. 20-1238, 20-1262, 20-1263 (10th Cir.) (argued Nov. 18, 2020) (emphasis in original). That decision, however, is currently on appeal, and even there the court lamented that "it is notoriously difficult to understand what *Rapanos* is for." *Id.* at 1311. And finally, whatever *Rapanos* may fairly be read to permit, this Court has already recognized that interpreting it to hold that the Agencies must push the boundaries of their jurisdiction to the limit is "a bridge too far." Order at 11.

\* \* \*

Taken together, Plaintiffs ask this Court to manufacture a controlling opinion where the Supreme Court did not—ignoring in the process the limited view of statutory jurisdiction that five Justices did agree on, persuasive authority from other courts, and the difference between what the Agencies *may* do and what they *must*. As this Court has noted, at bottom these arguments reflect Plaintiffs' belief that the Rule is suboptimal as a matter of policy. Order at 11-12. That belief is irrelevant to the legal questions before the Court, and it is no reason to set aside as an unreasonable interpretation of the Act the Agencies' careful approach to federal jurisdiction.

### B. The Act Does Not Authorize Jurisdiction Over "Interstate Waters" with No Connection to Navigable Waters.

Plaintiffs separately argue that the Rule is an unreasonable interpretation of "waters of the United States" because it no longer includes "interstate waters" as a standalone category of jurisdictional waters. Pls.' Mot. at 39-41. But far from compelling regulation over those waters, the Act in fact prohibits it.

Even Justice Kennedy's opinion in *Rapanos* highlights why it would be unreasonable for the Agencies to do anything *other than* eliminate this standalone category. Justice Kennedy explained that the Act's regulation of "navigable waters" means that "the word 'navigable' . . . must be given some effect" in construing the scope of federal jurisdiction. *Rapanos*, 547 U.S. at 779. Thus, "interstate waters" cannot be treated as jurisdictional merely because they happen to lie across a state border; that rule would give no weight to the navigability standard at all. At least one federal

court has rejected the standalone "interstate waters" category as a permissible construction of the Act for just that reason. *See Wheeler*, 418 F. Supp. 3d at 1359. The Agencies reasonably recognized this flaw in their prior rules and guidance, and corrected it in the 2020 Rule: Waters flowing across state lines will continue to be jurisdictional only as long as they meet the navigability-based definitions set out in the Rule. *See* 85 Fed. Reg. at 22,284.

The cases Plaintiffs cite do not support a rule that the Act applies to all interstate waters regardless of navigability. *See* Pls.' Mot. at 34-35. Instead, these decisions addressed permitting disputes relating to waters that would have otherwise been jurisdictional. *City of Milwaukee v. Illinois & Michigan,* 451 U.S. 304, 307 (1981); *Int'l Paper Co. v. Ouellette,* 479 U.S. 481, 483-84 (1987); *Arkansas* v. *Oklahoma,* 503 U.S. 91, 95 (1992). None of the cases supports authorizing federal jurisdiction over interstate waters merely because they are interstate. In *City of Milwaukee*, for instance, the Court explained that it "and Congress fully expected that neighboring States might differ in their approaches to the regulation of the discharge of pollutants into their *navigable* waters." 451 U.S. at 351 (emphasis added); *see also Ouellette*, 479 U.S. at 500 (holding state law preempted as applied to an out-of-state point source polluting Lake Champlain, a navigable water); *Arkansas v. Oklahoma*, 503 U.S. at 114 (concluding that the EPA's decision to issue a permit for discharging into the Illinois River—another navigable water—was not arbitrary).

This Court agreed that while it may factually be true that "wetlands that cross state lines have always been subject to federal jurisdiction," Congress "did not employ 'interstate' in its definition of 'navigable waters' or to describe 'waters of the United States.'" Order at 12. The 2020 Rule does not falter for recognizing this definitional reality.

