Rob Bonta
Attorney General of California
Sarah E. Morrison
Eric Katz
Supervising Deputy Attorneys General
Catherine M. Wieman, SBN 222384
Tatiana K. Gaur, SBN 246227
Roxanne J. Carter, SBN 259441
Jessica Barclay-Strobel, SBN 280361
Bryant B. Cannon, SBN 284496
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6329
  Fax:  (916) 731-2128
  E-mail:  Tatiana.Gaur@doj.ca.gov
*Attorneys for Plaintiff State of California, by and
through Attorney General Rob Bonta and
California State Water Resources Control Board*

*[Additional Parties and Counsel Listed on
Signature Page]*

Letitia James
Attorney General of the State of New York
Philip Bein (*admitted pro hac vice*)
Senior Counsel
Timothy Hoffman (*admitted pro hac vice*)
Senior Counsel
  Office of the Attorney General
  Environmental Protection Bureau
  28 Liberty Street
  New York, NY 10005
  Telephone: (716) 853-8465
  Fax: (716) 853-8579
  Email: Timothy.Hoffman@ag.ny.gov
  *Attorneys for Plaintiff State of New York*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA, et al.,** | Case No. 3:20-cv-03005-RS |
| Plaintiffs, | **PLAINTIFFS' PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR REMAND WITHOUT VACATUR** |
| v. | |
| **MICHAEL REGAN, et al.,** | Date:       September 9, 2021 |
| Defendants, | Time:       1:30 p.m. |
| **STATE OF GEORGIA, et al.,** | Dept:       San Francisco Courthouse, Courtroom 3 -17th Floor |
| Intervenor-Defendants. | Judge:      Honorable Richard Seeborg |
| | Action Filed: May 1, 2020 |

# TABLE OF CONTENTS

**Page**

ARGUMENT .......................................................................................................................... 2

    I.    The 2020 Rule's Serious Deficiencies and Harmful Consequences Require
          Its Vacatur. ................................................................................................................ 2

          A.    The First Allied-Signal Factor is Met because the Agencies have
                Conceded that the 2020 Rule has Significant Deficiencies and that
                they Need to Replace it. ............................................................................... 4

          B.    The Second Allied-Signal Factor is Met because Remand without
                Vacatur will be Significantly more Harmful and Disruptive than
                any Consequences Resulting from Vacating the Rule. ............................... 7

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

CASES

*All. for the Wild Rockies v. U.S. Forest Serv.*
    907 F.3d 1105 (9th Cir. 2018) ........................................................................ 2

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*
    988 F.2d 146 (D.C. Cir. 1993) ................................................................ *passim*

*Alsea Valley All. v. DOC*
    358 F.3d 1181 (9th Cir. 2004) ........................................................................ 2

*ASSE Int'l, Inc. v. Kerry*
    182 F. Supp. 3d 1059 (C.D. Cal. 2016) ...................................................... 4, 8

*Betchart v. Department of Fish & Game*
    158 Cal.App.3d 1104 (1984) ........................................................................ 13

*Burke v. Coggins*
    No. 20-667, 2021 U.S. Dist. LEXIS 29999 (D.D.C. Feb. 18, 2021) ...................... 8

*Cal. Cmties. Against Toxics v. EPA*
    688 F.3d 989 (9th Cir. 2012) ............................................................. 3, 4, 5, 8

*County of Maui, Hawaii v. Hawaii Wildlife Fund*
    140 S. Ct. 1462 (2020) .................................................................................. 5

*Ctr. For Envtl. Health v. Vilsack*
    2016 U.S. Dist. LEXIS 79984 (N.D. Cal. 2016) ............................................... 6

*Ctr. For Food Safety v. Vilsack*
    734 F. Supp. 2d 948 (N.D. Cal. 2010) ....................................................... 3, 8

*Ctr. For Native Ecosystems v. Salazar*
    795 F. Supp. 2d 1236 (D. Colo. 2011) ...................................................... 4, 15

*Gresham v. Azar*
    950 F.3d 93 (D.C. Cir. 2020) ........................................................................ 6

*Idaho Farm Bureau v. Babbit*
    58 F.3d 1392 (9th Cir. 1995) ........................................................................ 4

*In re EPA & Dep't of Def. Final Rule*
    803 F.3d 804 (6th Cir. 2015) ...................................................................... 15

1
2

## TABLE OF AUTHORITIES
### (continued)

Page

3
4

*Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*
    109 F. Supp. 3d 1238 (N.D. Cal. 2015) .......................................................... 3, 7

5

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*
    463 U.S. 29 (1983) ............................................................................................. 6

6
7

*N. Coast Rivers All. v. U.S. Dep't of the Interior*
    No. 1:16-cv-00307-LJO-MJS, 2016 LEXIS 174481 (E.D. Cal. Dec. 16, 2016) .......... 3, 4, 5, 6

8
9

*Nat. Res. Def. Council v. U.S. Dep't of Interior*
    275 F. Supp. 2d 1136 (C.D. Cal. 2002) ............................................................ 4, 6

10

*Or. Nat. Desert Ass'n v. Zinke*
    250 F. Supp. 3d 773, 774 (D. Or. 2017) ............................................................. 7

11
12

*Paulsen v. Daniels*
    413 F.3d 999 (9th Cir. 2005) ............................................................................. 8

13
14

*Pollinator Stewardship Council v. EPA*
    806 F.3d 520 (9th Cir. 2015) .................................................................... 3, 7, 15

15

*Sierra Forest Legacy v. Sherman*
    951 F. Supp. 2d 1100 (E.D. Cal. 2013) ............................................................... 9

16

STATUTES

17
18

33 United States Code
    § 1251(a) ...................................................................................................... 5, 15

19
20

Ariz. Rev. Stat. Ann.
    § 49-104(A)(16) ................................................................................................. 12

21

California Fish and Game Code
    § 1801 .............................................................................................................. 13

22
23

Clean Water Act
    § 101(a) ............................................................................................................. 5
    § 402 ................................................................................................................ 11

24

    § 404 ............................................................................................................. 9, 11

25

Utah Code Ann.
    § 19-5-105 ........................................................................................................ 12

26
27
28

1
2

## TABLE OF AUTHORITIES
### (continued)

Page

3

**OTHER AUTHORITIES**

4

84 Federal Register
5
    56,626 (Oct. 22, 2019) .................................................................. 8

6

86 Federal Register
7
    41,911 (Aug. 4, 2021) ................................................................... 2
    41,912 (Aug. 4, 2021) ............................................................. 2, 7, 8
8

9
*Memorandum for the Record, Review of U.S. Army Corps of Engineers ORM2 Permit and*
*Jurisdictional Determination Data to Assess Effects of the Navigable Waters Protection Rule* at 2,
10
https://www.epa.gov/sites/default/files/2021-06/documents/3_final_memorandum_for_
record_on_review_of_data_web_508c.pdf (last visited on August 9, 2021) ............................... 9
11

