ROB BONTA
Attorney General of California
SARAH E. MORRISON
ERIC KATZ
Supervising Deputy Attorneys General
CATHERINE M. WIEMAN, SBN 222384
TATIANA K. GAUR, SBN 246227
ROXANNE J. CARTER, SBN 259441
JESSICA BARCLAY-STROBEL, SBN 280361
BRYANT B. CANNON, SBN 284496
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6329
Fax: (916) 731-2128
E-mail: Tatiana.Gaur@doj.ca.gov
*Attorneys for Plaintiff State of California, by and through Attorney General Rob Bonta and California State Water Resources Control Board*

LETITIA JAMES
Attorney General of the State of New York
PHILIP BEIN (*admitted pro hac vice*)
Senior Counsel
TIMOTHY HOFFMAN (*admitted pro hac vice*)
Senior Counsel
Office of the Attorney General
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
Telephone: (716) 853-8465
Fax: (716) 853-8579
Email: Timothy.Hoffman@ag.ny.gov
*Attorneys for Plaintiff State of New York*

*[Additional Parties and Counsel Listed on Signature Page]*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA, et al.,**<br>Plaintiffs,<br>**v.**<br>**MICHAEL REGAN, et al.,**<br>Defendants,<br>**STATE OF GEORGIA, et al.,**<br>Intervenor-Defendants. | Case No. 3:20-cv-03005-RS<br>**PLAINTIFFS' STATEMENT OF RECENT DECISION**<br>Action Filed: May 1, 2020 |

Local Civil Rule 7-3(d)(2) permits a party to bring to the Court's attention a relevant judicial opinion published after the date the opposition or reply was filed. Pursuant to this rule, Plaintiffs bring to the Court's attention the attached order in *Pasqua Yaqui Tribe et al v. United States Environmental Protection Agency at al.*, 4:20-CV-200266, ECF No. 99, issued August 30, 2021, by the United States District Court for the District of Arizona.

Dated:  September 2, 2021

Respectfully Submitted,

ROB BONTA
Attorney General of California
SARAH E. MORRISON
ERIC KATZ
Supervising Deputy Attorneys General
CATHERINE M. WIEMAN
ROXANNE J. CARTER
JESSICA BARCLAY- STROBEL
BRYANT B. CANNON
Deputy Attorneys General

/s/ Tatiana K. Gaur
TATIANA K. GAUR
Deputy Attorney General
*Attorneys for Plaintiff State of California, by and through Attorney General Rob Bonta and California State Water Resources Control Board*

For the STATE OF NEW YORK
LETITIA JAMES
Attorney General of the State of New York
Philip Bein (admitted pro hac vice)
Senior Counsel


/s/ Timothy Hoffman
Timothy Hoffman (admitted pro hac vice)
Senior Counsel
Office of the Attorney General
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
Telephone: (716) 853-8465
Fax: (716) 853-8579
Email: Timothy.Hoffman@ag.ny.gov

For the STATE OF CONNECTICUT
WILLIAM TONG
Attorney General


/s/ David H. Wrinn
David H. Wrinn (admitted pro hac vice)
Matthew I. Levine
Assistant Attorneys General
Office of the Attorney General
165 Capitol Avenue
P.O. Box 120
Hartford, CT  06141-0120
Telephone: (860) 808-5250
Email: Matthew.Levine@ct.gov
Email: David.Wrinn@ct.gov

For the State of Illinois
KWAME RAOUL
Attorney General

/s/ Jason E. James

Jason E. James (admitted pro hac vice)
Assistant Attorney General
Matthew J. Dunn
Chief, Environmental Enforcement/Asbestos Litigation Division
Office of the Attorney General
Environmental Bureau
69 West Washington, 18th Floor
Chicago, IL 60602
Telephone: (312) 814-0660
Email: jjames@atg.state.il.us

For the State of Maine
AARON M. FREY
Maine Attorney General

/s/ Jillian R. O'Brien

Jillian R. O'Brien, Cal. SBN 251311
Assistant Attorney General
6 State House Station
Augusta, Maine 04333-0006
Telephone: (207) 626-8800
Email: Jill.OBrien@maine.gov

For the STATE OF MARYLAND
Brian E. Frosh
Attorney General of Maryland

/s/ Joshua M. Segal

Joshua M. Segal (admitted pro hac vice)
Special Assistant Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6446
Email: jsegal@oag.state.md.us