## II.   Adopting The Rule Was Not Arbitrary And Capricious.

Plaintiffs also argue that the 2020 Rule is arbitrary and capricious. Pls.' Mot. at 18-28. The State Intervenors adopt and incorporate by reference the Agencies' response to these arguments. *See* ECF No. 215, Agencies' Opp. to Pls. Mot. for Summary J. & Cross-Mot. for Summary J. at 26-43. In addition, Plaintiffs are wrong that the Rule fails adequately to account for the "responsibilities and rights of States" under the Act, *id.* at 25, and does not sufficiently account for

their reliance interests.  This Court has already recognized that these arbitrary and capricious determinations are tied to the statutory interpretation questions discussed above.  Order at 9.  The Agencies' concern about not overstepping their statutory authority in light of Supreme Court guidance is an important part of the calculus when determining how much explanation is needed to clear the arbitrary-and-capricious hurdle.  Indeed, if the Agencies and other federal courts are correct that the Act affirmatively *prohibits* a more expansive view of federal jurisdiction, then arguments about the sufficiency of the record and intersection with States' regulatory programs become largely irrelevant.  Agencies, after all, cannot regulate beyond the boundaries Congress sets, no matter how strong other considerations may be.  In any event, Plaintiffs' arguments fail on their own merits.

### A.    The 2020 Rule Reasonably Strives to Protect Water Quality Through the Act's Cooperative Federalism Framework.

One of Plaintiffs' pervasive themes is that, in promulgating the 2020 Rule, the Agencies disregarded the Act's goal of protecting water quality.  They point out that the Agencies acknowledged that a more modest approach to jurisdiction would limit the zone of waters subject to federal regulation, and they fault the Agencies for "ignor[ing]" the possibility of negative consequences for water quality.  Pls.' Mot. at 23-24.  And they further argue that trusting to entities *like them* to protect water resources not included in the definition of "waters of the United States" misreads the Act's focus on preserving traditional state powers.  Pls.' Mot. at 33-36.  Yet the Agencies' reading better accords with the statute, and they reasonably concluded that the 2020 Rule would use cooperative federalism to advance the Act's aims.

Plaintiffs' premise is faulty because the Act is not the top-down federal regulatory regime they envision.  To the contrary, the Act declares it "the policy of the Congress to recognize, preserve, and protect the *primary* responsibilities and rights of States" to reduce pollution and to protect their "land and water resources."  33 U.S.C. § 1251(b) (emphasis added).  And that policy finds purchase in every part of the Act.  Congress contemplated that States would assume direct control of some regulatory programs, *id*. § 1342(b), tasked States with developing water quality standards under other programs, *id*. § 1313, and even included an express anti-preemption

1    provision to ensure that the States can do what is needed to fully protect their own waters, *id.*

2    § 1370.  A federal-state partnership is thus built into the Act's DNA—with a heavy emphasis on

3    the State side.

4         Recognizing the primary role the Act contemplates for States, the Agencies reasonably relied

5    on the States (as well as Tribes with respect to tribal land and resources) as *agents* for advancing

6    the Act's objective to protect water quality.  Responding to the very concern Plaintiffs raise here—

7    that making "fewer waters . . . jurisdictional" could undermine the Act's objective to restore and

8    maintain the integrity of the Nation's waters—the Agencies "disagreed," and explained why.  85

9    Fed. Reg. at 22,269.

10        In the Agencies' view, that goal would "continue" to be served through "[t]he CWA's

11   longstanding regulatory permitting programs" and "non-regulatory measures," "coupled with the

12   controls that States, Tribes, and local entities choose to exercise over their land and water

13   resources."  85 Fed. Reg. 22,269; *see also id.* ("Ensuring that States and Tribes retain authority

14   over their land and water resources . . . helps carry out the overall objective of the CWA."); *id.* at

15   22,254 ("States and Tribes retain authority to protect and manage the use of those waters that are

16   not navigable waters under the CWA." (citing 33 U.S.C. §§ 1251(b), 1251(g), 1370, 1377(a))).