12
News Release, EPA, Army Corps Announce Intent to Revise Definition of
    WOTUS, https://www.epa.gov/newsreleases/epa-army-announce-intent-revise-
13
    definition-wotus (last accessed August 9, 2021) ........................................................ 7

14
*Arizona Drought Interagency Coordinating Group Recommendation to Maintain*
    *Drought Emergency Declaration,*
15
    https://new.azwater.gov/sites/default/files/media/Spring%2720_ICGLetter-
signed.pdf (last visited on Aug. 9, 2021) .................................................. 9
16

17
*State of California Governor Drought Proclamation,* https://www.gov.ca.gov/wp-
    content/uploads/2021/05/5.10.2021-Drought-Proclamation.pdf (last visited on
18
    Aug. 9, 2021) ................................................................................ 9

19
*State of New Mexico Governor Drought Declaration,*
    https://www.governor.state.nm.us/wp-content/uploads/2020/12/ Executive-
20
    Order-2020-084.pdf (last visited on Aug. 9, 2021) .................................................. 9

21
22
23
24
25
26
27
28

1

**INTRODUCTION**

2      Plaintiffs (the States and Cities) support the request by the United States Environmental

3   Protection Agency and the United States Army Corps of Engineers (Agencies) to remand *The*

4   *Navigable Waters Protection Rule: Definition of "Waters of the United States"* (2020 Rule or

5   Rule) for reconsideration and replacement by the Agencies. As the Agencies have now

6   acknowledged, the 2020 Rule suffers from significant deficiencies and has already caused

7   substantial, potentially irreversible damage to the Nation's waters. The Agencies, however, have

8   not asked the Court to vacate this deficient and harmful Rule and have not indicated any

9   timeframe for alleviating its profound detrimental consequences. The States and Cities

10  respectfully request that the Court vacate the Rule and remand this matter to the Agencies in light

11  of their acknowledgment that the 2020 Rule is seriously defective and causes severe adverse

12  impacts on water quality across the United States. These impacts, in the absence of vacatur,

13  would continue during any new rulemaking period as projects will be approved without Clean

14  Water Act protections and implemented for years to come. Vacatur of the 2020 Rule is well

15  within this Court's equitable authority and is warranted and necessary in the circumstances

16  presented here.

17      The Rule became effective in June 2020, drastically narrowing the "waters of United

18  States" protected by the Clean Water Act. The Rule removed from the Act's longstanding

19  protections vast numbers of diverse and important streams and wetlands nationwide.  All

20  ephemeral streams and streams that lack surface flow to another covered water in a "typical year"

21  as well as countless wetlands that do not have a surface water connection to another covered

22  water were excluded by the Rule. The States and Cities challenged the 2020 Rule because it

23  violates the mandates of the Clean Water Act and the Administrative Procedure Act (APA), is

24  arbitrary and capricious, and significantly harms the States and Cities' waters, wildlife, and

25  property.  The Rule also causes significant financial and administrative burdens to the States and

26  Cities, undermining their own water protection efforts.

27      In February 2021, as directed by President Biden's Executive Order 13990, the Agencies

28

1

commenced a review of the 2020 Rule to determine, among other things, whether it protects the environment and ensures clean water. The Agencies then announced in June 2021 that they had completed their review and decided to initiate a new rulemaking to replace the 2020 Rule. The Agencies are now seeking a remand of the Rule, based on its serious flaws and the severe detrimental impacts that have been caused by it during the year that the Rule has been in effect. In August 2021, the Agencies announced that they plan to engage in two new rulemakings, the first of which will reinstate the prior long-standing regulations that existed before 2015, and the second will be a new rule "that builds on that regulatory foundation."[1]

The States and Cities commend the Agencies' decision to replace the deeply flawed and harmful 2020 Rule. The States and Cities agree that in promulgating the Rule, the Agencies failed to adequately consider its effect on the integrity of the Nation's waters and ensure consistency with the Clean Water Act's water quality objective, arbitrarily ignored science, and failed to adequately assess the consequences for states, which are left to fill the enormous gap in water resources protection created by the Rule. But in the absence of vacatur, the Rule will remain in effect for an undefined and potentially lengthy new rulemaking period while the States and Cities, and indeed the entire country, will continue to suffer water quality degradation.

For these reasons, the States and Cities request that the Court exercise its broad equitable discretion to remand the 2020 Rule with vacatur.

## ARGUMENT

### I.    THE 2020 RULE'S SERIOUS DEFICIENCIES AND HARMFUL CONSEQUENCES REQUIRE ITS VACATUR.

Generally, vacatur is the default in cases where a court orders a remand of a challenged agency action and particularly where the agency's action can result in "potential environmental harms." *See, e.g., All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121–22 (9th Cir. 2018) (citing *Alsea Valley All. v. Dep't of Commerce*, 358 F.3d 1181, 1185 (9th Cir.

---

[1] *Notice of Public Meetings Regarding "Waters of the United States"; Establishment of a Public Docket; Request for Recommendations*, 86 Fed. Reg. 41,911, 41,912 (Aug. 4, 2021).

2004)); *see also Ctr. For Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010)

("[T]he Ninth Circuit has only found remand without vacatur warranted by equity concerns in

limited circumstances, namely serious irreparable environmental injury.") Here the Agencies'

motion fails to explain why vacatur of the 2020 Rule is not appropriate. Vacatur is both

warranted and necessary in this case because of (1) the fundamental deficiencies in the 2020

Rule that the Agencies have acknowledged, and their concession that those deficiencies must be

addressed via new rulemakings to replace the Rule and protect the Nation's waters consistent

with the Clean Water Act's objective; and (2) the severely harmful and disruptive consequences

that will result from the Rule's continued implementation during an indeterminate, potentially

protracted new rulemaking process. Consideration of the States and Cities' request for vacatur

in response to the Agencies' motion for remand without vacatur is appropriate because the

States and Cities' Complaint seeks vacatur of the 2020 Rule. *See N. Coast Rivers All. v. U.S.

Dep't of Interior*, No. 1:16-cv-00307-LJO-MJS, 2016 LEXIS 174481, at *2, 17-19.  (E.D. Cal.

Dec. 16, 2016); Compl. at p. 4, 24.

Courts evaluate two factors, commonly referred to as the *Allied-Signal* factors, to

determine where vacatur is justified: "the seriousness of the [rule's] deficiencies . . . and the

disruptive consequences of [vacatur]." *Allied-Signal*, *Inc. v. U.S. Nuclear Regulatory Comm'n,*

988 F.2d 146, 150-51 (D.C. Cir. 1993) (internal quotations omitted). Courts in the Ninth Circuit

employ this analysis. *See Cal. Cmties. Against Toxics v. U. S. EPA*, 688 F.3d 989, 992 (9th Cir.