For the State of Michigan
DANA NESSEL
Attorney General of Michigan

/s/ Daniel P. Bock

Daniel P. Bock (admitted pro hac vice)
Assistant Attorney General
Michigan Department of Attorney General
Environment, Natural Resources and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
Telephone: (517) 335-7664
Email: bockd@michigan.gov

For the State of New Jersey
GURBIR S. GREWAL
Attorney General

/s/ Lisa Morelli
Lisa Morelli, Cal. SBN 137092
Deputy Attorney General
Environmental Practice Group
Division of Law
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, New Jersey 08625
Telephone: (609)376-2745
Email: Lisa.Morrelli@law.njoag.gov

For the State of New Mexico
HECTOR BALDERAS
Attorney General of New Mexico

/s/ William Grantham
William Grantham (admitted pro hac vice)
Assistant Attorney General
201 Third Street NW, Suite 300
Albuquerque, New Mexico 87102
Telephone: (505) 717-3520
Email: wgrantham@nmag.gov

For the State of North Carolina ex rel. Attorney General Joshua H. Stein and for the North Carolina Department of Environmental Quality
JOSHUA H. STEIN
Attorney General
Daniel S. Hirschman
Senior Deputy Attorney General

/s/ Amy L. Bircher
Amy L. Bircher (admitted pro hac vice)
Special Deputy Attorney General
Marc Bernstein
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6400
Email: abircher@ncdoj.gov

For the State of Oregon
Ellen F. Rosenblum
Attorney General of the State of Oregon

/s/ Paul Garrahan
Paul Garrahan (admitted pro hac vice)
Attorney-in-Charge, Natural Resources Section
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301-4096
Telephone: (503) 947-4593
Fax: (503) 378-3784
Email: paul.garrahan@doj.state.or.us

For the State of Rhode Island
PETER F. NERONHA
Attorney General

/s/ Alison B. Hoffman
Alison B. Hoffman (admitted pro hac vice)
Special Assistant Attorney General
Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: AHoffman@riag.ri.gov

For the State of Vermont
THOMAS J. DONOVAN, JR.
Attorney General of Vermont

/s/ Laura B. Murphy
Laura B. Murphy (admitted pro hac vice)
Assistant Attorney General
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3186
Email: laura.murphy@vermont.gov

For the State of Washington
ROBERT W. FERGUSON
Attorney General

/s/ Ronald L. Lavigne
Ronald L. Lavigne (admitted pro hac vice)
Senior Counsel
Office of the Attorney General
2425 Bristol Court SW, 2nd Fl.
Olympia, WA 98504
Telephone: (305) 586-6751
Email: ronald.lavigne@atg.wa.gov

For the State of Wisconsin
JOSHUA L. KAUL
Wisconsin Attorney General

/s/ Gabe Johnson-Karp
Gabe Johnson-Karp (admitted pro hac vice)
Assistant Attorney General
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707
Telephone: (608) 267-8904
Email: johnsonkarpg@doj.state.wi.us

For the Commonwealth of Massachusetts
MAURA HEALEY
Attorney General

/s/ Seth Schofield
Seth Schofield (admitted pro hac vice)
Senior Appellate Counsel
David S. Frankel (admitted pro hac vice)
Special Assistant Attorney General
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Flr.
Boston, MA 02108
Telephone: (617) 963-2436 / 2294
Email: seth.schofield@mass.gov
Email: david.frankel@mass.gov

For the Commonwealth of Virginia
MARK R. HERRING
Attorney General
Donald D. Anderson
Deputy Attorney General
Paul Kugelman, Jr.
Senior Assistant Attorney General
Chief, Environmental Section

/s/ David C. Grandis
David C. Grandis (admitted pro hac vice)
Senior Assistant Attorney General
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 225-2741
Email: dgrandis@oag.state.va.us

For the District of Columbia
KARL A. RACINE
Attorney General

/s/ Brian Caldwell
Brian Caldwell (admitted pro hac vice)
Assistant Attorney General
Social Justice Section
Office of the Attorney General
for the District of Columbia
441 Fourth Street N.W., Ste # 600-S
Washington, D.C. 20001
Telephone: (202) 727-6211
Telephone: (202) 445-1952 (m)
Email: brian.caldwell@dc.gov

For the City of New York
JAMES E. JOHNSON
Corporation Counsel of the City of New York

/s/ Nathan Taylor
Nathan Taylor (admitted pro hac vice)
New York City Law Department
100 Church Street, Rm 6-144
New York, NY 10007
Telephone: (646) 940-0736 (m)
Telephone: (212) 356-2315
Email: NTaylor@law.nyc.gov

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated:  September 2, 2021                                          /s/ Tatiana K. Gaur
                                                                                     TATIANA K. GAUR

# ATTACHMENT

**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Pasqua Yaqui Tribe, et al.,

Plaintiffs,

v.