17   The Agencies also identified the various waters not regulated under the Rule as "more

18   appropriately regulated by the States and Tribes under their sovereign authorities"—which further

19   illustrates that the Agencies specifically considered the States' and Tribes' roles in protecting water

20   quality in connection with these waters.  85 Fed. Reg. at 22,278 ("[R]elatively permanent bodies

21   of water that are connected to downstream jurisdictional waters only via groundwater are not

22   jurisdictional and are more appropriately regulated by the States and Tribes."); *see also id.* at

23   22,279 (same conclusion for "waters that do not contribute surface water to a downstream

24   [jurisdictional] water in a typical year"); *id.* at 22,284 (same for "interstate waters without any

25   surface water connection to traditional navigable waters"); *id.* at 22,309-310 (same for certain

26   wetlands not covered by the Rule).

27

28

Plaintiffs may not prefer the Rule's approach to state and federal regulatory powers, but disagreement is not enough to show that the Agencies unreasonably disregarded the Act's objectives.  Indeed, it is entirely rational to read 33 U.S.C. § 1251(a)'s emphasis on preserving water quality through the lens of Congress's insistence *in the very next subsection* that States bear "primary" responsibility for reducing pollution and making decisions regarding water resources within their borders, *id.* § 1251(b).

Contrary to Plaintiffs' interpretative approach, Pls.' Mot. at 33-34, this decision to prioritize federalism follows from both the wording of the Act and the Agencies' duties to incorporate constitutional concerns in their regulatory process.  Plaintiffs argue that States' "primary" role means only that Congress meant for States to have primary enforcement power in the Act's national discharge program, and that the Act does not require any "balance between Federal and State waters."  Pls.' Mot. at 34 (quoting 85 Fed. Reg. at 22,252).  But as explained above, the Supreme Court has repeatedly emphasized that Congress used the term "navigable" to do precisely that—delineate the waters properly subject to federal regulation from those that are not.  This textual limit shows that Congress "had in mind" its "traditional jurisdiction over waters that were or had been navigable in fact or which could reasonably be so made." *SWANCC*, 531 U.S. at 172 (citation omitted); *see also*, *e.g.*, *PPL Montana, LLC v. Montana*, 565 U.S. 576, 592 (2012) (recognizing the deep history of the term "navigable" in constitutional jurisprudence). The specific term Congress chose may not be a model of clarity when it comes to discerning the jurisdictional line, but that does not mean the line is meaningless.  If anything, Plaintiffs' suggestion that the Act allows the Agencies to wholly ignore the federal-state balance this navigable-waters line defines is the unreasonable approach.

There is likewise nothing unreasonable about the Agencies' decision to respect the "traditional sovereignty of States."  Pls.' Mot. at 34.  *Rapanos* reaffirmed that the "regulation of land use" necessary after deeming a resource part of the "waters of the United States" is a "quintessential state and local power."  547 U.S. at 738 (plurality op.).  When agencies act, they should take seriously constitutional canons like not lightly intruding into the core prerogatives of

State Intvrs' Opp. To MSJ And Cross-Motion for MSJ (3:20-cv-3005-RS)

the States.  Agencies are arms of the Executive Branch, and part of the President's Take Care Clause duty is to interpret and implement laws consistent with constitutional text and norms. Because Congress "does not exercise lightly" its power to "legislate in areas traditionally regulated by the States," *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991), it is reasonable for agencies to take a cautious approach when—as here—they find federalism-*preserving* language in their governing statutes.  *See also*, *e.g.*, *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 518 (2d Cir. 2017) (recognizing that "clear statement" rule from *Rapanos* and *SWANCC* may be required when determining scope of the Act's jurisdiction).