2012). In analyzing the first factor, courts assess "whether the agency . . . could adopt the same

rule on remand, or whether [the] fundamental flaws in the agency's decision make it unlikely

that the same rule would be adopted on remand." *Pollinator Stewardship Council v. U.S. EPA*,

806 F.3d 520, 532 (9th Cir. 2015). As to the second factor, "courts may decline to vacate

agency decisions when vacatur would cause serious and irremediable harms that significantly

outweigh the magnitude of the agency's error." *Klamath-Siskiyou Wildlands Ctr. v. Nat'l

Oceanic & Atmospheric Admin.*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015) (internal

quotations and citations omitted).

The *Allied-Signal* vacatur analysis applies to "a motion for voluntary remand." *See ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064 (C.D. Cal. 2016) (remanding with vacatur under two-factor analysis where agency signaled "it intends to vacate" on remand and parties would not be "seriously harmed or disrupted" by vacatur); *N. Coast Rivers All.*, 2016 U.S. Dist. LEXIS 174481, at *16. A court has authority to vacate a regulation on voluntary remand unless "equity demands" that the regulation be "left in place while the agency follows the necessary procedures to correct its action." *Cal. Cmties. Against Toxics*, 688 F.3d at 992 (citing *Idaho Farm Bureau Fed'n v. Babbit*, 58 F.3d 1392, 1405 (9th Cir. 1995)) (internal quotations omitted). Moreover, "[v]acation of an agency action without an express determination on the merits is well within the bounds of traditional equity jurisdiction." *Ctr. For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241–42 (D. Colo. 2011) (citing *Nat. Res. Def. Council v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002)).

Applying the vacatur analysis here demonstrates that vacating the 2020 Rule is warranted and necessary. Nothing in the Agencies' motion explains why vacatur of the 2020 Rule is not justified. As set out below, the Agencies have conceded that the 2020 Rule has serious, fundamental deficiencies and, as a result, the Agencies plan to reconsider and replace the Rule. Moreover, the overwhelming and potentially irreversible harms from continuing to apply the Rule for an unspecified, and likely lengthy, new rulemaking period vastly outweigh any disruption from vacating the Rule promptly and restoring the previous long-standing regulatory framework that is familiar to the Agencies, the states, and the regulated entities. The *Allied-Signal* factors are met here, and the Court should exercise its equitable authority to vacate the Rule on remand.[2]

---

[2] The Agencies' recent concessions regarding the Rule's significant deficiencies, coupled with their acknowledgment of the irreversible harms caused by the Rule, show vacatur is warranted. These new facts, which are analyzed under a different legal standard than a preliminary injunction, distinguish the States and Cities' request for vacatur from the preliminary injunction motion previously ruled on by this Court. *See* Dkt. No. 171.

PLAINTIFFS' PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR REMAND WITHOUT VACATUR
(3:20-cv-03005-RS)

1
2

### A.    The First *Allied-Signal* Factor Is Met Because the Agencies Have Conceded That The 2020 Rule Has Significant Deficiencies and That They Need to Replace It.

3

The seriousness of the deficiencies in a rule may be measured by "evaluat[ing] the

4

likelihood that the agency will be able to justify future decisions" consistent with the challenged

5

agency action. *N. Coast Rivers All.*, 2016 U.S. Dist. LEXIS 174481, at *23. In assessing this

6

factor, courts have relied on the agency's concession that its decision-making process was

7

flawed. *See Cal. Cmties. Against Toxics*, 688 F.3d 989, 993 (considering, in the evaluation of

8

the first *Allied-Signal* factor, EPA's concession that there were flaws in the reasoning

9

supporting its challenged rule); *N. Coast Rivers All.*, 2016 U.S. Dist. LEXIS 174481, at *23-26

10

(considering the agency's admission that it will have to make changes in the challenged action

11

on remand).

12

While not expressly confessing error, the Agencies have effectively conceded that the

13

2020 Rule was gravely flawed. The Agencies admit, for example, that they adopted the 2020

14

Rule without taking into account the Clean Water Act's water quality objective set forth in

15

Section 101(a) of the Act, 33 U.S.C. § 1251(a). Declaration of Radhika Fox (Fox Decl.) ¶¶ 10,

16

11 (explaining that the Agencies "did not appropriately consider the effect" of the 2020 Rule

17

"on the integrity of the nation's waters"); Declaration of Jaime Pinkham (Pinkham Decl.) ¶¶ 10,

18

11 (same). As the Agencies now concede, "consideration of the effects [of the Rule] on the

19

integrity of the nation's waters is a critical element in assuring consistency with the statutory

20

objective of the CWA." Fox Decl. ¶ 13; Pinkham Decl. ¶ 13 (citing to *County of Maui, Hawaii*

21

*v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1468-69 (2020)). And, by the Agencies' own

22

admission, the 2020 Rule's preamble itself demonstrates that the Agencies' consideration of the

23

"science and water quality impacts in developing the rule" was insufficient to determine that the

24

Rule was consistent with the Act's objective. Fox Decl. ¶¶ 11, 13, 14; Pinkham Decl. ¶¶ 11, 13,

25

14. For example, the 2020 Rule "did not," as the Agencies now state, "look closely enough at

26

the effect ephemeral waters have on traditional navigable waters" when the Rule categorically

27

excluded all ephemeral streams. Fox Decl. ¶ 14; Pinkham Decl. ¶ 14. Moreover, the Agencies

28

5

acknowledge that because "[e]phemeral streams, wetlands, and other aquatic resources provide numerous ecosystem services, . . . there could be cascading and cumulative effects from [the Rule's] impacts to those resources, including but not limited to effects on water supplies, water quality, flooding, drought, erosion, and habitat integrity." Fox Decl. ¶ 20; Pinkham Decl. ¶ 20. By acknowledging these deep legal flaws in the 2020 Rule, the Agencies have all but confessed that the Rule is arbitrary and capricious in violation of the APA because the Agencies have now admitted that they failed to "consider an important aspect of the problem" in defining "waters of the United States," namely the Rule's effect on water quality and its consistency with the Clean Water Act's objective. *See Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (agency acts arbitrarily and capriciously when it fails to consider "an important aspect of the problem"); *see also Gresham v. Azar*, 950 F.3d 93, 102-104 (D.C. Cir. 2020) (finding that the agency's failure to account for loss of coverage for Medicaid beneficiaries that would result from the agency action was arbitrary and capricious because coverage "is a principal objective of Medicaid" and that objective is an important factor agency is required to consider before any other, non-statutory agency objectives).