United States Environmental Protection Agency, et al.,

Defendants.

No. CV-20-00266-TUC-RM

**ORDER**

Plaintiffs Pascua Yaqui Tribe, Quinault Indian Nation, Fond du Lac Band of Lake Superior Chippewa, Menominee Indian Tribe of Wisconsin, Tohono O'Odham Nation, and Bad River Band of Lake Superior Chippewa ("Plaintiffs") challenge two final rules promulgated by the United States Environmental Protection Agency ("EPA") and the United States Army Corps of Engineers ("Corps of Engineers") (collectively, "Agencies"). (Doc. 1.) The first, entitled "Definition of 'Waters of the United States'—Recodification of Pre-Existing Rules," 84 Fed. Reg. 56,626 (Oct. 22, 2019) ("2019 Repeal Rule"), repealed the 2015 "Clean Water Rule." The second, entitled "The Navigable Waters Protection Rule: Definition of 'Waters of the United States,'" 85 Fed. Reg. 22,250 (Apr. 21, 2020) ("NWPR"), established a new definition of the phrase "waters of the United States" in the Clean Water Act ("CWA").

Plaintiffs moved for summary judgment on May 11, 2021. (Doc. 47.) On July 13, 2021, Defendant-Intervenors Chantell and Michael Sackett ("Sacketts") filed a Cross-Motion for Summary Judgment (Doc. 77), as did Defendant-Intervenors Arizona Rock

Case 4:20-cv-00266-RM Document 99 Filed 08/30/21 Page 2 of 11

Products Association; National Stone, Sand, and Gravel Association; Arizona Cattle Feeders Association; Home Builders Association of Central Arizona; Arizona Farm and Ranch Group; Arizona Farm Bureau; and Arizona Chapter Associated General Contractors (collectively, "Business Intervenors") (Doc. 79).

In lieu of filing a response to Plaintiffs' Motion for Summary Judgment, Defendants EPA, EPA Administrator Michael Regan, Corps of Engineers, and Acting Assistant Secretary of the Army Jaime Pinkham (collectively, "Agency Defendants") filed a Motion for Voluntary Remand of the NWPR Without Vacatur and Motion for Abeyance of Briefing on the 2019 Rule Claims. (Doc. 72.) Plaintiffs do not oppose remand of the NWPR but argue that remand should include vacatur. (Doc. 74 at 1-12.)[1] The Sacketts oppose remand. (Doc. 84.) The Business Intervenors do not oppose remand but oppose Plaintiffs' position that remand should include vacatur. (Doc. 85.) The Court held a hearing on the Motion for Voluntary Remand on August 4, 2021 and took the matter under advisement. (Doc. 92.)

For the following reasons, the Court will grant the Agency Defendants' Motion for Voluntary Remand, as well as Plaintiffs' request that remand include vacatur.

## I. Background

The CWA was enacted in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act regulates discharges of pollutants from point sources to "navigable waters," with "navigable waters" defined as "waters of the United States, including the territorial seas." 33 U.S.C. §§ 1311(a), 1362(7), 1362(12). The statute does not further define the phrase "waters of the United States." For decades, that phrase was defined by regulation to include tributaries and impoundments of interstate waters and other waters used in or affecting interstate or foreign commerce, as well as wetlands adjacent to such waters, including wetlands separated by man-made dikes or barriers, natural river berms, and beach dunes. *See* 33 C.F.R. § 328.3(a), (c) (1986); *see also* 51 Fed. Reg. 41,206, 41,250 (Nov. 13,

[1] All record citations refer to the page numbers generated by the Court's electronic filing system.

1986); 53 Fed. Reg. 20,764, 20,774 (June 6, 1988).