Finally, even if Plaintiffs were correct that honoring the federal-state balance baked into the Act would create tension with the goal of advancing water quality, that would still not be a persuasive reason to set aside the Rule.  Plaintiffs argue that the Agencies' interpretation "contradict[s] and undermine[s]" the goal of the statute, Pls.' Mot. at 36-37, but this argument is based on the idea that the Act is *only* concerned with water quality.  No law, however, "pursues its purpose at all costs, and . . . the textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations."  *Rapanos*, 547 U.S. at 752 (plurality op.; quotation omitted).  And "[w]here a statute seeks to balance competing policies"—like resource-preservation and federalism—"congressional intent is not served by elevating one policy above the others." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 494 (2nd Cir. 2001).  Instead, balancing these important goals is a feature of the Rule, not a flaw; federal agencies "have the factual and policy expertise needed to determine which of these possibilities best achieves federal water pollution goals while respecting state authority."  Gillian E. Metzger, *Ordinary Administrative Law As Constitutional Common Law*, 110 Colum. L. Rev. 479, 533 (2010).

## B.    The Agencies Did Not Unreasonably Set Aside Plaintiffs' Reliance Interests.

Finally, Plaintiffs are wrong that the Agencies did not adequately consider their reliance interests in prior rules and guidance that asserted more expansive federal authority over non-navigable waters.  Pls.' Mot. at 25-28.  This argument is based on a single line in the Supreme

Court's recent DACA decision: Agencies revisiting prior policy must "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Department of Homeland Security. v. Regents of the University of California* ("*DHS v. Regents*"), 140 S. Ct. 1891, 1915 (2020). Yet the Supreme Court emphasized that *DHS v. Regents* involved unusually strong reliance interests combined with minimal agency process. *See id.* at 1914. Whatever may be said of a State's reliance interests in other challenges to changed regulatory regimes, *DHS v. Regents* does not support Plaintiffs' position here.

*First*, the reliance interests in *DHS v. Regents* were materially different than those Plaintiffs assert. There, the federal government announced a program in which "unauthorized aliens who entered the United States" as children could submit information allowing them to apply for a "two-year forbearance" of enforcement actions. 140 S. Ct. at 1901. The Department of Homeland Security later decided to wind down the program and declined to allow many program participants to apply for a renewal of this forbearance. *Id*. at 1903. At no point during its decision-making process, however, did the Department analyze the reliance interests of the private parties who made themselves vulnerable in response to the federal program. *Id*. at 1913.

These facts implicated line of Supreme Court cases finding prosecutions unconstitutional when defendants were entrapped by erroneous or misleading agency guidance. *See*, *e.g*, *United States v. Penn. Indus. Chem. Corp*., 411 U.S. 655, 674 (1973). Part of what troubled the Court in *DHS v. Regents* was that the Department glossed over important reliance interests where it had previously "included assurances that application information would not be provided to enforcement authorities." Zachary S. Price*, Reliance on Nonenforcement*, 58 Wm. & Mary L. Rev. 937, 959 (2017). They also implicated *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016), *see* Pls.' Mot. at 25, which recognized reliance interests where an agency rescinded "decades-old" guidance and, as a result, exposed certain private parties to new and costly liability. *Encino*, 136 S. Ct. at 2123-24, 2126.

By contrast, Plaintiffs' challenge here is not about misleading guidance or "new liability" for previous actions "which were taken in good-faith reliance on [government] pronouncements."

1    *N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 295 (1974).  Instead, they object that

2    the 2020 Rule's failure to press CWA jurisdiction to (indeed, beyond) its outer limits will require

3    them to expend more resources to regulate water resources within their borders.  But trusting

4    Plaintiffs to exercise their own regulatory authority under the Act's cooperative federalism

5    framework is hardly akin to imposing a "new liability."  Indeed, federalism and the Tenth

6    Amendment set a starting premise of plenary state authority, with enumerated federal powers being

7    an exception rather than the norm.  The Agencies were correct that reliance interests grounded in

8    an entitlement to continued *aggressive* federal regulation face an uphill battle.  *See*, *e.g.*, AR 11574.