To prevail on a motion for remand without vacatur, an agency must demonstrate that it could re-adopt the same challenged agency action on remand and failure to meet that burden weighs in favor of vacatur. *See N. Coast Rivers All.*, 2016 U.S. Dist. LEXIS 174481, at *25-26 (concluding that because there was no evidence on the record to enable the court to evaluate whether the agency can reach the same decision on remand, the first *Allied-Signal* factor favors vacatur); *Ctr. For Envtl. Health v. Vilsack*, No. 15-cv-01690-JSC, 2016 U.S. Dist. LEXIS 79984, at *41 (N.D. Cal. June 20, 2016) ("[I]t is Defendants' burden to show that vacatur is unwarranted."). And "[w]here the existing rule is more likely to fall during remand, the courts are more reluctant to enforce that rule in the intervening remand period." *Nat. Res. Def. Council*, 275 F. Supp. 2d at 1145. The Agencies cannot meet their burden here because of their concessions regarding the deficiencies and their disavowal of the 2020 Rule.

Nowhere do the Agencies attempt to argue that they "could adopt the same rule on

1  remand." *See Pollinator Stewardship Council*, 806 F.3d at 532. In fact, the 2020 Rule's many

2  flaws identified by the Agencies go to the very heart of its legal viability. These deficiencies are

3  not "mere technical or procedural formalities that the [Agencies] can easily cure" on remand,

4  *see Klamath-Siskiyou Wildlands Ctr.*, 109 F. Supp. 3d at 1244, but are fundamental to the Rule

5  because of their "effect . . . in contravening the purpose[] of the statute in question." *Or. Nat.*

6  *Desert Ass'n v. Zinke*, 250 F. Supp. 3d 773, 774 (D. Or. 2017).

7        As a result of the Rule's significant flaws, the Agencies have determined to "initiate a

8  new rulemaking process that restores the protections in place prior to the 2015 ["waters of the

9  United States"] implementation" and "anticipates developing a new rule that defines" the scope

10  of "waters of the United States" protected by the Act.[3] The Agencies' Motion and their recent

11  notice regarding their plans to propose first a rule that will replace the 2020 Rule with the pre-

12  2015 regulatory framework, followed by a second rulemaking that builds on that pre-2015

13  regulatory foundation confirm that decision and remove any doubt that the Agencies will not

14  propose to re-adopt the 2020 Rule on remand. *See* Agencies' Motion at 6, 13; Fox Decl. ¶¶ 8,

15  10; Pinkham Decl. ¶¶ 8, 10; 86 Fed. Reg. at 41,912.

16        Because the Agencies have conceded that the Rule was flawed and have announced that

17  they will not seek to readopt it as-is but will propose a new, more protective rule, application of

18  the first *Allied-Signal* factor demonstrates that vacatur is appropriate.

19      **B.**   **The Second *Allied-Signal* Factor is Met Because Remand Without Vacatur**
             **Will Be Significantly More Harmful and Disruptive Than Any**

20            **Consequences Resulting from Vacating the Rule.**

21        Consideration of the second *Allied-Signal* factor and the balance of equities in this case

22  weigh heavily in favor of vacatur. In deciding whether to remand an agency action with or

23  without vacatur, courts choose the outcome that will prevent environmental harm. *See, e.g.*,

24  *Pollinator Stewardship Council*, 806 F.3d at 532 (vacating a challenged rule where leaving the

25  rule in effect "risks more potential environmental harm than vacating it"); *Idaho Farm Bureau*

26  _____

27       [3] News Release, EPA, Army Corps Announce Intent to Revise Definition of WOTUS, https://www.epa.gov/newsreleases/epa-army-announce-intent-revise-definition-wotus (last accessed August 9, 2021).

28

1   *Fed'n*, 58 F.3d at 1405–06 (granting remand without vacatur because vacatur could lead to

2   extinction of a snail); *Cal. Cmties. Against Toxics*, 688 F.3d at 994 (choosing not to vacate

3   because vacatur could lead to air pollution); *see also Ctr. For Food Safety v. Vilsack*, 734 F.

4   Supp. 2d 948, 951 (N.D. Cal. 2010) ("[T]he Ninth Circuit has only found remand without

5   vacatur warranted by equity concerns in limited circumstances, namely serious irreparable

6   environmental injury.") Here, leaving the 2020 Rule in place during the indefinite remand

7   requested by the Agencies will cause serious and irreparable harm to the States and Cities'

8   environmental resources and residents. Vacatur, therefore, is decidedly the sole alternative that

9   will avoid environmental damage.

10          Indeed, here the Agencies have not given any "indication that [they] . . . or anyone else

11   would be seriously harmed or disrupted" if the 2020 Rule were vacated. *See ASSE Int'l, Inc.*,

12   182 F. Supp. 3d at 1065. The 2020 Rule replaced the 2019 Rule[4] which re-codified the prior

13   regulatory framework governing the definition of "waters of the United States" consistent with

14   the Agencies' guidance interpreting Supreme Court caselaw; this regulatory framework has

15   been implemented by the Agencies, the States and Cities, and regulated entities for decades up

16   until the 2020 Rule became effective in June 2020. Compl., ¶¶ 5-6, 42, 49, 56, 70. Vacating the

17   2020 Rule will restore the 2019 Rule while the Agencies engage in new rulemaking. *See*

18   *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency

19   rule is to reinstate the rule previously in force.") In fact, the Agencies themselves have indicated

20   that they plan to return to the prior framework governing the definition of "waters of the United

21   States" and intend to reinstate "the longstanding Clean Water Act regulations that were in place

22   prior to 2015, as amended to be consistent with relevant Supreme Court decisions." 86 Fed.

23   Reg. at 41,912. As courts have observed, a "return to the status quo causes little or no

24   disruption." *See Burke v. Coggins*, No. 1:20-cv-00667 (TNM), 2021 U.S. Dist. LEXIS 29999, at

25   *25 (D.D.C. Feb. 18, 2021).

26          Moreover, any possible disruption from vacatur of the 2020 Rule, and returning to the

27          [4] *Definition of "Waters of the United States"—Recodification of Pre-Existing Rules,* 84
Fed. Reg. 56,626 (Oct. 22, 2019).

28

8

1   previous long-standing regulations, is vastly outweighed by the significant harms, including the

2   severe environmental impacts, that will occur from continuing to implement the Rule on

3   remand. *See Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1106 (E.D. Cal. 2013)

4   ("[T]he determination of when to remand without vacatur should . . . be based on a broader

5   examination of the equities" because "the *Allied-Signal* factors . . . suggest on their face that an

6   equitable weighing process must be employed.").