In *Rapanos v. United States*, a deeply divided Supreme Court considered whether wetlands connected to distant navigable waters via ditches or artificial drains constitute "waters of the United States" within the meaning of the CWA. 547 U.S. 715, 729 (2006) (Scalia, J., plurality). Justice Scalia authored a four-justice plurality opinion concluding (1) that "the phrase 'waters of the United States' includes only those relatively permanent, standing or continuously flowing bodies of water forming geographic features that are described in ordinary parlance as streams, oceans, rivers, and lakes"; and (2) "only those wetlands with a continuous surface connection to bodies that are 'waters of the United States' in their own right, so that there is no clear demarcation between waters and wetlands, are adjacent to such waters and covered by the [CWA]." *Id.* at 739, 742 (Scalia, J., plurality) (internal quotation, emphasis, and alteration marks omitted). Justice Kennedy concurred in the judgment of the plurality but wrote separately and found that wetlands constitute "navigable waters" within the meaning of the CWA if there is "a significant nexus between the wetlands" and traditionally navigable waters, such that "the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity" of traditionally navigable waters. *Id.* at 779-80 (Kennedy, J, concurring). Justice Kennedy and the four dissenting justices all rejected Justice Scalia's plurality opinion as "inconsistent with the [CWA]'s text, structure, and purpose." 547 U.S. at 776 (Kennedy, J., concurring); *see id.* at 800 (Stevens, J., dissenting) (agreeing with Justice Kennedy that the limitations set forth in the plurality opinion "are without support in the language and purposes of the [CWA] or in [the Supreme Court's] cases interpreting it").

The Ninth Circuit subsequently held that Justice Kennedy's *Rapanos* concurrence is controlling under Supreme Court precedent for interpreting fractured decisions. *N. Cal. River Watch v. Cty. of Healdsburg*, 496 F.3d 993, 999-1000 (9th Cir. 2007); *see also United States v. Robertson*, 875 F.3d 1281, 1290-1292 (9th Cir. 2017) (re-affirming *Healdsburg*), *vacated as moot*, 139 S. Ct. 1543 (2019). Other circuit courts likewise

either adopted Justice Kennedy's significant nexus test or found that CWA protections applied upon satisfaction of either Justice Kennedy's or Justice Scalia's tests. *See, e.g.*, *United States v. Donovan*, 661 F.3d 174, 182 (3d Cir. 2011); *Precon Dev. Corp. v. U.S. Army Corps of Eng'rs*, 633 F.3d 278, 288-89 (4th Cir. 2011); *United States v. Bailey*, 571 F.3d 791, 799 (8th Cir. 2009); *United States v. Robison*, 505 F.3d 1208, 1221-22 (11th Cir. 2007); *United States v. Johnson*, 467 F.3d 56, 66 (1st Cir. 2006); *United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 724-25 (7th Cir. 2006).

In 2015, the Agencies adopted the "Clean Water Rule," re-defining the term "navigable waters." 33 C.F.R. § 328.3 (2016); *see also* 80 Fed. Reg. 37,054 (June 29, 2015). As part of the rulemaking process, the Agencies produced a review of scientific literature on the connections between tributaries, wetlands, and downstream waters, titled "Connectivity of Streams and Wetlands to Downstream Waters: A Review and Synthesis of the Scientific Evidence" ("Connectivity Report"). (Doc. 64; Doc. 64-1; Doc. 64-2.)

On February 28, 2017, President Donald Trump issued Executive Order 13,778, directing the Agencies to consider repealing the Clean Water Rule and replacing it with a regulation adopting the reasoning of Justice Scalia's plurality opinion in *Rapanos*. 82 Fed. Reg. 12,497 (Feb. 28, 2017). The Agencies repealed the Clean Water Rule in 2019 and re-instated the pre-2015 regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019). Then, in the 2020 NWPR, the Agencies re-defined the term "navigable waters" to mean: (1) "[t]he territorial seas" and waters used "in interstate or foreign commerce," (2) "[t]ributaries," (3) "[l]akes and ponds, and impoundments of jurisdictional waters," and (4) "[a]djacent wetlands." 33 C.F.R. § 328.3(a) (2020); *see also* 85 Fed. Reg. 22,250 (Apr. 1, 2020). The NWPR strictly defines "tributaries" and "adjacent wetlands," and it categorically excludes certain features from the definition of "navigable waters," including "ephemeral streams." 33 C.F.R. § 328.3(b), (c)(1), (c)(12). Consistent with Executive Order 13,778, the NWPR is based in significant part on the *Rapanos* plurality opinion. *See, e.g.*, 85 Fed. Reg. at 22,2259, 22,273, 22,279-80, 22,288-89, 22,291, 22,303-04, 22,308-10, 22,314, 22,319, 22,326. The Agencies published the NWPR notwithstanding feedback

from the EPA Science Advisory Board that the NWPR conflicts with established science, disregards key aspects of the 2015 Connectivity Report, and weakens protection of the nation's waters in contravention of the CWA's objectives. (Doc. 63-8 at 2-5.)