9       *Second*, the Agencies sufficiently considered legitimate reliance interests before

10  promulgating the 2020 Rule.  *See* Agencies' Opp. to Pls. Mot. for Summary J. & Cross-Mot. for

11  Summary J. 40-42. As this Court explained in its order denying preliminary relief, *DHC v. Regents*

12  involved a lack of consideration of important reliance interests "in a brief memorandum issued by

13  the director," in contrast to the "full notice and comment rulemaking process" here that

14  "generat[ed] a fulsome record of the basis for the policy change."  Order at 12 n.7.  The specific

15  context of this rule change also underscored that Plaintiffs had indisputable notice for years that a

16  significant change was likely: After repeated judicial rebukes to the 1980s rule and 2015 rule alike,

17  "[t]he need for a new rule was manifest, and had been for decades."  Order at 12.  Whatever the

18  importance and strength of reliance interests in other cases may be, the specific factors here

19  indicate that this is not one of them.  The Agencies did not act arbitrarily and capriciously in

20  enacting the 2020 Rule.

## CONCLUSION

22       For the reasons set out above, this Court should deny Plaintiffs' motion for summary

23  judgment and grant the State Intervenors' cross-motion for summary judgment.

25  Respectfully submitted.

/s/ *Bradley A. Benbrook*
Bradley A. Benbrook
Benbrook Law Group
400 Capitol Mall, Ste 2530
Sacramento, CA 95814
Tel: (916) 447-4900
Fax: (916) 447-4904
Email: ben@benbrooklawgroup.com
*Counsel for Intervening States*

PATRICK MORRISEY
  *West Virginia Attorney General*

/s/ *Lindsay S. See*
Lindsay S. See
  *Solicitor General*
Thomas T. Lampman
  *Assistant Solicitor General*
West Virginia Office of the Attorney General
1900 Kanawha Blvd. East
Building 1, Room E-26
Tel: (304) 558-2021
Fax: (304) 558-0140
Email: lindsay.s.see@wvago.gov
*Counsel for Intervenor State of West Virginia*

ED SNIFFEN
  *Attorney General of Alaska*

/s/ *Jennifer Currie*
Jennifer Currie
  *Senior Assistant Attorney General*
Alaska Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, AK 99501-1994
Tel: (907) 269-5100
Fax: (907) 276-3697
Email: attorney.general@alaska.gov
*Counsel for Intervenor State of Alaska*

CHRISTOPHER M. CARR
  *Attorney General of Georgia*

/s/ *Andrew A. Pinson*
Andrew A. Pinson
  *Solicitor General*
Ross W. Bergethon
  *Deputy Solicitor General*
Drew F. Waldbeser
  *Assistant Solicitor General*
Office of the Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334
Tel: (404) 651-9453
Fax: (404) 656-2199
Email: apinson@law.ga.gov
*Counsel for Intervenor State of Georgia*

STEVE MARSHALL
  *Attorney General of Alabama*

/s/ *A Barrett Bowdre*
A. Barrett Bowdre
  *Deputy Solicitor General*
Office of the Attorney General
501 Washington Ave.
P.O. Box 300152
Montgomery, AL 36130
Telephone: (334) 353-8892
Fax: (334) 353-8400
E-mail: barrett.bowdre@AlabamaAG.gov
*Counsel for Intervenor State of Alabama*

LESLIE RUTLEDGE
  *Attorney General of Arkansas*
Nicholas J. Bronni
  *Solicitor General*
Vincent M. Wagner
  *Deputy Solicitor General*

/s/ *Dylan L. Jacobs*
Dylan L. Jacobs
  *Assistant Solicitor General*
Office of the Attorney General
323 Center St., Suite 200
Little Rock, AR 72201
Tel: (501) 682-3661
Fax: (501) 682-2591
Email: Dylan.Jacobs@ArkansasAG.gov
*Counsel for Intervenor State of Arkansas*