7        Once again, the Agencies' own admissions satisfy the *Allied-Signal*'s second factor too.

8   For example, as the Agencies themselves recognize, the 2020 Rule has caused "a substantial

9   reduction in waters covered under the [Rule] compared to previous rules and practices." Fox

10  Decl. ¶ 15; Pinkham Decl. ¶ 15. In particular, the Agencies have found "an increase in

11  determinations by the Corps that waters are non-jurisdictional and an increase in projects for

12  which CWA Section 404 permits are no longer required." *Id.* In fact, "[t]he agencies are aware

13  of 333 projects that would have required Section 404 permitting prior to the [Rule], but no

14  longer do under the [Rule]." *Id.* And, as the Agencies point out, "the decrease in jurisdiction has

15  been more dramatic than the deregulatory effects the agencies had identified in the [2020 Rule]

16  preamble or supporting documents in the record for the rule."[5] These harmful changes

17  engendered by the 2020 Rule impact arid states like New Mexico and Arizona especially hard,

18  where "of over 1,500 streams assessed under the [2020 Rule], nearly every one has been found

19  to be a non-jurisdictional ephemeral resource." Fox Decl. ¶ 16; Pinkham Decl. ¶ 16.[6]

20        Moreover, as expressed by numerous stakeholders, including the States and Cities, and

21  also acknowledged by the Agencies, "the reduction in the jurisdictional scope of the CWA is

22        [5] *Memorandum for the Record, Review of U.S. Army Corps of Engineers ORM2 Permit
23  and Jurisdictional Determination Data to Assess Effects of the Navigable Waters Protection Rule*
    at 2, https://www.epa.gov/sites/default/files/2021-06/documents/3_final_memorandum_for_
24  record_on_review_of_data_web_508c.pdf (last visited on August 9, 2021).
          [6] These impacts will likely be exacerbated during the current drought afflicting many arid
25  Southwestern states, including New Mexico, California, and Arizona. *See State of New Mexico
    Governor Drought Declaration*, https://www.governor.state.nm.us/wp-content/uploads/2020/12/
    Executive-Order-2020-084.pdf (last visited on Aug. 9, 2021); *State of California Governor
26  Drought Proclamation*, https://www.gov.ca.gov/wp-content/uploads/2021/05/5.10.2021-Drought-
    Proclamation.pdf (last visited on Aug. 9, 2021); *Arizona Drought Interagency Coordinating
27  Group Recommendation to Maintain Drought Emergency Declaration*, https://new.azwater.gov/
    sites/default/files/media/Spring%2720_ICGLetter-signed.pdf (last visited on Aug. 9, 2021).

28

9

resulting in significant, actual environmental harms" associated with lack of regulatory protections and mitigation for "dredge and fill activities on large swaths of wetlands in sensitive areas, in the floodplains of jurisdictional waters, or even within several hundred yards of traditional navigable waters." Fox Decl. ¶ 17; Pinkham Decl. ¶ 17. In addition, there are "many other wetlands and streams, newly deemed non-jurisdictional [under the Rule], which are likely to be filled for commercial and housing developments, mines, water pipelines, and other forms of development without CWA oversight." *Id.* And for projects in state and tribal non-jurisdictional waters where protection of waters is restricted to regulation provided by the Clean Water Act, these projects are being implemented and "will . . . result in discharges without any regulation or mitigation from federal, state, or tribal agencies." Fox Decl. ¶ 18; Pinkham Decl. ¶ 18.

Indeed, the Agencies' intent to reinstate a definition of "waters of the United States" that more align with the pre-2015 regulations and guidance may very well cause a rush to quickly implement projects before the Agencies' new rules are proposed under the belief that in the interim period such projects—and their concomitant long-term environmental impacts—will be grandfathered.

The Agencies' conclusions regarding the severe detrimental impacts of the 2020 Rule are consistent with the numerous and wide-ranging harms attested to by the States and Cities.[7]

- *Harm to the States' and Cities' waters and water protection programs.*

By leaving ephemeral streams, interstate waters, and over half of the wetlands nationwide unprotected by the Act, the 2020 Rule threatens entire watersheds, including 4.8 million miles of streams[8] and 16.3 million acres of non-floodplain wetlands.[9] The arid West—where several of the

---

[7] The States and Cities outlined in detail the significant harms they have and will continue to experience as a result of the 2020 Rule in more than 30 separate declarations that were filed along with their Motion for Preliminary Injunction or Stay (Dkt. Nos. 30-2 through 30-22) and the Motion for Summary Judgment (Dkt. Nos. 214-1 through 214-11). In addition to these declarations, the States and Cities submit along with this Partial Opposition the declarations of David Siebert and Meredith Upchurch which provide updated information related to harms.

[8] Dkt. No. 30-18. (Sullivan Decl.) ¶¶ 3-5, 14, 21-22, 24, 34.

[9] *Id.* ¶¶ 5, 16, 34-43.

Plaintiff States are located—will be particularly hard hit; for example, more than 85 percent of stream miles in Plaintiff New Mexico's key watersheds are no longer protected[10] and 40 percent of wetland acres in New Mexico are at risk of destruction.[11] Because of the Rule, 25 to 45 percent of New Mexico's stormwater general permits and 50 percent of its individual permits are no longer required.[12] As a result, pesticides, paint solvents, acidic wastewater, and other pollutants will discharge into New Mexico waters—including the Tijeras Arroyo, Gila River, and Rio Hondo watersheds—without regulatory limit or oversight.[13]

The 2020 Rule severely harms downstream States and Cities because it increases the risks of pollution from upstream states. By excluding numerous waters from Clean Water Act jurisdiction, the 2020 Rule significantly curtails the Section 402 and 404 permit programs that previously protected the States and Cities' natural resources and citizens from upstream pollution.[14] For example, Plaintiff New York State does not regulate smaller wetlands because it relies on the Army Corps' operation of the Section 404 program; while New York works to expand its state programs to fill the regulatory gap created by the 2020 Rule (work that itself constitutes an injury ), many of New York's wetlands could be filled and therefore would no longer function as filters to reduce pollution before water flows from New York into Plaintiff New Jersey.[15] As another example, upstream harms will affect Plaintiff Maryland because the health of Maryland's Chesapeake Bay relies upon water protections in six upstream jurisdictions—including plaintiff States and Cities suffering from a regulatory gap in protections as well as non-plaintiff states such as West Virginia and Delaware.[16]

---

[10] *Id.* ¶¶ 3, 24.

[11] *Id.* ¶¶ 3, 38-39.

[12] Dkt. No. 30-16 (Roose Decl.) ¶ 20.

[13] *Id.* ¶¶ 9, 15-17.

[14] Dkt. No. 30-8 (Witherill Decl.) ¶ 9.

[15] Dkt. No. 30-17 (Jacobson Decl.) ¶¶ 7-14, 25, 28-30, 32-33; Dkt. No. 30-7 (Dow Decl.) ¶¶ 13-15; *see also* Dkt. No. 30-11 (Baskin Decl.) ¶¶ 13-14 (discussing a similar regulatory gap in Massachusetts, and identifying specific projects involving fill of wetlands that are no longer protected by either federal or state law).