On January 20, 2021, President Joe Biden issued Executive Order 13,990, expressing the policy of the new administration:

> to listen to the science; to improve public health and protect our environment; to ensure access to clean air and water; to limit exposure to dangerous chemicals and pesticides; to hold polluters accountable, including those who disproportionately harm communities of color and low-income communities; to reduce greenhouse gas emissions; to bolster resilience to the impacts of climate change; to restore and expand our national treasures and monuments; and to prioritize both environmental justice and the creation of the well-paying union jobs necessary to deliver on these goals.

86 Fed. Reg. 7,037 (Jan. 20, 2021). Executive Order 13,990 directed federal agencies "to immediately review and, as appropriate and consistent with applicable law, take action to address the promulgation of Federal regulations and other actions during the last 4 years that conflict with these important national objectives." *Id.*

Consistent with Executive Order 13,990, the EPA and Corps of Engineers have provided notice of their intent to restore the pre-2015 regulatory definition of "waters of the United States" while working to develop a new regulatory definition. (Doc. 89.) The Agencies have not provided an estimate of when a new regulatory definition will be published.

**II. Motion to Remand**

The Agency Defendants seek voluntary remand of the NWPR while they work to revise or replace the rule and re-define "waters of the United States." (Doc. 72; *see also* Doc. 83 at 4.) Neither Plaintiffs nor the Business Intervenors oppose the Agency Defendants' request for voluntary remand. (Doc. 74 at 1-12; Doc. 85 at 1-7.) The Sacketts oppose the request to the extent it seeks remand of the "adjacent wetlands" provision of the NWPR. (Doc. 84.)

"A federal agency may request remand in order to reconsider its initial action." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam).

Courts generally grant a voluntarily requested remand unless "the agency's request is frivolous or made in bad faith." *Id.* Here, there is no indication in the record that the Agency Defendants' request for voluntary remand is frivolous or made in bad faith.

The Sacketts argue that the Agencies have no discretion to revise the NWPR's definition of "adjacent wetlands," because that definition is required by the four-justice plurality opinion in *Rapanos*, which the Sacketts assert is controlling under Supreme Court and Ninth Circuit precedent for interpreting fractured decisions. (Doc. 84 at 2-3, 9-16; *see also* Doc. 77-1 at 14-15, 19-42.) The Ninth Circuit recently rejected the Sacketts' argument that the *Rapanos* plurality opinion is controlling, re-affirming *Healdsburg*'s holding that Justice Kennedy's concurrence is the controlling opinion from *Rapanos*. *Sackett v. EPA*, No. 19-35469, 2021 WL 3611779, at *9-12, __ F.4th __ (9th Cir. Aug. 16, 2021). Accordingly, there is no merit to the Sacketts' argument that remand is inappropriate because the NWPR's definition of "adjacent wetlands" is required by the *Rapanos* plurality opinion. The Court will grant the Agency Defendants' request for voluntary remand.

**III. Vacatur**

Plaintiffs argue that remand of the NWPR must "include the usual remedy of vacatur to prevent significant, irreversible harms." (Doc. 74 at 2.) The Agency Defendants have not requested vacatur (Doc. 72 at 13), and both the Sacketts and the Business Intervenors urge the Court to reject Plaintiffs' request for vacatur (Doc. 84 at 16-18; Doc. 85 at 7-13).