1

LAWRENCE WASDEN
*Attorney General of Idaho*

THEODORE E. ROKITA
*Attorney General of Indiana*

2

*/s/ Mark Cecchini-Beaver*
Mark Cecchini-Beaver
*Deputy Attorney General*
Office of the Attorney General
Environmental Quality Section
1410 N. Hilton, 2nd Floor
Boise, ID 83706
Tel: (208) 373-0494
Fax: (208) 373-0481
Email: Mark.Cecchini-Beaver@deq.idaho.gov
*Counsel for Intervenor State of Idaho*

*/s/ Thomas M. Fisher*
Thomas M. Fisher
*Solicitor General of Indiana*
Office of the Indiana Attorney General
302 W. Washington Street, IGCS, 5th Floor
Indianapolis, Indiana
Tel: (317) 233-8292
Fax: (317) 233-8292
Email: tom.fisher@atg.in.gov
*Counsel for Intervenor State of Indiana*

3

4

5

6

7

8

DEREK SCHMIDT
*Attorney General of Kansas*

DANIEL CAMERON
*Attorney General of Kentucky*

9

10

*/s/ Jeffrey A. Chanay*
Jeffrey A. Chanay
*Chief Deputy Attorney General*
Office of the Attorney General
120 SW 10th Ave., 3rd Floor
Topeka, Kansas 66612
Tel: (785) 368-8435
Email: jeff.chanay@ag.ks.gov
*Counsel for Intervenor State of Kansas*

*/s/ Carmine G. Iaccarino*
Carmine G. Iaccarino
*Executive Director, Office of Civil &*
*Environmental Law*
Office of the Attorney General
700 Capitol Avenue
Frankfort, Kentucky 40601
Tel: (502) 696-5650
Email: Carmine.Iaccarino@ky.gov
*Counsel for Intervenor Commonwealth of*
*Kentucky*

11

12

13

14

15

16

JEFF LANDRY
*Attorney General of Louisiana*

17

*/s/ Elizabeth B. Murril*
Elizabeth B. Murril
*Solicitor General*
Joseph Scott St. John
*Deputy Attorney General*
Louisiana Department of Justice
1885 N. 3rd St.
Baton Rouge, LA 70802
Tel: (225) 456-7544
Email: MurrilE@ag.louisiana.gov
*Counsel for Intervenor State of Louisiana*

LYNN FITCH
*Attorney General of Mississippi*

18

*/s/ Kristi H. Johnson*
Kristi H. Johnson
*Solicitor General*
Office of the Attorney General
P.O. Box 220
Jackson, Mississippi 39205
Tel: (601) 359-5563
Email: Kristi.Johnson@ago.ms.gov
*Counsel for Intervenor State of Mississippi*

19

20

21

22

23

24

25

26

27

28

State Intvrs' Opp. To MSJ And Cross-Motion for MSJ (3:20-cv-3005-RS)

ERIC S. SCHMITT
  *Attorney General of Missouri*

*/s/ Julie Marie Blake*
Julie Marie Blake
  *Deputy Solicitor General*
Office of the Attorney General
P.O. Box 899
Jefferson City, MO 65102
Tel: (573) 751-3321
Fax: (573) 751-0774
Email: Julie.Blake@ago.mo.gov
*Counsel for Intervenor State of Missouri*

DOUGLAS J. PETERSON
  *Attorney General*

*/s/ James A. Campbell*
James A. Campbell
  *Solicitor General*
Justin D. Lavene
  *Assistant Attorney General*
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
Email: justin.lavene@nebraska.gov
Email: jim.campbell@nebraska.gov
Tel: (402) 471-2682
*Counsel for Intervenor State of Nebraska*

DAVE YOST
  *Attorney General of Ohio*

*/s/ Benjamin M. Flowers*
Benjamin M. Flowers
  *Solicitor General*
Office of Ohio Attorney General
30 E. Broad St., 17th Floor
Columbus, OH 43215
Tel: (614) 728-7511
Email: bflowers@ohioattorneygeneral.gov
*Counsel for Intervenor State of Ohio*