[16] Dkt. No. 30-14 (Currey Decl.) ¶¶ 5-7 (The 2020 Rule will also harm Maryland by removing protection for an estimated 10,000 acres of wetlands in the Nanticoke River watershed (a tributary to Chesapeake Bay) within Delaware, thus eliminating the flood protection functions these wetlands provide to communities downstream in Maryland).

And because many states upstream of the States and Cities have laws preventing the imposition of stricter water pollution controls than those under the Clean Water Act, the Rule allows increased upstream pollution that threatens to significantly degrade water quality in the States and Cities.[17] For example, Plaintiff California will be harmed by increased pollution in upstream states that will flow to California via interstate waters, such as the Colorado River, which is an important source of drinking water,[18] and the Amargosa River, which is ephemeral for the majority of its length and subject to land use activities—such as Nevada's largest working dairy farm and hazardous waste disposal—that may discharge pollutants.[19] The 2020 Rule will likewise harm Michigan given that its water quality depends on adequate protection in other Great Lakes states.[20] Following the promulgation of the 2020 Rule, at least two states, Ohio and Indiana, have initiated legislative action to further reduce water quality protections for waters excluded by the Rule.[21]

The adverse impacts on water quality and severe impairment of waters resulting from the 2020 Rule are also comprehensively documented by amici.[22]

- *Harm to the States' wildlife.*

The States and Cities are injured by the Rule's exclusion from Clean Water Act protection of many waters that are habitat for fish and other animals owned, regulated, or held in trust by the States.[23]  For example, habitats for scores of threatened and endangered species in California and

---

[17] Dkt. No. 30-10 (Bishop Decl.) ¶ 20; Dkt. No. 30-18 ¶ 23; Dkt. No. 30-13 (Driscoll Decl.) ¶ 12; Seltzer Decl. (Dkt. No. 30-9) ¶¶ 17, 21-26; Dkt. No. 30-22 (Nechamen Decl.) ¶ 20; Ariz. Rev. Stat. Ann. § 49-104(A)(16); Utah Code Ann. § 19-5-105.

[18] Dkt. No. 30-10 ¶¶ 21, 23.

[19] Dkt. No. 30-20 (Parmenter Decl.) ¶ 5-6, 12-13.

[20] Dkt. No. 30-21 (Seidel Decl.) ¶ 4

[21] *See* https://www.hecweb.org/bill-watch-2021/ (Hoosier Environmental Council Bill Watch 2021 summarizing Indiana Senate Bill 389's elimination of state protections for wetlands that do not qualify as federal wetlands; the bill was signed into law on April 29, 2021) (last visited on August 9, 2021); https://www.legislature.ohio.gov/legislation/legislation-summary?id=GA134-HB-175 (Ohio's legislature is currently considering House Bill 175 to deregulate ephemeral features excluded by the 2020 Rule; the bill was proposed on March 4, 2021).

[22] *See* Amicus Brief by Trout Unlimited, et al. in Support of Plaintiffs' Motion for Summary Judgment (Dkt. 225-1) at 2-8, 16-23. Leave to file the amicus brief was granted on February 17, 2021. Dkt. No. 229.

[23] Dkt. 30-18 ¶¶ 4, 16, 27-33, 38; Siebert Decl. (Dkt. No. 30-6) ¶ 10; Dkt. No. 214-4

---

12

other states face increased degradation under the Rule.[24] Likewise, Plaintiff North Carolina will suffer a large loss of wetlands under the 2020 Rule. The resulting decline in in-state water quality and loss of wildlife habitat will impact both the 70 percent of rare and endangered plants and animals statewide that rely on these wetlands, as well as North Carolina's $430 million commercial and $3.9 billion recreational fisheries.[25] The extensive harms on fish and wildlife and the associated adverse effects on outdoor recreation, commercial fishing, and restoration businesses that flow from the 2020 Rule were also discussed in detail by amici.[26]

- *Harms to the States and Cities' property.*

The Rule's elimination of protections for upstream waters that trap pollutants and store water threatens downstream States and Cities with more frequent flooding and increased pollution.[27] For example, the State of New York owns 658 facilities with replacement value of over $254 million located in 100-year floodplains that are directly at risk from the 2020 Rule.[28] This does not include State-owned or managed roads, bridges, culverts, rail lines, airports and marine facilities that are also located in flood zones and will also be threatened by implementation of the 2020 Rule.[29] Likewise, in Plaintiff District of Columbia, more than $1 billion in District-owned property and approximately 10,000 District residents are located within floodplains.[30] The total economic loss from a 100-year storm along the Potomac and Anacostia Rivers is estimated at

---

(Ferranti Decl.) ¶¶ 9-15; Dkt. No. 30-12 (Greene Decl.) ¶¶ 10-12; Dkt. No. 30-20 ¶¶ 13-17; Siebert Declaration in Support of Plaintiffs' Partial Opposition to Defendants' Motion for Remand Without Vacatur ¶ 2-6 (summarizing impacts on Wisconsin's wetlands and water quality protection programs resulting the 2020 Rule and expected future detrimental effects if the Rule is left in effect). For example, California wildlife are "publicly owned" and it is the "state's policy to conserve and maintain wildlife for citizens' use and enjoyment [and] for their intrinsic and ecological values." *Betchart v. Department of Fish & Game*, 158 Cal.App.3d 1104, 1106 (1984); Cal. Fish & Game Code, § 1801.

[24] Dkt. No. 30-18 ¶¶ 4, 27, 40-41, 49; Dkt. No. 30-20 ¶¶ 14-16; Dkt. No. 30-12 ¶¶ 8-10; Dkt. No. 214-4 ¶¶ 11, 14-19.

[25] Dkt. No. 30-5 (Smith Decl.) ¶¶ 12-13, 17-18.

[26] Dkt. No. 225-1 at 16-18, 23-25.

[27] Dkt. No. 30-3 (Horbert Decl.) ¶ 11; Dkt. No. 30-7 ¶¶ 4, 7-8; Dkt. No. 30-18 ¶¶ 5, 15, 17, 34, 38, 41-42.

[28] Dkt. No. 30-22 ¶ 38

[29] *Id.*

[30] Dkt. No. 214-9 (Seltzer Decl.) ¶ 3.