"Whether agency action should be vacated depends on how serious the agency's errors are and the disruptive consequences of an interim change that may itself be changed." *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (internal quotation marks omitted). The Ninth Circuit has "only ordered remand without vacatur in limited circumstances," *id.* at 994, such as when vacatur would risk environmental harm or when the agency could, by offering better reasoning or complying with procedural requirements, "adopt the same rule on remand." *Pollinator Stewardship Council v. EPA*,

806 F.3d 520, 532 (9th Cir. 2015). For example, in *California Communities Against Toxics*, the Ninth Circuit granted voluntary remand but remanded without vacatur because vacatur was likely to delay construction of a much-needed power plant, risking pollution from diesel generators used in the event of blackouts. 688 F.3d at 993-94. Similarly, in *Alliance for the Wild Rockies v. Marten*, the Ninth Circuit found that equity counseled in favor of remand without vacatur because vacatur "could have negative consequences for the environment and public safety." 789 Fed. App'x 583, 584-85 (9th Cir. 2020) (mem.). In contrast, in *Pollinator Stewardship Council*, the Ninth Circuit vacated and remanded because leaving the EPA action in place risked more potential environmental harm than vacating it and because the EPA could reach a different result on remand. 806 F.3d at 532-33.

The Sacketts cite to out-of-circuit authority finding remand with vacatur inappropriate in the absence of a merits adjudication (Doc. 84 at 16-17), but the parties have not identified any Ninth Circuit case so holding. In *California Communities Against Toxics*, the Ninth Circuit considered a request for voluntary remand and applied the ordinary considerations regarding the seriousness of the agency's errors and the consequences of an interim change in determining whether the remand should include vacatur. 688 F.3d at 993-94. Similarly, in *Safer Chemicals, Healthy Families v. EPA*, the Ninth Circuit granted a request by the EPA for voluntary remand with vacatur after finding that the request was not frivolous or made in bad faith. 791 Fed. App'x 653, 656 (9th Cir. 2019) (mem.); *see also ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064 (C.D. Cal. 2016) ("Courts faced with a motion for voluntary remand employ the same equitable analysis courts use to decide whether to vacate agency action after a ruling on the merits." (internal quotation and alteration marks omitted)). *California Communities Against Toxics* and *Safer Chemicals* indicate that, in the Ninth Circuit, remand with vacatur may be appropriate even in the absence of a merits adjudication. Accordingly, the Court will apply the ordinary test for whether remand should include vacatur.

. . . .

**A. Seriousness of Agency Errors**

A final agency action is arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 706, if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it would not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Encino Motorcars, LLC. v Navarro*, 136 S. Ct. 2117, 2125-26 (2016) (agency must provide reasoned explanation for a change in position). "An agency conclusion that is in direct conflict with the conclusion of its own experts . . . is arbitrary and capricious." *Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1139 (9th Cir. 2016) (internal quotation marks omitted). In reviewing an agency's statutory construction, a court must determine, first, whether the intent of Congress is clear, in which case that intent must be given effect; "if the statute is silent or ambiguous with respect to the specific issue," the Court must then determine whether the agency's construction is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984).

Plaintiffs argue that the NWPR disregards established science and the advice of the Agencies' own experts in order to re-define the statutory phrase "waters of the United States" in a manner that a majority of justices in *Rapanos* rejected as inconsistent with the CWA. (Doc. 48 at 25-41; Doc. 74 at 3, 6-7; Doc. 90 at 12-36.)[2] The Agency Defendants agree that there exist "substantial concerns about certain aspects of the NWPR . . . including whether the NWPR adequately considered the CWA's statutory objective" and "the effects of the NWPR on the integrity of the nation's waters." (Doc. 72 at 11; *see also* Doc. 72-1 at 4-9; Doc. 72-2 at 4-9.) For example, the Agencies "are concerned that the NWPR did not look closely enough at the effect ephemeral waters

[2] Plaintiffs also argue that the NWPR is internally inconsistent, that the Agencies failed to adequately explain their change in position or analyze the environmental justice implications of the NWPR, and that the waste treatment exclusion of the NWPR is arbitrary and capricious. (Doc. 48 at 41-54; Doc. 90 at 36-44.)

have on traditional navigable waters" when deciding to "categorically exclude ephemeral waters" from the definition of "waters of the United States." (Doc. 72-1 at 6; Doc. 72-2 at 6.)