AUSTIN KNUDSEN
  *Attorney General of Montana*

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst
  *Solicitor General*
Office of the Attorney General
215 North Sanders / P.O. Box 201401
Helena, MT 59620-1401
Tel: (406) 444-4145
Email: David.Dewhirst@mt.gov
*Counsel for Intervenor State of Montana*

WAYNE STENEHJEM
  *Attorney General of North Dakota*

*/s/ Margaret I. Olson*
Margaret I. Olson
  *Assistant Attorney General*
North Dakota Office of Attorney General
500 N. 9th Street
Bismarck, ND 58501
Tel: (701) 328-3640
Fax: (701) 328-4300
Email: maiolson@nd.gov
*Counsel for Intervenor State of North Dakota*

MIKE HUNTER
  *Attorney General of Oklahoma*

*/s/ Mithun Mansinghani*
Mithun Mansinghani
  *Solicitor General*
Oklahoma Office of the Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
Tel: (405) 522-4392
Email: Mithun.Mansinghani@oag.ok.gov
*Counsel for Intervenor State of Oklahoma*

JASON R. RAVNSBORG

25

1

ALAN WILSON
*Attorney General*

*Attorney General*

2

*/s/ James Emory Smith, Jr.*
James Emory Smith, Jr.
*Deputy Solicitor General*

*/s/ Ann F. Mines Bailey*
Ann F. Mines Bailey
*Assistant Attorney General*
State of South Dakota

3

Office of the Attorney General

4

1000 Assembly Street, Room 519
Columbia, South Carolina 29201

1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501
Tel:  (605) 773-3215

5

Tel: (803) 734-3680
Email: esmith@scag.gov

Fax: (605)773-4106
Email:  ann.mines@state.sd.us

6

*Counsel for Intervenor State of South Carolina*

*Counsel for Intervenor State of South Dakota*

7

8

HERBERT H. SLATERY, III
*Attorney General and Reporter of Tennessee*

KEN PAXTON
*Attorney General of Texas*

9

Andrée S. Blumstein
*Solicitor General*

*/s/ Kyle D. Hawkins*
Kyle D. Hawkins

10

Sarah K. Campbell
*Associate Solicitor General*

*Solicitor General*
Office of the Attorney General

11

*/s/* Elizabeth P. McCarter
Elizabeth P. McCarter

P.O. Box 12548
Austin, TX 78711-2548

12

*Senior Assistant Attorney General*
Office of the Attorney General

Tel: (512) 936-1700
Fax: (512) 474-2697

13

P.O. Box 20207
Nashville, TN 37202

Email: Kyle.Hawkins@oag.texas.gov
*Counsel for Intervenor State of Texas*

14

Tel: (515) 532-2582
Email: lisa.mccarter@ag.tn.gov

15

*Counsel for Intervenor State of Tennessee*

BRIDGET HILL
*Attorney General of Wyoming*

16

SEAN D. REYES

*/s/ James C. Kaste*
James C. Kaste

17

*Attorney General of Utah*

*Deputy Attorney General*
Office of the Attorney General

18

*/s/ Daniel Burton*
Daniel Burton

2320 Capitol Avenue
Cheyenne, WY 82002

19

*Chief Policy Counsel*
Office of the Attorney General

Tel: (307) 777-6946
Fax: (307) 777-3542

20

Utah State Capitol Complex
350 North State Street, Suite 230

Email: james.kaste@wyo.gov
*Counsel for Intervenor State of Wyoming*

21

Salt Lake City, Utah 84114-2320
Tel: (801) 538-9600

22

Email: danburton@agutah.gov
*Counsel for Intervenor State of Utah*

23

24

25

26

27

28

State Intvrs' Opp. To MSJ And Cross-Motion for MSJ (3:20-cv-3005-RS)

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2021, I served this opposition to plaintiffs' motion for summary judgment and cross-motion for summary judgment by filing it with this Court's ECF system.

/s/ *Lindsay S. See*
Lindsay S. See