1   $316 million.[31]

2   • *Increased monetary expenditures by and administrative burdens on the States and*
3   *Cities.*

4       The States and Cities have already expended money and will increasingly need to expend

5   additional funds and resources to fill the regulatory gaps created by the 2020 Rule. For example, to

6   mitigate the Rule's harm, the District of Columbia has developed local regulations for dredge and

7   fill activities in wetlands and streams no longer subject to the Act's protection and has diverted

8   approximately 2,520 hours of staff time from other activities to accomplish this task.[32] In addition,

9   the District of Columbia has had to hire an additional employee to implement a new permitting

10  program and has to assign enforcement responsibilities for the its new regulations to existing staff,

11  thereby diverting staff resources from other natural resource protection activities.[33] Similarly, New

12  York has devoted staff time and funding to identify and map wetlands no longer protected by the

13  Act that will need to be protected under new state efforts.[34] Oregon has likewise devoted tens of

14  thousands of dollars in staff time to filling the regulatory gap created by the Rule and expects to

15  incur significant additional costs in the future.[35] California, Massachusetts, Wisconsin, and

16  Virginia will also incur costs from increased staffing and staff training to address the regulatory

17  gaps left by the Rule.[36]  In addition, New Mexico will need to overhaul its groundwater and

18  surface water quality protection regulations to create a new permitting program—at a cost of over

19  $7.5 million annually, which is a 115% increase in New Mexico's budget for all surface water

20  programs.[37] Until this new program is in place, New Mexico has sought to mitigate the loss of

21  water protections by diverting funding from other areas and diverting work time from several staff

22  members to address the federal regulatory gap.[38] This regulatory upheaval resulted directly from

23  _____

24      [31] *Id.* ¶ 18.
    [32] *Id.* ¶¶ 11-14; Upchurch Decl. ¶ 2.
25      [33] Upchurch Decl. ¶ 3.
    [34] Dkt. No. 214-5 (Jacobson Decl.) ¶¶ 13-14.
    [35] Dkt. No. 214-6 (Mrazik Decl.) ¶ 8.
26      [36] Dkt. No. 214-2 (Bishop Decl.) ¶¶ 26-29, 38, 40, 43-44; Dkt. No. 214-1 (Baskin Decl.)
¶¶ 20-23; Dkt. No. 214-3 (Davis Decl.) ¶¶ 6-7; Dkt. 214-10 (Siebert Decl.) ¶ 2.
27      [37] Dkt. No. 214-7 (Roose Decl.) ¶¶ 20, 22.
    [38] *Id.* ¶ 23.
28

the 2020 Rule and will continue while the Rule remains in effect. Thus, vacating the Rule would not result in "disruptive consequences," *Allied-Signal*, 988 F.2d at 150, but instead would stem the ongoing disruption and adverse impacts resulting from the 2020 Rule.

All of these harms are directly relevant to the Court's vacatur analysis and outweigh any potential harm to regulated entities. Moreover, these harms are also particularly wasteful for the States and Cities given the Agencies' plans to propose a replacement of the 2020 Rule. The harms to the States and Cities flow directly from the 2020 Rule's undermining of the Clean Water Act's objective "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *See* 33 U.S.C. § 1251(a). In contrast, any potential disruption that may affect regulated entities if the Rule is vacated would not flow from harm to the Clean Water Act's sole statutory objective, but from increased costs to obtain and comply with Clean Water Act permits or alleged regulatory uncertainty. The Business Groups amici have indeed asserted just such injuries. *See* Dkt. No. 252-1 at p. 6. However, in addition to being speculative, such harms are "irrelevant" to the Court's vacatur analysis. *See Ctr. for Native* Ecosystems, 795 F. Supp. 2d at 1243 (concluding that harms associated with delay and cost due to compliance with requirements to protect endangered species that would be reinstated as a result of vacatur are "irrelevant" to the court's vacatur analysis because such harms contradict Congressional intent to protect endangered species). And even if the Court were to take into account in its vacatur analysis the harms alleged by regulated entities, these harms are still outweighed by the substantial adverse environmental impacts that have occurred and will continue to occur if the 2020 Rule is not vacated, especially considering the fact that vacatur will simply restore the "familiar, if imperfect" regulatory regime that the Agencies, the States and Cities, and regulated entities have implemented prior to the Rule for many decades. *In re EPA & Dep't of Def. Final Rule*, 803 F.3d 804, 808 (6th Cir. 2015), *vacated sub nom. In re U.S. Dep't of Def.*, 713 F. App'x 489 (6th Cir. 2018).

Many of the harms that the States and Cities would face during an indefinite period of new agency rulemaking without vacatur consist of potentially irreversible environmental

1    impacts on water resources. This continuing environmental destruction further supports the

2    conclusion that the 2020 Rule must be vacated. *See, e.g.*, *Pollinator Stewardship Council*, 806

3    F.3d at 532.

4          The extensive and substantial harms acknowledged by the Agencies have occurred and

5    will continue to occur if the 2020 Rule remains effective on remand. Because those harms

6    significantly outweigh any potential disruption from reverting to the status quo prior to the 2020

7    Rule, consideration of the second *Allied-Signal* factor demonstrates that vacatur is appropriate.

8                                    **CONCLUSION**

9          For the reasons stated herein, the States and Cities respectfully request that this Court

10   exercise its equitable authority and vacate the 2020 Rule on remand.

11

12   Dated:  August 9, 2021                          Respectfully Submitted,

13                                                   ROB BONTA
                                                     Attorney General of California
14                                                   SARAH E. MORRISON
                                                     ERIC KATZ
15                                                   Supervising Deputy Attorneys General
                                                     CATHERINE M. WIEMAN
16                                                   ROXANNE J. CARTER
                                                     JESSICA BARCLAY-STROBEL
17                                                   BRYANT B. CANNON
                                                     Deputy Attorneys General
18

19

                                                     /s/ *Tatiana K. Gaur*
20                                                   TATIANA K. GAUR
                                                     Deputy Attorney General
21                                                   *Attorneys for Plaintiff State of California,*
                                                     *by and through Attorney General Rob*
22                                                   *Bonta and California State Water*
                                                     *Resources Control Board*
23

24

25

26

27

28

For the STATE OF NEW YORK
LETITIA JAMES
Attorney General of the State of New York
Philip Bein (admitted pro hac vice)
Senior Counsel


/s/ Timothy Hoffman
Timothy Hoffman (admitted pro hac vice)
Senior Counsel
Office of the Attorney General
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
Telephone: (716) 853-8465
Fax: (716) 853-8579
Email: Timothy.Hoffman@ag.ny.gov

For the STATE OF CONNECTICUT
WILLIAM TONG
Attorney General


/s/ David H. Wrinn
David H. Wrinn (admitted pro hac vice)
Matthew I. Levine
Assistant Attorneys General
Office of the Attorney General
165 Capitol Avenue
P.O. Box 120
Hartford, CT  06141-0120
Telephone: (860) 808-5250
Email: Matthew.Levine@ct.gov
Email: David.Wrinn@ct.gov

For the STATE OF ILLINOIS
KWAME RAOUL
Attorney General


/s/ Jason E. James
Jason E. James (admitted pro hac vice)
Assistant Attorney General
Matthew J. Dunn
Chief, Environmental Enforcement/Asbestos
Litigation Division
Office of the Attorney General
Environmental Bureau
69 West Washington, 18th Floor
Chicago, IL 60602
Telephone: (312) 814-0660
Email: jjames@atg.state.il.us