The concerns identified by Plaintiffs and the Agency Defendants are not mere procedural errors or problems that could be remedied through further explanation. *See Pollinator Stewardship Council*, 806 F.3d at 532. Rather, they involve fundamental, substantive flaws that cannot be cured without revising or replacing the NWPR's definition of "waters of the United States." Accordingly, this is not a case in which the agency could adopt the same rule on remand by offering "better reasoning or . . . complying with procedural rules." *Id.*

Neither is this a case in which vacatur "could result in possible environmental harm." *Id.* To the contrary, remanding without vacatur would risk serious environmental harm. The Agencies have "identified indicators of a substantial reduction in waters covered under the NWPR compared to previous rules and practices." (Doc. 72-1 at 6; Doc. 72-2 at 6-7.) Between June 22, 2020 and April 15, 2021, the Corps made approved jurisdictional determinations under the NWPR of 40,211 aquatic resources or water features, and found that approximately 76% were non-jurisdictional. (Doc. 72-1 at 7; Doc. 72-2 at 7.) The Agencies have identified 333 projects that would have required Section 404 permitting under the CWA prior to the NWPR but no longer do. (Doc. 72-1 at 7; Doc. 72-2 at 7.) The reduction in jurisdiction has "been particularly significant in arid states." (Doc. 72-1 at 7; Doc. 72-2 at 7.) In New Mexico and Arizona, nearly every one of over 1,500 streams assessed under the NWPR were found to be non-jurisdictional—a significant shift from the status of streams under both the Clean Water Rule and the pre-2015 regulatory regime. (Doc. 72-2 at 7; Doc. 72-2 at 7-8.) Impacts to ephemeral streams, wetlands, and other aquatic resources could have "cascading and cumulative downstream effects," and the Agencies "have heard concerns from a broad array of stakeholders . . . that the reduction in the jurisdictional scope of the CWA is resulting in significant, actual environmental harms." (Doc. 72-1 at 8-9; Doc. 72-2 at 8-

9.)

The seriousness of the Agencies' errors in enacting the NWPR, the likelihood that the Agencies will alter the NWPR's definition of "waters of the United States," and the possibility of serious environmental harm if the NWPR remains in place upon remand, all weigh in favor of remand with vacatur.

**B. Consequences of Interim Change**

The Business Intervenors contend that a return to the pre-2015 regulatory regime would increase regulatory uncertainty. (Doc. 85 at 8-10.) But regulatory uncertainty typically attends vacatur of any rule and is insufficient to justify remand without vacatur. *See Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020) ("neither EPA nor intervenors have identified any serious disruptive consequences of vacatur, resting instead on the regulatory uncertainty that typically attends vacatur of any rule"). The pre-2015 regulatory regime is familiar to the Agencies and industry alike, and the Agencies have expressed an intent to repeal the NWPR and return to the pre-2015 regulatory regime while working on a new definition of "waters of the United States." (Doc. 89.) The consequences of an interim change do not support the unusual remedy of remand without vacatur.

**C. Conclusion**

Because equity does not demand the atypical remedy of remand without vacatur, *see Pollinator Stewardship Council*, 806 F.3d at 532, the Court will vacate and remand the NWPR. Plaintiffs' Complaint will be dismissed to the extent it challenges the NWPR.

Plaintiffs' Complaint and Motion for Summary Judgment also challenge the 2019 Repeal Rule, but the Motion focuses on the NWPR, as do the Intervenors' Cross-Motions for Summary Judgment. Because the Agency Defendants filed a Motion for Voluntary Remand in lieu of a response to Plaintiffs' Motion for Summary Judgment, the Agency Defendants have not responded to Plaintiffs' challenges to the 2019 Repeal Rule. Because it may be beneficial to have further briefing focused on the 2019 Repeal Rule,

the Court will deny without prejudice all pending summary judgment motions, as well as Plaintiffs' Motion to Expedite Briefing, and will require the parties to file a proposal or proposals for further proceedings concerning Plaintiffs' challenge to the 2019 Repeal Rule.

Accordingly,

**IT IS ORDERED** that the Agency Defendants' Motion for Voluntary Remand (Doc. 72) is **granted** to the extent it requests voluntary remand of the Navigable Waters Protection Rule.

**IT IS FURTHER ORDERED** that the Navigable Waters Protection Rule is **vacated** and **remanded** for reconsideration to the United States Environmental Protection Agency and the United States Army Corps of Engineers. Counts I through IV of Plaintiffs' Complaint (Doc. 1) are **dismissed**.

**IT IS FURTHER ORDERED** that all other pending Motions (Docs. 47, 75, 77, 79) are **denied without prejudice**.

**IT IS FURTHER ORDERED** that within **thirty (30) days** of the date this Order is filed, the parties shall file a proposal or proposals for further proceedings concerning Plaintiffs' challenge to the 2019 Repeal Rule in Count V of the Complaint.

Dated this 30th day of August, 2021.

Honorable Rosemary Márquez
United States District Judge