For the STATE OF MAINE
AARON M. FREY
Maine Attorney General


/s/ Jillian R. O'Brien
Jillian R. O'Brien, Cal. SBN 251311
Assistant Attorney General
6 State House Station
Augusta, Maine 04333-0006
Telephone: (207) 626-8800
Email: Jill.OBrien@maine.gov

For the STATE OF MARYLAND
Brian E. Frosh
Attorney General of Maryland


/s/ Joshua M. Segal
Joshua M. Segal (admitted pro hac vice)
Special Assistant Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6446
Email: jsegal@oag.state.md.us

For the STATE OF MICHIGAN
DANA NESSEL
Attorney General of Michigan


/s/ Daniel P. Bock
Daniel P. Bock (admitted pro hac vice)
Assistant Attorney General
Michigan Department of Attorney General
Environment, Natural Resources and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
Telephone: (517) 335-7664
Email: bockd@michigan.gov

17

For the STATE OF NEW JERSEY
ANDREW J. BRUCK
Acting Attorney General of New Jersey

/s/ Lisa Morelli
Lisa Morelli, Cal. SBN 137092
Deputy Attorney General
Environmental Practice Group
Division of Law
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, New Jersey 08625
Telephone: (609)376-2745
Email: Lisa.Morelli@law.njoag.gov

For the STATE OF NEW MEXICO
HECTOR BALDERAS
Attorney General of New Mexico

/s/ William Grantham
William Grantham (admitted pro hac vice)
Assistant Attorney General
201 Third Street NW, Suite 300
Albuquerque, New Mexico 87102
Telephone: (505) 717-3520
Email: wgrantham@nmag.gov

For the STATE OF NORTH CAROLINA ex rel.
Attorney General Joshua H. Stein and for the
North Carolina Department of Environmental
Quality
JOSHUA H. STEIN
Attorney General
Daniel S. Hirschman
Senior Deputy Attorney General

/s/ Amy L. Bircher
Amy L. Bircher (admitted pro hac vice)
Special Deputy Attorney General
Marc Bernstein
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6400
Email: abircher@ncdoj.gov

For the STATE OF OREGON
Ellen F. Rosenblum
Attorney General of the State of Oregon

/s/ Paul Garrahan
Paul Garrahan (admitted pro hac vice)
Attorney-in-Charge, Natural Resources
Section
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301-4096
Telephone: (503) 947-4593
Fax:  (503) 378-3784
Email: paul.garrahan@doj.state.or.us

18

1

For the STATE OF RHODE ISLAND
PETER F. NERONHA

2

Attorney General

3

/s/ Alison B. Hoffman

4

Alison B. Hoffman (admitted pro hac vice)
Special Assistant Attorney General

5

Office of the Attorney General
150 South Main Street

6

Providence, RI 02903
Telephone: (401) 274-4400

7

Email: AHoffman@riag.ri.gov

8

9

For the STATE OF WASHINGTON
ROBERT W. FERGUSON
Attorney General

10

11

/s/ Ronald L. Lavigne

12

Ronald L. Lavigne (admitted pro hac vice)
Senior Counsel

13

Office of the Attorney General
2425 Bristol Court SW, 2nd Fl.

14

Olympia, WA 98504
Telephone: (305) 586-6751

15

Email: ronald.lavigne@atg.wa.gov

16

For the COMMONWEALTH OF
MASSACHUSETTS

17

MAURA HEALEY
Attorney General

18

19

/s/ Seth Schofield

20

Seth Schofield (admitted pro hac vice)
Senior Appellate Counsel

21

David S. Frankel (admitted pro hac vice)
Special Assistant Attorney General

22

Energy and Environment Bureau
Office of the Attorney General

23

One Ashburton Place, 18th Flr.
Boston, MA 02108

24

Telephone: (617) 963-2436 / 2294
Email: seth.schofield@mass.gov

25

Email: david.frankel@mass.gov

26

27

28

For the STATE OF VERMONT
THOMAS J. DONOVAN, JR.
Attorney General of Vermont

/s/ Laura B. Murphy

Laura B. Murphy (admitted pro hac vice)
Assistant Attorney General
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3186
Email: laura.murphy@vermont.gov

For the STATE OF WISCONSIN
JOSHUA L. KAUL
Wisconsin Attorney General

/s/ Gabe Johnson-Karp

Gabe Johnson-Karp (admitted pro hac vice)
Assistant Attorney General
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707
Telephone: (608) 267-8904
Email: johnsonkarppg@doj.state.wi.us

For the COMMONWEALTH OF
VIRGINIA
MARK R. HERRING
Attorney General
Donald D. Anderson
Deputy Attorney General
Paul Kugelman, Jr.
Senior Assistant Attorney General
Chief, Environmental Section

/s/ David C. Grandis

David C. Grandis (admitted pro hac vice)
Senior Assistant Attorney General
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 225-2741
Email: dgrandis@oag.state.va.us

19

1

2     For the DISTRICT OF COLUMBIA                    For the CITY OF NEW YORK
      KARL A. RACINE                                  JAMES E. JOHNSON
3     Attorney General                                Corporation Counsel of the City of New
                                                       York

4     /s/ Brian Caldwell                               /s/ Nathan Taylor
5     Brian Caldwell (admitted pro hac vice)          Nathan Taylor (admitted pro hac vice)
      Assistant Attorney General                      New York City Law Department
6     Social Justice Section                          100 Church Street, Rm 6-144
      Office of the Attorney General                  New York, NY  10007
7     for the District of Columbia                    Telephone: (646) 940-0736 (m)
      441 Fourth Street N.W., Ste # 600-S             Telephone: (212) 356-2315
8     Washington, D.C. 20001                          Email: NTaylor@law.nyc.gov
      Telephone: (202) 727-6211
9     Telephone: (202) 445-1952 (m)
      Email: brian.caldwell@dc.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR REMAND WITHOUT VACATUR
(3:20-cv-03005-RS)

1

**SIGNATURE ATTESTATION**

2          Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

3    document has been obtained from each of the other signatories.

4

5    Dated:  August 9, 2021                    /s/ Tatiana K. Gaur

                                              TATIANA K. GAUR

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

**CERTIFICATE OF SERVICE**

Case Name:   **State of California, et al. v. Andrew R. Wheeler, et al.**

Case No.:   **3:20-cv-03005-RS**

I hereby certify that on <u>August 9, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFFS' PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR REMAND WITHOUT VACATUR**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>August 9, 2021</u>, at Los Angeles, California.

|                                     |                                     |
| :---------------------------------: | :---------------------------------: |
| Tatiana Gaur                        | /s/ *Tatiana Gaur*                  |
| Declarant                           | Signature                           |

LA2020300885